UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

WINDROCK, INC.,                        )
                                       )
                Plaintiff,             )
                                       )
v.                                     )          No.:   3:21-CV-288-TAV-HBG
                                       )
RESONANCE SYSTEMS, INC. and            )
JOSH KELLEY,                           )
                                       )
                Defendants.            )


## MEMORANDUM OPINION AND ORDER

Before the Court is defendants' motion to dismiss [Doc. 20]. Plaintiff filed a response [Doc. 22], and defendants filed a reply [Doc. 25]. This motion is now ripe for resolution. As discussed *infra*, defendants' motion to dismiss [Doc. 20] will be **GRANTED in part** and **DENIED in part**. Accordingly, Counts IV and V of the amended complaint will be **DISMISSED**.

## I.    Background

The Court accepts as true all factual allegations in the complaint. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). Plaintiff is a Tennessee corporation that "designs and manufactures data acquisition products and online systems . . . ." [Doc. 18 ¶¶ 1, 5]. While the relationship ultimately does not affect the Court's conclusions, it appears plaintiff is a subsidiary of Dover Corporation and related to entity Dover Energy Automation [*See* Doc. 18-2 pp. 1, 3, 5; Doc. 18-3 p. 5].

Defendant Resonance Systems, Inc. ("RSI") is a Tennessee corporation and direct competitor of plaintiff [Doc. 18 ¶¶ 2, 14]. Defendant Josh Kelley ("Kelley") served as a software developer for plaintiff from 2007 until 2018 and an independent contractor for plaintiff from 2018 until 2019 [*Id.* ¶ 12]. Kelley is currently an employee of RSI [*Id.*].

Kelley executed two pertinent agreements with plaintiff. First, in 2017, plaintiff and Kelley executed the Retention Agreement (the "RA") [*Id.* ¶ 22]. The RA effectively serves as a continued employment agreement between plaintiff and Kelley [*See generally* Doc. 18-2]. Relevantly, in the RA, "Employer" agreed to provide Kelley with "Confidential Information" "[i]n exchange for [Kelley's] promises made in" the RA, and Kelley agreed not to disclose this information to outsiders or use it for inappropriate purposes [*Id.* at 1–2]. While the RA defines "the Company" as plaintiff, the term "Employer" remains undefined and thus, as discussed in Part II.B.2, the parties dispute whether the RA actually protects plaintiff's rather than an unidentified third party's confidential information [*See id.* at 1]. In any event, the confidentiality obligations under the RA last indefinitely [*Id.* at 2]. Separately, plaintiff agreed not to engage in conduct harmful to plaintiff's reputation or operations [*See id.* at 4]. The RA is printed on Dover Energy Automation letterhead, makes two references to Dover entities throughout, and is signed by Ali Raza, Dover Energy Automation's president [*See generally id.*].

Second, when Kelley transitioned from employee to independent contractor of plaintiff, plaintiff and Kelley executed the Mutual Confidentiality and Non-disclosure Agreement (the "NDA") [Doc. 18 ¶ 27]. Like the RA, the NDA protects certain of

2

plaintiff's confidential information.[1]  Specifically, under the NDA, plaintiff agreed to disclose confidential information to Kelley "[f]ollowing the execution and delivery" of the NDA [Doc. 18-3 p. 2].  In exchange, Kelley agreed not to disclose this information or use it for any unpermitted purpose [*Id.*].  The confidentiality obligations under the NDA last three years [*Id.* at 4].

Plaintiff's business model is also relevant to this action.  Plaintiff sells devices called portable analyzers, which assess and provide output data regarding machine conditions [Doc. 18 ¶¶ 6–8, 38].  Plaintiff also sells software that allows users to read this otherwise-unreadable output data [*Id.*].  This software uses plaintiff's proprietary "C-structures," which enable the software to translate the unreadable output data into a readable format [*Id.* ¶ 38].  Only a computer programmer familiar with plaintiff's C-structures and plaintiff's data indexing scheme or with access to plaintiff's source code can decode the unreadable output data [*Id.* ¶ 41].

