UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WINDROCK, INC.,                    )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        No. 3:21-CV-288-TAV-JEM
                                   )
RESONANCE SYSTEMS, INC. and        )
JOSH KELLEY,                       )
                                   )
            Defendants.            )

**MEMORANDUM OPINION AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court,

Standing Order 13-02, and United States District Judge Thomas A. Varan's Order [Doc. 101],

referring Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 71], Defendants'

Motion to Extend Dispositive Motion Deadline [Doc. 92], and "any case management as may be

appropriate" [Doc. 101 p. 1].

For the reasons explained below, Plaintiff's Motion for Leave to File Second Amended

Complaint ("Plaintiff's Motion to Amend") [**Doc. 71**] and Defendants' Motion to Amend Answer

to Assert Counterclaim ("Defendants' Motion to Amend") [**Doc. 124**] are **GRANTED**. The trial

in this action is **CONTINUED** to **June 4, 2024**, and the dispositive motion deadline is **RESET** to

**January 5, 2024.** The remaining deadlines will be reset pending receipt of a joint status report.

Plaintiff's Motion for Partial Summary Judgment [**Doc. 104**] is **DENIED WITHOUT**

**PREJUDICE**, and Defendants' Motion to Extend Dispositive Motion Deadline [**Doc. 92**], the

parties' Motions to Seal [**Docs. 107, 133, and 137**], Defendants' Motion for Extension of Time to

File a Response to Plaintiffs' Motion for Leave to File Document Under Seal [**Doc. 131**] and

Plaintiff's Motion for Permission to File Sur-Reply [**Doc. 136**] are **DENIED AS MOOT**.

# I.    BACKGROUND

Plaintiff filed its Complaint on August 29, 2021 [Doc. 1], and later amended the Complaint on October 22, 2021 (hereinafter the "original Complaint") [Doc. 18], after conferring with Defendants about a possible motion to dismiss pursuant to the Court's Order Governing Motions to Dismiss [*See* Doc. 17].

According to the original Complaint, Plaintiff sells "portable analyzers, which are devices that collect data used to assess the mechanical condition and performance of reciprocating compressors and engines, as well as rotating equipment" [Doc. 18 ¶ 6]. It also sells software called "Windrock MD" that allows users "to review and analyze data collected on the user's assets from [Plaintiff's] data acquisition products to determine the health of the assets" [*Id*. ¶ 8]. Windrock MD is able to translate data by using "structures in C++ code ("C-structure")[,] which enables Windrock MD to translate the data received from Windrock's portable analyzers and other Windrock products" [*Id*. ¶ 38].

Plaintiff previously employed (1) Edwards Flanagan ("Flanagan"), who was Plaintiff's engineering manager and then general manager from August 1996 to July 2017; (2) Steve McNair ("McNair"), who was Plaintiff's international sales manager and product manager from November 2015 until August 2018; (3) Paul Beam ("Beam"), who was Plaintiff's senior engineer and then engineering manager from July 2006 until October 2018; and (4) Defendant Josh Kelley ("Kelley"), who was a senior software developer from November 2007 until January 2018 [*Id*. ¶¶ 9–12]. Kelley also worked for Plaintiff as a contractor from January 2018 until January 2019 [*Id*. ¶ 12]. During Kelley's employment with Plaintiff, he signed a Retention Agreement ("RA") [Doc. 18-2] prohibiting the disclosure of Plaintiff's confidential information [Doc. 18 ¶ 22]. In addition, when Kelley was Plaintiff's contractor, he signed a Mutual

Confidentiality and Non-Disclosure Agreement ("NDA") [Doc. 18-3], agreeing not to disclose Plaintiff's confidential information [Doc. 18 ¶ 28]. Plaintiff alleges that Flanagan, McNair, and Beam also entered into agreements with it that included confidentiality provisions [*Id*. ¶ 35]. Flanagan, McNair, Beam, and Kelley now work for Defendant Resonance Systems, Inc. ("RSI") [*Id*. ¶¶ 9–12 and 46].

Beam and McNair founded RSI on or about March 25, 2020 [*Id*. ¶ 45]. RSI is Plaintiff's direct competitor allegedly selling "data collection products and software[,] which perform similar functions to those sold by Windrock" [*Id*. ¶ 47]. In December 2020, Plaintiff "became aware that Defendant RSI was advertising its own software's ability to translate the data received from [Plaintiff's] portable analyzers and other Windrock products from the Windrock proprietary format" [*Id*. ¶ 48]. Plaintiff claims that there are only two explanations for RSI's ability to translate data from Plaintiff's products: (1) Kelley used his intimate knowledge of Windrock MD's source code and the proprietary C-structures to decode the data, or (2) RSI used the Windrock MD source code [*Id*. ¶ 50]. Plaintiff also claims that, during their employment, Flanagan, Beam, McNair, and Kelley learned valuable information about Plaintiff's customers, and that they are now using such information to steal them [*Id*. ¶¶ 55 and 60]. Plaintiff specifically alleges:

> This valuable confidential customer information included, without limitation: knowledge of the Windrock product(s) each customer has used/is using, the quantity of Windrock products purchased and utilized by each customer, the types of assets/engines each customer uses, the manner in which each customer monitors their assets/engines (including what readings the customer takes), the relative amount of revenue attributable to each customer, as well as knowledge of the specific changes customer have previously requested to Windrock's products.

[*Id*. ¶ 56].

Plaintiff alleged seven causes of action: (1) violation of the Defend Trade Secrets Act against RSI and Kelley (Count I); (2) violations of the Tennessee Uniform Trade Secrets Act ("UTSA") against RSI and Kelley (Count II); (3) statutory procurement of breach of contract against RSI and Kelley (Count III); (4) statutory procurement of breach of contract against RSI (Count IV); (5) intentional interference with contractual relations against RSI (Count V); (6) breach of the RA against Kelley (Count VI); and (7) breach of the NDA against Kelley (Count VII) [*Id.* ¶¶ 61–131].