Despite this limitation, RSI recently demonstrated and advertised its ability to decode and translate the output data [*Id.* ¶¶ 48–49].  Accordingly, after discounting possible alternatives, plaintiff alleges Kelley violated his confidentiality obligations by using knowledge of plaintiff's C-structures gained during his employment to translate the data for RSI [*Id.* ¶¶ 44, 50–54].  Plaintiff also alleges Kelley improperly utilized plaintiff's confidential information to steal customers from plaintiff [*Id.* ¶¶ 55–60].

---

[1]  The parties do not dispute that the RA and the NDA define "Confidential Information" similarly in terms of the types of information they reach (e.g., technical data, prototypes, etc.) [*Compare* Doc. 18-2 p. 2, *with* Doc. 18-3 p. 1].

Thus, plaintiff filed the amended complaint, which asserts seven causes of action: (1) violation of the Defend Trade Secrets Act against RSI and Kelley (Count I); (2) violation of the Tennessee Uniform Trade Secrets Act (the "UTSA") against RSI and Kelley (Count II); (3) statutory procurement of breach of contract against RSI and Kelley (Count III); (4) statutory procurement of breach of contract against RSI (Count IV); (5) intentional interference with contractual relations against RSI (Count V); (6) breach of the RA against Kelley (Count VI); and (7) breach of the NDA against Kelley (Count VII) [*Id.* at 11–21]. Currently, defendants move to dismiss plaintiff's claims in Counts IV, V, and VI [Doc. 20].[2]

## II.     Defendants' Motion to Dismiss

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) [Docs. 20, 21]. In deciding a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[2]  The parties argue each other's filings inject facts into the record that the Court cannot consider [Doc. 22 p. 1; Doc. 25 p. 1]. The Court notes that in reaching its conclusions, the Court does not rely upon these allegations. As it must, the Court relies only on the allegations in the amended complaint. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).

4

679 (2009). And the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557.

Plaintiff attaches exhibits to the amended complaint [*See* Docs. 18-1, 18-2, 18-3]. A court may consider exhibits attached to the complaint when ruling on a motion to dismiss. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (citation omitted); *see also* Fed. R. Civ. P. 10(c). However, if an exhibit contradicts the complaint, courts should disregard the allegations in the complaint in favor of the information in the exhibit. *Williams*, 498 F. App'x at 536 (citation omitted).

The Court will evaluate defendants' motion pursuant to these standards.

### A.    Counts IV and V: UTSA Preemption

Defendants argue the UTSA preempts plaintiff's claims against RSI in Counts IV and V for statutory procurement of breach of contract and intentional interference with contractual relations [Doc. 21 pp. 5–11]. Specifically, defendants argue that *Hauck Manufacturing v. Astec Industries, Inc.*, 375 F. Supp. 2d 649 (E.D. Tenn. 2004), establishes that the UTSA preempts claims that require a plaintiff to show the defendant has

misappropriated a trade secret or other confidential information [*See id.* at 5–6]. And defendants assert plaintiff's claims in Counts IV and V both require plaintiff to prove RSI misappropriated plaintiff's confidential information [*Id.* at 8–11].

Plaintiff acknowledges *Hauck* but suggests its reasoning does not apply in the context where a tortfeasor procures disclosure of information protected by a confidentiality agreement [Doc. 22 pp. 2–5]. Plaintiff reasons that while the UTSA does not protect non-trade secret confidential information, a confidentiality agreement can provide legal rights with respect to that information, and "tort causes of action should be available to protect [these] legal rights" [*Id.* at 6]. Plaintiff therefore alleges it should be able to maintain its claims in this case [*Id.*]. Plaintiff suggests that in *Vincit Enterprises, Inc. v. Zimmerman*, No. 1:06-CV-57, 2006 U.S. Dist. LEXIS 32323 (E.D. Tenn. May 12, 2006), a court in this district agreed with plaintiff's position [*Id.* at 6–7]. Defendants reply that *Hauck* and *Vincit* support defendants' position [Doc. 25 pp. 2–5].