On January 21, 2022, Judge Varlan granted Defendants' motion to dismiss as to Counts IV and V [Doc. 27 p. 21]. Following Judge Varlan's order, the parties participated in their Rule 26(f) discovery planning meeting [Doc. 28], triggering the discovery phase in this case. The parties encountered several discovery disputes resulting in conferences and hearings with the undersigned [Docs. 35, 39, 53, 56]. On November 30, 2022, the parties filed a joint motion to stay the case in light of their agreement to mediate [Doc. 57]. The parties requested to conduct limited discovery during the stay in order to facilitate the mediation [*Id.* at 1]. Judge Varlan granted the parties' motion and allowed them to complete depositions and outstanding discovery while the stay was in place [Doc. 58]. During this stay, the parties encountered additional discovery disputes, necessitating several hearings with the undersigned [Docs. 60, 64, and 65].

On January 26, 2023, Judge Varlan referred the case to United States Magistrate Judge Christopher Steger for a judicially-hosted settlement conference [Doc. 66]. In light of this referral, Judge Varlan continued the stay [*Id.*]. On March 10, 2023, Judge Steger reported to the Court that the parties were not able to resolve the case [Doc. 68]. Following this report, on March 14, 2023, Judge Varlan lifted the stay, reset the jury trial to October 3, 2023, and amended the Scheduling Order [Doc. 70]. Three days later, on March 17, 2023, Plaintiff filed Plaintiff's Motion to Amend

[Doc. 71]. Defendants responded in opposition to this motion [Doc. 73], and Plaintiff filed a reply [Doc. 74]. Following additional discovery disputes [*see* Docs. 76, 77, 88], Defendants filed their Motion for Extension of Time to File Dispositive Motions [Doc. 92]. Plaintiff responded in opposition to this motion [Doc. 102], Defendants filed a reply [Docs. 128], and Plaintiff moved for leave to file a sur-reply [Doc. 136], which Defendants have opposed [Doc. 139].

On May 4, 2023, Judge Varlan entered the Order referring Plaintiff's Motion to Amend [Doc. 71] and Defendants' Motion for Extension of Time to File Dispositive Motions [Doc. 92] to the undersigned, along with any case management that may be appropriate [Doc. 101]. Judge Varlan held in abeyance the trial setting and the associated deadlines, except the discovery deadline (July 5, 2023), pending resolution of the motions. The parties continued to file motions, including Plaintiff's Motion for Partial Summary Judgment [Doc. 104], Defendants' Motion to Amend [Doc. 124], and the parties' motions to seal [Docs. 107, 133, and 137]. The motions are ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).[1]

## II.     AMENDING THE PLEADINGS

Both parties seek to amend their pleadings. Under Federal Rule of Civil Procedure 15, courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether justice requires an amendment "is committed to the district court's discretion." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (citations omitted). Despite the liberality of Rule 15(a)(2), a court may deny a motion to amend if the court finds "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

---

[1]     Plaintiff moved to file a sur-reply on June 1, 2023 [Doc. 136]. Defendants responded in opposition on June 6, 2023 [Doc. 139]. While this motion is not ripe, *see* E.D. Tenn. L.R. 7.1(a), the Court finds a reply brief not necessary given that the underlying motion is moot as explained below.

5

amendment, [or] futility of the amendment." *Scheib v. Boderk*, No. 3:07-CV-446, 2011 WL 208341, at *2 (E.D. Tenn. Jan. 21, 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

For the reasons explained below, the Court exercises its discretion to allow Plaintiff and Defendants an opportunity to amend their pleadings.

### A.      Plaintiff's Motion to Amend

Plaintiff requests leave to amend the Complaint to add ChampionX LLC ("Champion X") as a plaintiff and to add seven new defendants, including Viper Monitoring & Analysis, L.P., Viper Machinery Monitoring Corporation (collectively, "Viper"), Signet Monitoring and Analysis, Inc. ("Signet"), Flanagan, Beam, McNair, and Ethan Clark ("Clark") [Doc. 72 p. 2]. The proposed Second Amended Complaint includes a breach of contract claim against Flanagan, Beam, McNair, Signet, and Viper, and adds claims under the Lanham Act, 15 U.S.C. § 1501 *et seq*., and the Copyright Act, 17 U.S.C. § 501 *et seq*., and the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104 *et seq*. [*Id.*].

Defendants object on several grounds. Defendants assert that Plaintiff has engaged in undue delay in seeking its amendment and that the filing of the proposed amended complaint will cause them substantial prejudice in the litigation [*See generally* Doc. 73]. Defendants also contend that Plaintiff acted in bad faith and with dilatory purposes and that the amendment is futile [*Id.*]. They further object to the addition of ChampionX as a plaintiff [*Id.*].[2]

For the reasons explained below, Plaintiff did not act with undue delay, nor did it act in bad faith or with dilatory motives. As for futility, Plaintiff's amendment is arguably sufficient at

---

[2]      In a footnote, Defendants request that the Court deny Plaintiff's motion because it does not fully comply with Local Rule 15.1 [Doc. 73 p. 1 n.1]. Specifically, Defendants assert that while Plaintiff filed its proposed Second Amended Complaint [Doc. 71-1], Plaintiff did not attach the exhibits referenced in the Second Amended Complaint. Plaintiff subsequently filed the proposed Second Amended Complaint with exhibits in compliance with Local Rule 15.1 [*See* Doc. 74-1].

this stage, and to the extent Defendants disagree, they may file dispositive motions. Plaintiff may also add ChampionX LLC as a plaintiff.

### 1. Prejudicial Undue Delay

For the reasons explained below, Plaintiff did not act with undue delay and Defendants will not be prejudiced by the proposed amendment.