The UTSA creates statutory causes of action for misappropriation of trade secrets. *Hauck*, 375 F. Supp. 2d at 653 (citing T.C.A. §§ 47-25-1701 *et seq.* (2000)). In so doing, the UTSA preempts "conflicting tort, restitutionary, and other law of [Tennessee] providing civil remedies for misappropriation of a trade secret." T.C.A. § 47-25-1708(a). However, the UTSA does not preempt "[c]ontractual remedies, whether or not based upon misappropriation of a trade secret . . ." or "[o]ther civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 47-25-1708(b)(1)–(2).

6

In *Hauck Manufacturing v. Astec Industries, Inc.*, the court observed uncertainty among the courts regarding precisely which claims the UTSA preempts. 375 F. Supp. 2d at 654. In light of this uncertainty, the court adopted a "same proof" test. *Id.* at 658. Under this test, "a claim [is] preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the UTSA." *Id.* That is, "if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, [the non-UTSA claim] is preempted irrespective of whatever surplus elements or proof [are] necessary to establish it." *Id.*

The *Hauck* test applies not only to claims involving misappropriation of "trade secrets" but also more broadly to claims involving misappropriation of any confidential information. As the *Hauck* court stated:

> The UTSA explicitly exempts from preemption only those claims "not *based upon* misappropriation of a trade secret," implying the UTSA's preemptive force reaches more than just claims *of* or *for* misappropriation of a trade secret. Thus, . . . non-UTSA claims . . . will be preempted if, as plead, they would succeed or fail dependent on proof [that the defendant misappropriated] . . . trade secrets or *otherwise confidential information*.

*Id.* (final emphasis added); *see also Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-24-RGJ-RSE, 2019 U.S. Dist. LEXIS 66165, at *5 (W.D. Ky. Apr. 17, 2019) ("[T]he UTSA preempts laws that protect commercially valuable information, regardless of whether the information qualifies as a trade secret." (citations omitted)); *Hauck*, 375 F. Supp. 2d at 655 ("Despite its apparently limiting language displacing only [claims based on misappropriation of *trade secrets*], the UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft

7

or misuse of *confidential, proprietary, or otherwise secret information falling short of trade secret status . . . .*" (emphasis added)).

Courts within this circuit have repeatedly adopted the "same proof" test. *See, e.g.*, *Care Servs. Mgmt., LLC v. Premier Mobile Dentistry of Va., LLC*, No. 3:17-CV-1095, 2020 U.S. Dist. LEXIS 178529, at \*18–19 (M.D. Tenn. Sept. 29, 2020); *Beijing Fito Med. Co. v. Wright Med. Tech., Inc.*, No. 2:15-CV-2258-JPM-TMP, 2016 U.S. Dist. LEXIS 14725, at \*9 (W.D. Tenn. Feb. 8, 2016). Moreover, the Sixth Circuit itself has stated the *Hauck* opinion is "well-reasoned" and suggested the Tennessee Supreme Court would adopt it. *See PartyLife Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 976 (6th Cir. 2007). More recently, the Tennessee Court of Appeals adopted *Hauck*'s "same proof" test, noting it is "workable," "thorough[,] and well-reasoned." *See Ram Tool & Supply Co., Inc. v. HD Supply Constr. Supply Ltd.*, No. M2013-2264-COA-R3-CV, 2014 Tenn. App. LEXIS 500, at \*32, \*37–38 (Aug. 19, 2014). Given that the Tennessee and Sixth Circuit courts have consistently applied the *Hauck* approach, this Court will do so as well.

The Court holds that *Hauck* applies even where non-trade secret information is protected by a confidentiality agreement. As noted, plaintiff argues *Hauck*'s reasoning does not apply where confidential information is protected by a confidentiality agreement because that agreement itself creates enforceable legal rights [Doc. 22 pp. 2–6]. It is true confidentiality agreements can create legal rights to protect non-trade secret confidential information. But a breach of contract action against the breaching party is the appropriate

8

device for enforcing those rights, and the UTSA does not preempt these actions. *See* T.C.A. § 47-25-1708(b)(2) (2000). Of course, based on *Hauck*'s interpretation of the UTSA's preemption, a plaintiff cannot maintain a tort claim against a third party for inducing a breach. But the *Hauck* court recognized that the UTSA appears "to occupy the field and create a single class of commercially valuable intangible property which the law protects as such." 375 F. Supp. 2d at 655. Thus, construing the UTSA and its preemption provisions together, the Court concludes that the Tennessee General Assembly must have determined that interests in non-trade secret confidential information are not sufficiently important to protect via third-party tort remedies.