### a. Positions of the Parties

Defendants' primary objection to the filing of the Second Amendment Complaint is that Plaintiff exhibited undue delay in filing it. Pointing to the original Complaint, Defendants argue that Plaintiff "could have brought most, if not all, of the claims asserted against [Flanagan, Beam, and McNair] in the Second Amended Complaint when it brought this action in 2021" [Doc. 73 p. 6]. And they assert, several of the claims Plaintiff seeks to assert against them—Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act—existed in the original Complaint [*Id.*]. According to Defendants, the new claims Plaintiff seeks to add against Flanagan, Beam, and McNair are based on alleged breaches of written agreements containing confidentiality obligations, but Plaintiff identified the written agreements in the original Complaint [*Id.* at 7]. Defendants assert that Plaintiff has not provided any explanation for its failure to include Flanagan, Beam, and McNair as Defendants in the original Complaint [*Id.*]. Likewise, while Plaintiff seeks to assert a claim for breach of the license agreement against the Viper Defendants, Signet, and Clark, Defendants assert that on April 13, 2022, Defendant Kelley identified Clark and these entities as having provided him "their properly licensed copies of Windrock MD in Response to [Plaintiff's] Interrogatory No. 14" [*Id.* at 8 (citing Doc. 73-2 p. 2)].

With respect to its claim under the Lanham Act, Defendants assert that the Second Amended Complaint alleges that RSI and McNair violated the Lanham Act by making "false

statements or misleading statements of fact in emails sent to [Plaintiff's] customers starting on April 8, 2020," and continuing throughout April 2020 [*Id.* at 9–10 (quoting Doc. 71-1 ¶ 263)]. Defendants argue that Plaintiff knew of this claim "by at least September 9, 2022, if not earlier" [*Id.* at 9]. According to Defendants, on September 9, 2022, Plaintiff supplemented its responses to Defendant Kelley's interrogatories "referenc[ing its] knowledge of at least some of the statements on which [it] bases its proposed Lanham act claims" [*Id.* at 10; *see also* Doc. 73-3 p. 3]. Defendants conclude, "Plaintiff was, by its own discovery responses, aware of the allegedly misleading statements on which it bases it Lanham Act claim by the discovery materials Defendants produced in August 2022, and it acknowledged awareness of at least some of the alleged statements no later than September 9, 2022, but failed to seek amendment at that time, again without explanation" [Doc. 73 p. 10]. For similar reasons, Defendants argue that Plaintiff's claims under the Copyright Act and the TCPA should be rejected. In sum, Defendants conclude:

> Plaintiff's proposed new claims that Messrs. Flanagan, Beam[,] and McNair breached agreements with Windrock that they also personally participated in the [Defend Trade Secrets Act] and [Tennessee Uniform Trade Secrets Act] violations (Counts 1, 2, and 7–9) and the alleged could have been filed initially, and Plaintiff's Lanham Act claim, its TCPA claim, its claims against the Viper Defendants, and its procurement of breach claim against the newly added individuals (Counts 3, 4, 12, 13, and 15) all could have been brought 11 months ago[.]

[*Id.* at 20]. Defendants submit that Plaintiff has not explained the delay in seeking this amendment, which will result in undue prejudice [*Id.* at 18–22]. Such claims, according to Defendants, will require additional written and oral discovery, including the retaking and expanding depositions [*Id.*]. Under the current Scheduling Order, Defendants claim they do not have sufficient time to conduct this discovery [*Id.*].

8

Explaining that its amendment is timely under the Scheduling Order, Plaintiff replies that Defendants' arguments have no merit [Doc. 74]. Plaintiff states that nineteen days before the original deadline to amend pleadings expired, the parties filed a joint motion to stay the case pending mediation [*Id.* at 1]. During the stay, Plaintiff asserts, the parties continued to complete several discovery tasks and focused their resources on mediating [*Id.* at 2]. When their mediation attempts failed, Plaintiff states that Judge Varlan lifted the stay and set a new deadline to amend pleadings—May 5, 2023 [*Id.*]. Plaintiff filed its motion to amend three days after Judge Varlan lifted the stay and forty-five days before the deadline to amend pleadings [*Id.*].

Plaintiff acknowledges that it knew the identities of Flanagan, Beam, and McNair when it filed its original Complaint given that it previously employed them. But Plaintiff contends that "discovery was necessary to reveal the factual basis of [its] claims against these individuals" [*Id.* at 2]. Plaintiff adds that this "same point applies to [its] new claims against Viper, Signet, and Clark" [*Id.*]. Until Defendants produced documents and the parties engaged in depositions in the latter half of 2022, Plaintiff states that it was not aware of the "full factual basis of [its] claims against all these new parties" [*Id.*]. Plaintiff adds that it "did not depose Defendants' key players until November 2022" [*Id.* at 3]. With respect to Defendants' argument regarding prejudice, Plaintiff states that Defendants "conflate inconvenience with unfair prejudice" [*Id.* at 9]. It contends that Defendants must show "some significant showing of prejudice," which it argues is not present here [*Id.* (quoting *Duggins v. Steak 'N Shake*, 195 F.3d 828, 834 (6th Cir. 1999))].

### b.    Analysis

As an initial matter, Plaintiff's motion is timely under the Scheduling Order. The original Scheduling Order set the deadline to amend pleadings and to add parties for December 16, 2022

(at least 150 days before trial) [Doc. 26 p. 6].[3] Prior to the deadline expiring, on November 30, 2022, the parties filed a joint motion to stay the case to facilitate mediation [Doc. 57], which Judge Varlan granted [Doc. 58]. When Judge Varlan lifted the stay on March 14, 2023, he extended "[a]ll unexpired deadlines" and calculated them from the new trial date of October 3, 2023, in accordance with the same limitations as set forth in the Court's original Scheduling Order [Doc. 70 (citing Doc. 26)]. The new deadline to amend pleadings was therefore May 5, 2023. Plaintiff timely filed its motion almost two months before this deadline on March 13, 2023. "When a plaintiff[, as here,] moves to amend its complaint within the deadline listed in the Court's scheduling order, . . . such [a] request does not in and of itself create substantial prejudice to the opposing party." *Hamm v. FCA US LLC*, No. 2:19-CV-169, 2020 WL 13443062, at *2 (E.D. Tenn. Dec. 15, 2020) (citation omitted); *see also L.V. v. City of Maryville*, No. 3:16-CV-508, 2017 WL 4293233, at *3 (E.D. Tenn. Sept. 27, 2017) ("In this vein, the Court is unwilling to accept an argument that a party's compliance with its Scheduling Order creates a scenario in which substantial prejudice can befall another party. A scheduling order, in fact, has the opposite effect, resulting in 'the orderly preparation of a case for trial.'" (citation omitted)). Indeed, the deadline for amending the pleadings should not have "take[n] [Defendants] by surprise." *L.V.*, 2017 WL 4293233, at *3.