Plaintiff is also incorrect that *Hauck* is not factually analogous to this case [Doc. 22 p. 5]. Indeed, in *Hauck*, like in this case, the plaintiff's claims arose from a third party's inducement of a breach of a confidentiality agreement, and the court rejected the plaintiff's claims because the "specific contractual provisions at issue[,] . . . the nature and manner of the alleged breach, and the alleged harm to [the plaintiff] all relate[d] exclusively to the disclosure of secret, confidential, and/or proprietary information." *See* 375 F. Supp. 2d at 659. Thus, it cannot be said that *Hauck*'s reasoning does not apply when a third party induces a breach of a confidentiality agreement.

Finally, plaintiff avers that at least one court in this district has adopted its approach [Doc. 22 p. 6]. *See generally Vincit*, 2006 U.S. Dist. LEXIS 32323. In *Vincit*, the plaintiff employed the defendant and entered into an employment agreement. *Id.* at *3–4. *Inter alia*, the agreement required the defendant to keep confidential the plaintiff's confidential

information during employment and for two years after termination. *Id.* at *4–5. After the defendant retired, the defendant received employment with the plaintiff's competitor, and the plaintiff ultimately sued the defendant under the UTSA and for intentional interference with business relationships. *See id.* at *7, *20. The court followed *Hauck* and ruled for the defendant. *Id.* at *20. Pertinently, the court stated the plaintiff's claims were preempted "[t]o the extent . . [they were] based on [the defendant's] alleged misappropriation of trade secrets—apart from any alleged breach of the Employment Agreement . . . ." *Id.* at *21. Plaintiff argues that in using this language, the *Vincit* court suggested a plaintiff may sue a third party that induces a breach of a confidentiality agreement [Doc. 22 p. 7].

The Court finds that *Vincit* does not support plaintiff's argument. In stating the plaintiff's claims were preempted "apart from any alleged breach of the Employment Agreement," it appears the *Vincit* court merely recognized the plaintiff could maintain a breach of contract claim based on a breach of the confidentiality clause of the employment agreement. *See Vincit*, 2006 U.S. Dist. LEXIS 32323, at *21. This construction is reasonable considering the plaintiff in *Vincit* in fact maintained a separate breach of contract claim based on a breach of the confidentiality clause. *See id.* at *10. But nothing in the opinion suggested the plaintiff could maintain tort claims against third parties for inducing the breach. Thus, the Court finds *Vincit* consistent with *Hauck*. *See also PartyLife Gifts, Inc.*, 246 F. App'x at 976 (recognizing that *Vincit* and *Hauck* reached the "same conclusion"). Accordingly, the Court has no reason to disregard *Hauck* in the context where non-trade secret information is protected by a confidentiality agreement.

10

Applying *Hauck* in this case, plaintiff's claims in Counts IV and V are for statutory procurement of breach of contract and intentional interference with contractual relations, respectively. A claim for statutory procurement of breach of contract in Tennessee requires the plaintiff to prove the following: (1) existence of a contract; (2) the defendant's awareness of the contract; (3) the defendant's intent to induce a breach; (4) the defendant acted with malice; (5) a breach of the contract occurred; (6) the defendant's conduct proximately caused the breach; and (7) damages. *Sugar Creek Carriages v. Hat Creek Carriages*, No. M2017-963-COA-R3-CV, 2018 Tenn. App. LEXIS 200, at *7 (Apr. 19, 2018); *see also* T.C.A. § 47-50-109 (1907). A claim for intentional interference with contractual relations requires a plaintiff to establish the same elements. *See Tennison Bros. v. Thomas*, No. W2013-1835-COA-R3-CV, 2014 Tenn. App. LEXIS 479, at *36–37 (Aug. 6, 2014).