Even so, the Court has considered whether Plaintiff acted with undue delay such that the delay will cause prejudice to Defendants. While "delay alone does not justify denial of leave to amend," "[a]t some point, . . . delay becomes undue, placing an unwanted burden on the court, or . . . prejudicial, placing an unfair burden on the opposing party." *Scheib*, 2011 WL 208341, at *2 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)); *see also Combs v. United States*,

---

[3] The original Scheduling Order set trial for February 14, 2023, but Judge Varlan later reset the trial to May 16, 2023. One hundred and fifty days before trial is Saturday, December 17, 2022, so the deadline to amend pleadings and to add parties was December 16, 2022. *See* Fed. R. Civ. P. 6(a)(5) (explaining that the "next day" is measured by counting backwards).

No. 2:04-CV-306, 2008 WL 11452361, at *2 (E.D. Tenn. July 16, 2008) ("[C]ourts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party." (collecting cases)). As explained in *Phelps v. McClellan*:

> In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

30 F.3d 658, 662–63 (6th Cir. 1994) (citation omitted). "The longer the period of unexplained delay, the less will be required of the nonmoving party in terms of showing of prejudice." *Scheib*, 2011 WL 208341, at *2 (quoting *Phelps*, 30 F.3d at 663). It is only when a party acts with delay that causes prejudice to the nonmoving party that a court should deny a request to amend. *Combs*, 2008 WL 11452361, at *2.

Defendants argue that Plaintiff knew of the basis for its amendments well in advance of filing its proposed Second Amended Complaint. More specifically, Defendants claim that Plaintiff knew the identity of "Flanagan, Beam, and McNair when it filed its original Complaint" and that "many of the factual allegations underpinning the new raised claims against them were also alleged in the Original Complaint" [Doc. 73 p. 3]. Defendants further claim that Plaintiff knew about Signet's, Clark's, and the Viper Defendants' involvement in April 2022, knew of its Lanham Act claim by at least September 9, 2022, and knew it could have brought its copyright claim when it filed its original Complaint. Plaintiff counters that it discovered the "full factual bases" in the second half of 2022 upon Defendants' document production and the taking of depositions [Doc. 74 p. 2]. Defendants acknowledge that Plaintiff "took depositions of Mr. Flanagan, Mr. Beam, Defendant Kelley[,] and Mr. McNair on November, November 8, November 28, and 29, respectively" [Doc. 73 p. 3].

11

Upon review of the record, the day after the parties completed these depositions, on November 30, 2022, they filed a joint motion to stay the case. The case was stayed from December 1, 2022, to March 14, 2023, while the parties engaged in resolution efforts [Docs. 58, 66, and 70]. Three days after Judge Varlan lifted the stay, Plaintiff filed the motion to amend [Doc. 71]. "[Plaintiff] ha[d] no obligation to amend [its] complaint while the case was stayed." *Martinez v. State Farm Mut. Auto. Ins. Co.*, 615 F. Supp. 3d 584, 588 (W.D. Ky. 2022) (citation omitted); *see also Nitride Semiconductors Co. v. Digi-Key Corp.*, No. 17-cv-4359, 2020 WL 13016670, at *4 (D. Minn. Aug. 10, 2020) ("While the case was stayed, Plaintiff had no obligation to amend its Complaint or otherwise litigate this case."). Hence, Plaintiff did not act with undue delay by filing the motion to amend three days after the stay was lifted.

Defendants assert that the amendment will require them to "issue more written discovery and to retake and expand certain depositions, including the initial portion of Windrock's corporate deposition" [Doc. 73 p. 20]. But Defendants do not sufficiently explain why additional extensive discovery will be necessary, nor do Defendants explain the time and resources that will be necessary if the Court allows the amendment. *See Woods v. Cornwell*, No. 418CV00082JHMHBB, 2019 WL 13235542, at *2 (W.D. Ky. Feb. 25, 2019) ("Moreover, Defendants have not demonstrated that additional discovery will cause them to expend significant additional resources." (citation omitted)).[4] And it appears that Plaintiff received discovery relevant to the new claims and new parties in the fall of 2022 [*See* Doc. 73 p. 3].

---

[4] Defendants cite several cases in support of their position, but the Court finds these cases are distinguishable. *Cf. Est. of Barnwell by S.C. B. v. Grigsby*, No. 3:13-CV-124, 2017 WL 4202229, at *1 (E.D. Tenn. Sept. 21, 2017) (denying the plaintiff's motion to amend where "[n]early identical paragraphs were previously proposed in a motion to amend filed nearly four years previous," which the court had denied with prejudice, the remaining new paragraphs served no practical purpose, and the trial was "mere weeks away"); *Doss v. W. Rogers Co.*, No. 3:10-CV-532, 2012 WL 902941, at *2 (E.D. Tenn. Mar. 15, 2012) (denying the plaintiff's motion to amend because deadlines for amending pleadings and for discovery had passed and the plaintiff's new

Relatedly, Defendants assert that Plaintiff waited too close to the discovery deadline to add seven new parties and ten new counts. But Plaintiff filed its motion to amend four months before the discovery deadline. *Cf. Woods*, 2019 WL 13235542, at *2 ("It is true that prejudice may be found where there is insufficient time to conduct discovery[.]"). To the extent there is little time left in this case for discovery under the current scheduling order, Defendants have not shown that an extension of the deadline for discovery "is not an effective means of countering any prejudice." *Id.*[5]