The Court finds that plaintiff's claims in Counts IV and V for statutory procurement and intentional interference are preempted. These claims derive from RSI's alleged inducement of Kelley to breach the RA or the NDA [*See* Doc. 18 ¶¶ 104–19]. To prove Kelley breached these contracts, plaintiff must demonstrate the RA or the NDA required Kelley to keep secret plaintiff's confidential information and that plaintiff breached that duty by disclosing plaintiff's information to RSI. Thus, plaintiff necessarily must prove Kelley "misappropriated" plaintiff's confidential information as defined under T.C.A. § 47-25-1702. In other words, if plaintiff establishes its claims as to Counts IV and V, it "would also simultaneously establish a claim for misappropriation" and therefore

11

plaintiff's claims as to Counts IV and V "rise[] or fall[] based on whether [Kelley] is found to have 'misappropriated' [confidential information]."  *Hauck*, 375 F. Supp. 2d at 658.

Consequently, plaintiff's claims in Counts IV and V will be **DISMISSED**.[3]

**B.    Count VI**

Defendants raise several arguments that the Court should dismiss Count VI [Doc. 21 pp. 11–18].  For the reasons discussed *infra*, the Court will not dismiss Count VI.

### 1.    Plaintiff's Capacity to Enforce the RA

Defendants argue plaintiff has no "standing" to enforce the RA against Kelley because plaintiff is not a party to the RA and has no privity of contract with Kelley [Doc. 21 pp. 12–13].  Plaintiff responds that the RA demonstrates plaintiff is a party to it [Doc. 22 pp. 8–9].  Plaintiff suggests defendants are truly contesting "capacity" rather than "standing" because defendants' challenge derives from the fact that Dover Corporation's president Ali Raza signed the RA rather than a representative of plaintiff [*Id.* at 9].  Plaintiff asserts the challenge to Raza's authority presents a question of fact inappropriate for resolution at this juncture and in any event that the Court can take judicial notice of Raza's authority to sign the RA based on Dover Corporation's public 10-K form [*Id.* at 9–11].  Alternatively, plaintiff argues it can enforce the RA as an intended third-party beneficiary [*Id.* at 11–12].

---

[3]  Because the Court will dismiss Counts IV and V on preemption grounds, the Court does not address defendants' alternative argument that plaintiff failed to adequately plead malice [*See* Doc. 21 pp. 8–11].

12

Defendants reply that plaintiff is not a party to the RA because it did not execute the RA [Doc. 25 p. 6]. Defendants aver that plaintiff's response is improper to the extent it discusses Raza's authority because it introduces facts not in the complaint, and plaintiff argues the only allegation in the complaint that plaintiff is a party to the RA is contradicted by the RA itself [*Id.* at 6–8]. Moreover, defendants assert judicial notice is inappropriate and that Dover Corporation's 10-K form does not establish Raza's authority [*Id.* at 8–10].

As a preliminary matter, plaintiff is correct that defendants challenge plaintiff's capacity (rather than standing) to maintain a breach of contract action. *Transcon. Realty Invs., Inc. v. Wicks*, 442 S.W.3d 676, 679 (Tex. App. 2014) (citation omitted) ("Whether a party is entitled to sue on a contract 'is not truly a standing issue because it does not affect . . . jurisdiction . . . .'").[4] A plaintiff has capacity to maintain a breach of contract action only if it has contractual privity or is a third-party beneficiary to the contract. *John C. Flood of DC, Inc. v. Supermedia L.L.C.*, 408 S.W.3d 645, 651 (Tex. App. 2013). While courts maintain a presumption against third-party beneficiary agreements, courts should find a third-party beneficiary relationship exists when there is "clear and unequivocal" evidence that the contracting parties intended the contract to directly and primarily benefit a third party. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (citation omitted); *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App. 2010).[5]

---

[4] The parties agree Texas law governs the RA [*See* Doc. 21 p. 12; Doc. 22 p. 9 n.2].

[5] An intended third-party beneficiary can either be a donee or creditor beneficiary. A donee beneficiary receives performance "as a pure donation." *Lesieur v. Fryar*, 325 S.W.3d 242, 252 (Tex. App. 2010) (citation omitted). Conversely, a creditor beneficiary receives performance "in satisfaction of a legal duty owed." *Id.* (citation omitted).