Defendants further assert that the Second Amended Complaint will lead to confusion during trial and the discovery phase. Explaining that the original Complaint used the term "C-structs," they state that they tailored their discovery by using this term, which the Second Amended Complaint abandons. Defendants contend that their discovery "may no longer tie to Plaintiff's allegations in the Second Amended Complaint or the way in which Plaintiff refers to its trade secrets going forward and at trial" [Doc. 73 p. 21]. According to Defendants, explaining this

---

allegations were likely to warrant additional discovery); *Sanford v. AXA Equitable Life Ins. Co.*, No. 09-12190, 2010 WL 1755333, at *2 (E.D. Mich. Apr. 29, 2010) (denying the plaintiff's motion to amend because the new claim was duplicative, the motion was not timely, it was filed one day before the discovery deadline, and depositions would have to be repeated); *Combs*, 2008 WL 11452361, at *1 (denying the defendants' motion to amend given that it was filed more than two years after the deadline to amend pleadings, the defendant did not sufficiently explain the delay, and there was "ample evidence of prejudice to the plaintiff").

[5] At the time Defendants responded to the motion to amend, the dispositive motion deadline had not yet expired. According to the undersigned's calculation, the date to file dispositive motions was May 6, 2023; but because this is a Saturday, the deadline was Friday, May 5, 2023. *See* Fed. R. Civ. P. 6(a)(5) (explaining that the "next day" is measured by counting backwards). Defendants assert that they will be prejudiced if Plaintiff is allowed to file a Second Amended Complaint because it will require them to re-take a Rule 30(b)(6) deposition after the expiration of the dispositive motion deadline [Doc. 73 p. 20]. Given that the Court is allowing both parties to file their requested amendments, the Court is resetting the trial date along with the dispositive motion deadline [*See infra* pp. 24]. As a result, Defendants will not suffer the asserted prejudice.

"distinction to the jury opens the door for jury confusion[,]" and if the parties cannot agree to stipulations to cure this confusion "additional written discovery such as admissions may be required" [*Id.*]. Defendants' argument, however, is speculative and premature, and it therefore does not constitute grounds to deny Plaintiff's timely motion.

In sum, Plaintiff did not delay in seeking an amendment, and even if it did, Defendants will not be prejudiced by Plaintiff's proposed amendment.

### 2. Bad Faith

Defendants' assertion of bad faith is premised on Plaintiff's delivery of the Second Amended Complaint, which Defendants assert "was timed to affect the mediation of this case had on March 9, 2023" [Doc. 73 p. 18]. At the time Plaintiff sent Defendants a draft of the Second Amended Complaint, Defendants assert that their mediation statements to Judge Steger were due two days later. According to Defendants, Plaintiff advised that it intended to approach settlement based on the allegations in the Second Amended Complaint. Defendants believe that "Plaintiff presented a last-minute and significant expansion to the case and its claim in an attempt to extract a favorable settlement" [*Id.*]. They therefore conclude that the proposed Second Amendment Complaint is "intended as a leverage tactic and/or to stall the litigation" [*Id.* at 18].

Plaintiff argues that it did not act in bad faith or with dilatory motives, explaining that it provided Defendants with notice that it intended to file the Second Amended Complaint approximately one week before the judicial settlement conference. Characterizing Defendants' argument as "rank speculation," Plaintiff asserts that "it made perfect sense for [it] to advise Defendants before the mediation that it planned to assert new claims" [Doc. 74 p. 3]. Plaintiff states that it filed its Second Amended Complaint soon after the Court lifted the stay, which "confirms [that its] intentions to pursue the new claims in its Second Amended Complaint were

14

genuine rather than an artifice to create settlement leverage" [*Id*.]. Plaintiff further asserts the Second Amended Complaint is the result of the discovery exchanged in the case.

Defendants' argument for bad faith is, in many ways, a reiteration of their argument of undue delay, and for the reasons explained above, lacks merit. While Plaintiff sent Defendants a copy of its draft amended pleading prior to mediation, this does not necessarily mean that Plaintiff acted in bad faith or with dilatory motives. As noted above [*see supra* Part II, Section A.1.b.], Plaintiff was under no obligation to file its Second Amended Complaint during the stay, *Martinez*, 615 F. Supp. 3d at 588, and Plaintiff filed the proposed Second Amended Complaint three days after the stay was lifted. This was 110 days before the discovery deadline and forty-nine days before the dispositive motion deadline and motion to amend deadline. Put differently, under the timeline of this case, it was well enough in advance of the dispositive motion and discovery deadlines to preclude a finding that it was intended to delay adjudication of this action. *Cf. Miller v. Admin. Off. Of Cts.*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court." (citation omitted)).

### 3. Futility

Defendants assert that Plaintiff's claims under the Lanham Act, the Copyright Act, and the TCPA are futile. In addition, Defendants claim that the Second Amended Complaint does not ascribe any liability to Clark and that the Court does not have personal jurisdiction over Clark and Signet. While futility may bar these claims at a later stage in this litigation, Plaintiff's claims are arguably sufficient for purposes of the motion to amend.

An amendment is futile if it would not withstand a motion to dismiss under Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). "The policy consideration behind futility analysis and motions to amend is to prevent the expenditure of unnecessary effort and resources by the parties as well as the court." *Viera v. The Gen. Auto. Ins. Servs.*, No. 3:19-CV-00901, 2020 WL 12932420, at *3 (M.D. Tenn. Apr. 30, 2020) (citation omitted). "Within this circuit, courts recognize that futility arguments with respect to a motion to amend are functionally dispositive and present something of a 'conceptual difficulty' when raised before a magistrate judge who, by statute, cannot generally rule on dispositive motions." *Stone Door Grp., LLC v. Meade*, No. 1:19-CV-271, 2021 WL 1647765, at *1 (E.D. Tenn. Jan. 20, 2021) (quoting *Durthaler v. Accts. Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011)). But if the "claim is arguably sufficient, it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss." *Durthaler*, 2011 WL 5008552, at *4. "Consequently, . . . in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow." *Id.*; *see also Bear v. Delaware Cnty.*, No. 2:14-CV-43, 2015 WL 1954451, at *3 (S.D. Ohio Apr. 28, 2015) ("At this stage of the litigation, this Court is charged with determining whether the futility of an amendment is so obvious that it should be disallowed.").