13

The Court finds plaintiff has capacity to maintain this action because it is, at minimum, an intended third-party beneficiary to the RA. The RA's purpose was to secure Kelley's continued employment with plaintiff [*See* Doc. 18-2 p. 1 (noting Kelley's services were "valuable to the ongoing success of" plaintiff)]. Additionally, the RA's covenants almost exclusively benefit plaintiff. For example, the RA prevents Kelley from competing with plaintiff and requires Kelley to protect plaintiff's reputation [*Id.* at 3–4]. Moreover, the RA prevents Kelley from misusing or disclosing plaintiff's confidential information and from soliciting plaintiff's customers and employees [*See id.* at 2–4].[6] Meanwhile, the RA only collaterally and scantly benefits any other entity.[7] Defendants do not even argue plaintiff is not an intended third-party beneficiary; rather, defendants only assert plaintiff's "status as a third-party beneficiary to the RA is moot" based on defendants' other arguments [Doc. 25 p. 13; *see also* Doc. 21 p. 13]. Thus, the Court finds "clear and unequivocal" evidence that the RA is intended to benefit plaintiff directly and primarily.[8]

Therefore, the Court finds plaintiff has capacity to maintain its claim in Count VI.

---

[6] In these contexts, the RA refers to plaintiff by the undefined term "Employer." As discussed in Part II.B.2, the Court finds "Employer" refers to plaintiff.

[7] The RA defines "Confidential Information" as used in the RA's noncompete provision to include Dover Corporation's information [Doc. 18-2 p. 3]. This provision seems to be the only provision in the RA that benefits any entity other than plaintiff. But even this provision primarily benefits plaintiff as it defines "Confidential Information" as information "relating to [plaintiff's] business" [*Id.*]. The provision only collaterally and parenthetically benefits Dover Corporation.

[8] Because the Court finds plaintiff is, at minimum, an intended third-party beneficiary, the Court need not consider whether plaintiff is in fact a party to the RA.

14

## 2. The RA's Protection of Plaintiff's Confidential Information

Because the RA only protects an undefined "Employer's" confidential information [*See* Doc. 18-2 pp. 1–2] and meanwhile defines plaintiff as "the Company," defendants argue the RA does not protect plaintiff's confidential information [Doc. 21 pp. 13–14]. Specifically, defendants utilize the maxim *expressio unius est exclusio alterius* to argue "Employer" cannot refer to plaintiff because "the Company" is defined as plaintiff and multiple defined terms cannot reference the same entity [*Id.*]. In further support, defendants assert "Employer" likely refers to a Dover entity because the RA "appears to be made between Kelley and Dover" [*Id.* at 14].

Plaintiff responds that defendants' argument "borders on frivolous" because the plain language of the RA demonstrates "Employer" refers to plaintiff [Doc. 22 p. 13]. Plaintiff discounts the maxim *expressio unius est exclusio alterius* as an inconclusive aid to construction and avers "Employer" must refer to plaintiff because plaintiff in fact employed Kelley [*Id.* at 13–14]. Defendants reply primarily by discussing cases utilizing the maxim *expressio unius est exclusio alterius* [Doc. 25 pp. 10–11 (citations omitted)].

The primary goal of contract construction is to effectuate the objective intent of the parties. *Nustar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 465 (Tex. App. 2013) (citations omitted). Courts apply the plain meaning of contractual terms "unless the contract indicates that the parties intended a different meaning." *Id.* at 466 (citation omitted). Furthermore, courts construe contractual provisions in light of the contract as a

15

whole rather than individually. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). While a court will not rewrite a contract, a court may recognize errors in the contract when construing the contract as a whole and effectuating the parties' objective intent. *See Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip.*, 317 S.W.3d 523, 227–28 (Tex. App. 2010) ("[C]ontracts will be construed according to the intention of the parties, notwithstanding errors and omission, . . . and to this end, words, names, and phrases obviously intended may be supplied." (citation omitted)). The canon *expressio unius est exclusio alterius* is one aid to construction, and it relays that "expression of one thing" necessarily causes "the exclusion of another." *See Sun Operating P'ship v. Holt*, 984 S.W.2d 277, 292 n.2 (Tex. App. 1998).