With respect to Plaintiff's claim under the Lanham Act, the Lanham Act generally prohibits false association and false advertising. 15 U.S.C. § 1125(a). Under § 1125(a)(1)(B), a plaintiff must allege that "there is some causal link between the challenged statement and harm to the plaintiff." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 750 (E.D. Mich. 2014)

(citation omitted). Defendants argue that Plaintiff fails to adequately plead proximate causation because it does not allege any "facts that support an inference that Plaintiff actually sustained economic or reputation injury flowing directly from the allege misleading statements" [Doc. 73 p. 9]. But Plaintiff alleges that Defendants "unlawfully poach customers from Windrock for the benefit of Defendant RSI" [*see* Doc. 74-1 ¶ 141], and as a result, suffered damages [*see id*. ¶¶ 268–70]. Coupled with the other specific Lanham Act allegations [*See id*. at ¶¶ 262–70], Plaintiff's Lanham Act claim is arguably sufficient to proceed at this juncture.

As for Plaintiff's copyright claim, Defendants assert that they are left speculating the basis for this claim given the "laundry list of possible violations" [Doc. 73 p. 11 (citing Doc. 71-1 ¶ 273)]. In addition, Defendants argue that the copyright infringement claim is duplicative of Plaintiff's breach of contract claim "because there are no additional rights in the breach of contract claim that are found in copyright" [*Id*.]. Citing to paragraphs 124 through 133 of the Second Amended Complaint, Defendants contend that these allegations "are simply that Mr. Kelley used a copy of Windrock MD beyond the scope of the license" [*Id*.].

In order to state a claim for copyright infringement, a plaintiff must allege "(1) it owns a valid copyright and (2) the defendant copied original elements of the work." *Malibu Media, LLC v. Bowser*, No. 5:14CV2759, 2015 WL 5854076, at *3 (N.D. Ohio Oct. 7, 2015). Here, Plaintiff pleads ownership [*see* Doc. 74-1 ¶ 272] and misappropriation [*see id*. ¶¶ 273, 277–82]. Plaintiff also includes relevant allegations in its general allegations [*see id*. ¶¶ 124–32; 242–44] and specifically incorporates them into its Copyright Act claim [*see id*. ¶ 271]. While Defendants argue that the copyright infringement claim is duplicative of Plaintiff's breach of contract claim, the claim is arguably sufficient at this stage given that Plaintiff's "alleged misappropriation implicates one of the five exclusive rights of a copyright owner listed in 17 U.S.C. § 106[,]" which is not

17

required for a breach of contract claim [Doc. 74 p. 6]. *See Martin v. SGT, Inc.*, No. 2:19-CV-00289, 2020 WL 1930109, at *9 (D. Utah Apr. 21, 2020) ("The court need not decide, however, whether [the plaintiff's] breach of contract claim implicates exclusive rights under the Copyright Act because the parties agree that at least one basis for the breach of contract claim does not involve any exclusive rights").

With respect to the TCPA claim, Defendants state that while Plaintiff references Tenn. Code Ann. § 47-18-104(b)(27), only the office of the attorney general and reporter can seek enforcement under that section. Further, Defendants claim that Plaintiff's Second Amended Complaint "fails to sufficiently plead the unfair or deceptive conduct" or "plead facts to establish an ascertainable loss" [Doc. 73 p. 13]. Arguing that, under the TCPA, the plaintiff must plead the unfair and deceptive conduct with particularity, Defendants assert that the Second Amended Complaint fails to meet this requirement. According to Defendants, Plaintiff identifies particular emails "but fails to explain what made those e-mails deceptive" [*Id.*]. Instead, Defendants assert, "Plaintiff's sole attempt at meeting the particularity required for pleading deceptive or misleading conduct under the TCPA is its allegation that 'RSI and its agents made various misrepresentations concerning the quality of its good and services in comparison to Windrock's offerings'" [*Id.* (citing Doc. 71-1 ¶ 287)]. Defendants contend this allegation is insufficient [*Id.*].

The TCPA prohibits (1) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have," Tenn. Code Ann. § 47-18-104(b)(5); (2) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," Tenn. Code Ann. § 47-18-104(b)(7); and (3) "[e]ngaging in any other act or practice which is deceptive

18

to the consumer or to any other person . . . ," Tenn. Code Ann. § 47-18-104(b)(27). Plaintiff responds that "it does not suggest it has such standing" under § 104(b)(27) and that the Second Amended Complaint simply included some of the prohibitions of the TCPA [Doc. 74 p. 7]. In light of Plaintiff's representation, the Court **STRIKES** the reference to § 104(b)(27) from paragraph 290 of the Second Amended Complaint. *See* Fed. R. Civ. P. 12(f) (explaining that the court may strike on its own an immaterial matter for a pleading). But the remaining allegations are sufficient at this stage in light of Plaintiff's allegations regarding emails [*see* Doc. 74-1 ¶¶ 111–12, 284, 287–88, and 291], as Plaintiff is not required to prove the representations in the emails are false at this stage and there is sufficient particularity to be tested by way of a motion to dismiss. *See Johnson v. Branch Banking & Tr. Co.*, No. 3:18-CV-150-CRS, 2018 WL 4492478, at *4 (W.D. Ky. Sept. 19, 2018) ("However, to survive a motion to dismiss, the [plaintiffs] do not need to *prove* anything. They must only 'state a claim to relief that is plausible on its face.'" (citation omitted)).