The Court finds that "Employer" as used in the RA refers to plaintiff. The RA's purpose was to secure Kelley's continued employment with plaintiff [*See* Doc. 18-2 p. 1]. Indeed, the RA states Kelley's "services [we]re considered valuable to the ongoing success of [plaintiff] . . . ." and thus the RA offered plaintiff a bonus to remain employed with plaintiff [*Id.*]. The Court notes its construction of "Employer" is also consistent with the plain meaning of the term "employer," which definitionally refers to an entity that employs an employee. *See Nustar Energy*, 402 S.W.3d at 466; *see also Employer*, Merriam-Webster, https://www.merriam-webster.com/dictionary/employer (last visited

16

Jan. 19, 2022) ("[Employer]: one that employs . . . somebody."). [9]  Thus, construing the RA holistically, "Employer" as used in the RA clearly refers to plaintiff.

The likely cause of the misperception surrounding the term "Employer" seems to be that the RA's drafter created the RA by compiling desired provisions from two different form employee agreements without considering conflicting defined terms. For example, in most provisions, the RA generally uses the term "the Company" to refer to plaintiff, refers to Kelley only in the second person as "you" or "your," and does not use the terms "Employer" or "Employee" [*See, e.g.*, p. 1 (introduction), ¶¶ 1, 2, 4, 8–16, p. 5 (conclusion)].  Inversely, other provisions of the RA use the terms "Employer" and "Employee" to refer to plaintiff and Kelley, respectively, refer to Kelley only in the third person, and do not use the term "the Company" [*See, e.g.*, *id.* ¶¶ 3, 5–7]. [10]  This pattern supports the Court's conclusion that "Employer" and "the Company" both refer to plaintiff and that the drafter simply did not consider the benefits of utilizing a single term to refer to plaintiff.

The Court recognizes that the maxim *expressio unius est exclusio alterius* weighs in favor of defendants' construction as it is unusual to use two defined terms to reference the same entity.  However, the maxim is only an aid to contract construction; it is not an

---

[9]  The Court notes that defendants do not suggest "Employee" does not refer to Kelley despite that it is also undefined [*See, e.g.*, Doc. 18-2 pp. 1–4].  Given the RA is an employment agreement between plaintiff and Kelley, defendants strain credulity in arguing "Employer" does not refer to plaintiff while not challenging that "Employee" refers to Kelley.

[10]  The Court recognizes the RA uses the terms "the Company" and "Employee" inconsistently with this pattern on one occasion each [Doc. 18-2 ¶¶ 3–4].  However, these instances do not affect the Court's conclusion because they are anomalous.  The remaining portions of the RA follow the pattern discussed *supra*.

outcome-determinative consideration. *See CKB & Assocs. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987); *Davis v. Am. Bank of Com.*, No. 3-4-482-CV, 2005 Tex. App. LEXIS 4902, at *8 n.2 (June 23, 2005). It may be contrary to contract drafting norms to use two defined terms to reference the same entity, but in this case, it simply appears the drafter disregarded this norm. The RA's clear purpose was to execute an employment agreement between an employer (plaintiff) and an employee (Kelley), and the Court will not ignore this clear purpose and the plain meaning of the term "Employer." Thus, the Court finds "Employer" as used in the RA refers to plaintiff.

Consequently, the Court finds that the contract purports to protect plaintiff's confidential information.

### 3. The NDA's Supersession of the RA

Finally, defendants argue plaintiff's claim as to Count VI must be dismissed because the NDA's confidential information clause supersedes the RA's confidential information clause because these clauses relate to the same subject matter [Doc. 21 pp. 14–18]. Defendants note these clauses conflict because the RA's clause protects plaintiff's confidential information indefinitely whereas the NDA's clause protects plaintiff's confidential information for only three years [*Id.* at 18].