With respect to the claims against Signet and Clark, Defendants acknowledge that their defense counsel does not represent them, but they contend "that the Second Amended Complaint is futile as to both" [Doc. 73 p. 15]. First, Defendants argue that "Plaintiff fails to ascribe any liability to Mr. Clark for any count in the Second Amended Complaint and therefore states no claim against [him]" [*Id*.]. Second, Defendants state that Clark is a citizen of Alberta, Canada, and there are no allegations that he has any contacts with Tennessee. Similarly, with respect to Signet, Defendants claim that its principal office is in Alberta, Canada, and there are no allegations that it has any contacts with Tennessee. Should they be added to this case, Defendants claim that "there undoubtedly will be jurisdictional challenges" delaying this matter [*Id*. at 15–16].

"[S]ome courts have held that a present defendant lacks standing to argue futility where that defendant is unaffected by the new claim." *Phillips v. Hinds*, No. 1:19-CV-331, 2020 WL

11029920, at *1 (W.D. Mich. Oct. 19, 2020) (collecting cases); *but see Carter v. Great Am. Grp. WF, LLC*, No. 3:11-0794, 2012 WL 3286048, at *2 (W.D. Tenn. July 23, 2012) (finding that the defendants had standing to argue futility of proposed amendment against a new defendant "because [it] is a valid objection to a motion to amend"). Even so, the addition of Clark and Signet at this juncture is appropriate for the same reasons as explained above [*see supra* pp. 15–16 (explaining that it is a sound exercise of discretion to allow a claim to be pleaded and then tested by way of a motion to dismiss)]. In the Second Amended Complaint, Plaintiff alleges that Clark has an ownership interest in the entity Defendants [*see* Doc. 74-1 ¶¶ 23, 38–41], and that Signet has contacts with Tennessee through its business dealings with Plaintiff and Defendants [*see, e.g.*, *id.* ¶¶ 29–30, 83–88, 125–30, 178–86, 232–50]. Should these defendants have a valid personal jurisdiction defense, they may assert it at the appropriate time.

In sum, Plaintiff has set forth an arguable basis for allowing its claims under the Lanham Act, Copyright Act, the TCPA, and for allowing the claims against Signet and Clark to proceed at this juncture. To the extent Defendants have valid grounds for objecting to these claims or parties, they may test their arguments in a dispositive motion. *Durthaler*, 2011 WL 5008552, at *4.

### 3.    Addition of ChampionX as a Plaintiff

Plaintiff seeks to add ChampionX as a plaintiff due to "a recent development caused by an impended reorganization" [Doc. 72 p. 3]. In the Second Amended Complaint, Plaintiff alleges that while Plaintiff "is and has been at all relevant times the interested party in this action, on or about May 1, 2023, Windrock, Inc., will merge with ChampionX LLC" [Doc. 74-1 ¶ 3]. "Following this merger, Windrock, Inc. will cease to exist as an individual corporate entity" [*Id.*].

In their response to Plaintiff's Motion to Amend, Defendants assert that Plaintiff's request is premature because the merger had not occurred at the time of Plaintiff's filing. In addition,

Defendants argue that Plaintiff's request is improper because a motion to amend "pursuant to Rule 15 is not the procedurally proper mechanism to substitute or add ChampionX as a party" [Doc. 73 p. 16]. Instead, Defendants assert that Plaintiff should proceed under Rule 25.

Subsequently, Defendants filed a motion to amend their Answer to the Amended Complaint [Doc. 124]. In that motion, Defendants request leave to amend their answer to "assert a counterclaim against Windrock, and join ChampionX as a defendant" [*Id*. at 1]. It is therefore unclear whether Defendants maintain their objection because they too request that ChampionX become part of this case [*See* Doc. 124].

Nevertheless, in light of both parties' requests, the Court finds it appropriate to allow ChampionX to become a party in this case by way of Plaintiff filing an amended complaint, even though Rule 15 may not be the appropriate vehicle to substitute or add ChampionX as a party. *See The Charter Oak Fire Ins. Co. v. SSR, Inc.*, No. CV 11-118-HRW, 2015 WL 10890126, at *3 (E.D. Ky. July 13, 2015) (noting that while plaintiffs' motion to amend under Rule 15 to add a defendant successor in interest was not procedurally correct, "it would be inconsistent with the spirit and intent of the Federal Rules to deny [the p]laintiffs' [m]otion on this technicality alone").

### B.    Defendants' Motion to Amend

Defendants request that the Court allow them to amend their Answer to the Amended Complaint [Doc. 29] to include RSI's Counter-Complaint against ChampionX, LLC f/k/a Windrock, Inc., and ChampionX for intentional interference with business relations [Doc. 124]. For grounds, Defendants argue that they recently learned "of significant portions of [RSI's] counterclaim" after having received documents by Plaintiff on April 19 and 26, 2023 [*Id*. at 2]. Plaintiff's only objection is that the proposed amendment is futile [Doc. 129 p. 1].

21

Under Tennessee law, in order to assert an intentional interference with business relationship, a plaintiff must allege

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;
>
> (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general;
>
> (3) the defendant's intent to cause the breach or termination of the business relationship;
>
> (4) the defendant's *improper motive or improper means*, and finally; and
>
> (5) damages resulting from the tortious interference.

*Cherokee Metal Prod., Inc. v. MiTek USA, Inc.*, No. 2:19-CV-101, 2021 WL 5161895, at *7 (E.D. Tenn. June 30, 2021) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)). For reasons similar to those addressing Defendants' arguments about the futility of Plaintiff's proposed amendment [*see supra* Part II, Section A.3], Defendants have set forth an arguable basis to allow the amendment to proceed beyond this juncture, *Stone Door Grp., LLC*, 2021 WL 1647765, at *1; *Durthaler*, 2011 WL 5008552, at *4, and none of Plaintiff's arguments convince the Court to the contrary.