Plaintiff responds that the NDA's clause does not supersede the RA's clause because while both clauses protect confidential information, they protect temporally-different confidential information [Doc. 22 pp. 14–16]. Particularly, plaintiff argues the RA protects information Kelley obtained as an employee with plaintiff;

meanwhile, the NDA protects information Kelley obtained as an independent contractor with plaintiff [*Id.*]. Defendants reply that this temporal distinction is superficial [Doc. 25 pp. 11–13].

A subsequent contractual provision governing the same subject matter as a prior contractual provision supersedes the prior provision. *Hwang v. Mirae Asset Sec. (USA) Inc.*, 165 A.D.3d 413, 413–14 (N.Y. App. Div. 2018) (citation omitted); *see also Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 18 Civ. 3976 (JCM), 2022 U.S. Dist. LEXIS 3110, at *56 (S.D.N.Y. Jan. 6, 2022) (citation omitted) (indicating supersession occurs on a provision-by-provision basis).[11] Courts consider three factors to determine whether provisions of a prior contract are superseded: "(1) whether the subsequent contract contains an integration and merger clause indicating that the prior provision is superseded; (2) 'whether the two provisions have the same general purpose or address the same general rights[;]' and (3) 'whether the two provisions can coexist or work in tandem.'" *Alessi Equip., Inc.*, 2022 U.S. Dist. LEXIS 3110, at *56 (alteration in original) (citation omitted).

The Court finds that the NDA's confidential information clause does not supersede the RA's confidential information clause. First, while the NDA contains a merger clause that states the NDA generally supersedes past agreements, it does not specifically mention the RA's clause [*See* Doc. 18-3 p. 4]. *See Dresser-Rand Co. v. Ingersoll Rand Co.*, 18-CV-3225(AJN), 2019 U.S. Dist. LEXIS 55087, at *11 (S.D.N.Y. Mar. 29, 2019) (noting that a general provision purporting to supersede all prior contracts is not "sufficiently

---

[11] The parties agree New York law governs the NDA [*See* Doc. 22 p. 15 n.3].

definitive to supersede a particular earlier contract." (citation omitted)).  In any event, the NDA's merger clause only applies "with respect to the subject matter" of the NDA, and as discussed *infra*, the Court finds the NDA's and the RA's clauses govern different confidential information [*See* Doc. 18-3 p. 4].[12]

The second factor also weighs against supersession.  While the NDA's and the RA's clauses both govern confidential information, the Court finds the clauses govern rights regarding temporally-different confidential information.  The NDA provides that plaintiff would disclose confidential information to Kelley "[f]ollowing the execution and delivery of" the NDA [*Id.* at 2], and therefore, the NDA facially suggests it applies only to confidential information disclosed after its execution.  Meanwhile, while the RA provides a less clear temporal limitation regarding the confidential information it covers, the RA indicates plaintiff would disclose confidential information to Kelley "[i]n exchange for [Kelley's] promises" under the RA, which were obligations to serve as an "Employee" [*See* Doc. 18-2 p. 1].  Thus, the RA suggests it governs only confidential information plaintiff received as an employee.

Finally, regarding the third factor, because the NDA's clause and the RA's clause govern temporally-different confidential information, the clauses can coexist and work in tandem.  Namely, the NDA governs Kelley's disclosure and use of confidential information

---

[12]    Defendants agree the NDA's merger clause alone does not support a finding of supersession [*See* Doc. 21 p. 15].

Kelley received as an independent contractor. Meanwhile, the RA governs disclosure and use of confidential information Kelley received as an employee.

Accordingly, the Court finds the NDA does not supersede the RA.

### 4. Conclusion as to Count VI

As discussed *supra*, the Court finds that plaintiff has capacity to enforce the RA, the RA purports to protect plaintiff's confidential information, and the NDA's confidential information clause does not supersede the RA's confidential information clause. Therefore, the Court will not dismiss Count VI of the amended complaint.

## III. Conclusion

For the foregoing reasons, defendants' motion to dismiss [Doc. 20] is **GRANTED in part** and **DENIED in part**. Counts IV and V are hereby **DISMISSED**. However, Counts I, II, III, VI, and VII remain pending.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

21