Plaintiff argues that its competition against RSI is lawful and nature [Doc. 129 p. 2–3]. While "[e]ntering a competition market and competing with existing players is not enough to constitute improper means[,]" *F.S. Sperry Co. v. Schopmann*, 304 F. Supp. 3d 694, 706 (E.D. Tenn. 2018), Defendants have set forth several allegations that Plaintiff used improper means, including false statements and intimidation tactics [*See* Doc. 124-1 (Counterclaim) ¶¶ 33, 44–45, 50, 59, 61–67, 83(a)–(f))].

Plaintiff also asserts that Defendants fail to allege contractual and exclusive customer relations [Doc. 129 p. 3]. It claims this is fatal "because the claim Defendants wish to assert against [it] cannot be premised on general competition between commercial actors but rather the use of improper means to interfere with business relations" [*Id*. at 3]. But there is no requirement that Defendants must have contractual and exclusive customer relationships. *See Cherokee Metal Products, Inc.*, 2021 WL 5161895, at *2. As Defendants argue, their Counter-Complaint identifies RSI's business relationships and alleges that Plaintiff improperly interfered [*See* Doc. 124-1 ¶¶ 57–59, 61–64]. "[And] Defendants' Counterclaim also identifies a class of third persons, namely oil and gas industry customers, which [RSI] has prospective business relationships that [Plaintiff] has interfered" [Doc. 135 p. 4 (citing Doc. 124-1 ¶¶ 26, 77)].

Further, Plaintiff submits the Declaration of Mary Chapman [Doc. 130-1] in support of its assertion that the statements RSI relies upon to allege its intentional interference with business relationship claim are true and that "Defendants efforts to transform these communications into tortious misrepresentation are futile" [Doc. 129 p. 4]. Yet, in considering a futility defense in response to a motion to amend, "[a] court may not consider matters outside the pleadings, such as affidavit evidence[.]" *DP Precise, LLC v. Phoenix Ins. Co.*, No. 13-CV-12397, 2014 WL 12662316, at *4 (E.D. Mich. Apr. 23, 2014). This is because "a futility defense tests the legal sufficiency of the pleading, and not the evidentiary support that the moving party has mustered for it." *Id*.

Finally, Plaintiff states that Defendants fail to plead damages caused by its alleged interference. While Defendants identify two customers, Plaintiff contends their "allegations about their loss of business from these customers and the nexus between those alleged losses and [Plaintiff's] actions are nothing more than rank speculation hiding behind the cloak of 'information

23

and belief'" [Doc. 129 p. 6].[6] But Defendants are permitted to plead upon "information and belief." *Antioch Litig. Tr. v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010) ("Moreover, qualifying words such as "upon information and belief" and "appear" are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts."). And Defendants have pleaded that they were harmed by Plaintiff's actions [*See* Doc. 124-1 ¶¶ 57–67]. To the extent Plaintiff disagrees, it may test the sufficiency of Defendants' allegations through dispositive motion practice.

## III.  CASE MANAGEMENT

Both parties acknowledge that the Court should revisit the Scheduling Order [Doc. 92 p. 1 n.1; Doc. 102 p. 1 n.1]. In light of the amendments allowed and in order to allow the parties sufficient time to prepare for trial, the trial of this matter is **CONTINUED** to **June 4, 2024,** and the dispositive motion deadline is **RESET** to **January 5, 2024**. The parties are **ORDERED** to meet and confer (in person or by video conference) about the remaining deadlines, including specifically the discovery deadline, and to **FILE** a joint status report in CM/ECF on or before **July 7, 2023**.

In their meet and confer, the Court **ORDERS** the parties to engage in good faith discussions about the specific discovery that each party needs to move forward in this action, as amended. Discussions shall include Defendants' Motion to Reopen Rule 30(b)(6) Deposition of Windrock, Inc., Corporate Designee Mary Chapman [Doc. 96][7] and the most recent discovery dispute about

---

[6]     The parties acknowledge that Plaintiff's argument is similar to Defendants' argument in opposition to Plaintiff's Motion to Amend [Doc. 129 p. 6; Doc. 135 p. 5 n.2]. As with Defendants' argument, Plaintiff's argument here does not constitute grounds to deny Defendants' motion.

[7]     Defendants claim that if the Court grants Plaintiff's Motion to Amend, they will "certainly need to redo the entire" deposition of Mary Chapman [Doc. 73 p. 20 n.10]. While the undersigned is not convinced at this time that Defendants need to "start from scratch," it would be prudent to allow the parties to meet and confer with respect to this issue before any Court intervention.

the number of depositions Defendants seek. The parties shall be mindful of Rule 1, which states that the parties should construe the Federal Rules of Civil Procedure in a manner that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In preparing the joint status report, the parties shall include their proposed deadlines and a statement of whether they have made any agreements about Defendants' motion to reopen the deposition [Doc. 96] and Defendants' request to take additional depositions.

## IV. CONCLUSION

For the reasons explained above:

1. The Court **GRANTS** Plaintiff's Motion for Leave to File Second Amended Complaint [**Doc. 71**]. Plaintiff **SHALL** file its Seconded Amended Complaint with the attached exhibits, but without the reference to Tenn. Code Ann. § 47-18-104(b)(27), on or before **June 16, 2023**.

2. The Court **GRANTS** Defendants' Motion to Amend Answer to Assert Counterclaim [**Doc. 124**].

3. The Court **DENIES AS MOOT** Defendants' Motion to Extend Dispositive Motion Deadline [**Doc. 92**].

4. The Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Partial Summary Judgment [**Doc. 104**].

5. The Court **DENIES AS MOOT** the parties' Motions to Seal [**Docs. 107, 133, and 137**] and **INSTRUCTS** the Clerk's Office to delete the proposed sealed entries associated with these motions [**Docs. 109–121, 134, and 138**] in accordance ECF Rule 12.2.

6. The Court **DENIES AS MOOT** Defendants' Motion for Extension of Time to File a Response to Plaintiffs' Motion for Leave to File Document Under Seal [**Doc. 131**].

7.     The Court **DENIES AS MOOT** Plaintiff's Motion for Permission to File Sur-Reply [**Doc. 136**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge