UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WINDROCK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RESONANCE SYSTEMS, INC., et al. <br><br> Defendants. <br>――――――――――――――― <br> RESONANCE SYSTEMS, INC. <br><br> Counter-Plaintiff, <br><br> v. <br><br> CHAMPIONX, LLC f/k/a WINDROCK, INC., and CHAMPIONX CORPORATION <br><br> Counter-Defendants | Case No.  3:21-CV-00288 |

**RESONANCE SYSTEMS, INC.'S COUNTERCOMPLAINT
AGAINST CHAMPIONX, LLC f/k/a WINDROCK, INC. AND CHAMPIONX
CORPORATION**

COMES NOW, Defendant Resonance Systems, Inc. ("RSI"), pursuant to Federal Rule of Civil Procedure 13 and 20, as Counter-Plaintiff and alleges that Counter-Defendants ChampionX, LLC f/k/a Windrock, Inc. and its parent company ChampionX Corporation have intentionally interfered with RSI's current and prospective business relations. In support, RSI pleads as follows:

**PARTIES**

1. RSI is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.

1

2. ChampionX, LLC is a limited liability company organized under the laws of the state of Delaware with a principal office in 11177 S. Stadium Drive, Sugar Land, Texas 77478. It is the successor in interest to Windrock, Inc., the Tennessee corporation and former subsidiary of Apergy Corporation, that brought this action originally. On or about May 1, 2023, ChampionX, LLC and Windrock, Inc. merged to form a single entity, with ChampionX, LLC (hereinafter "Windrock") continuing as the surviving entity. It does business from an office within Knoxville, Tennessee located at 1832 Midpark Rd #102, Knoxville, TN 37921.

3. Upon information and belief, ChampionX Corporation ("ChampionX" and, together with Windrock, "Defendants") is a corporation organized under the laws of the state of Delaware with a principal office located at 2445 Technology Forest Boulevard, Building 4, Suite 1200, The Woodlands, Texas 77381. Upon information and belief, ChampionX is the current parent corporation of Windrock. ChampionX is the surviving entity of a merger of Apergy USA, Inc. ("Apergy") (the previous parent company of original Plaintiff, Windrock, Inc.) and ChampionX Holding, Inc. that occurred on June 3, 2020.

## JURISDICTION AND VENUE

4. This Court has supplemental jurisdiction over RSI's claims arising under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District. Windrock maintains an office in Knoxville, Tennessee and numerous of its employees conduct business from that office. Upon information and belief, ChampionX's direct employees reside in and conduct business from Tennessee. Additionally, upon information and belief, it was reasonably foreseeable to ChampionX that it would become involved in the present dispute in this District given its close relationship to

Windrock and its involvement in directly taking action to interfere in RSI's business relations.

## FACTUAL BACKGROUND

**A.      RSI**

6.      RSI is a Tennessee corporation whose primary business is the manufacture and distribution of equipment known as portable analyzers ("analyzers"), and associated software, that allows its customers, who are businesses in the oil and gas industry, to monitor the functional health of the customer's reciprocating equipment, such as engines, fans, and compressors.

7.      RSI's portable analyzer is known as the "Lenz" and its associated proprietary software is called "Rmonix".

8.      RSI was formed on March 25, 2020 by Defendant Josh Kelley, Edward Flanagan, Steve McNair, and Paul Beam (the "Founders").

9.      Mr. Flanagan is one of the founders of Windrock and left Windrock in 2017. Mr. Flanagan previously entered into an employment agreement with Windrock, however, the non-compete terms of that agreement expired prior to the formation of RSI.

10.     Mr. McNair was employed by Windrock in 2015 and left his employment with Windrock in August 2018. Windrock claims Mr. McNair previously entered into an "Agreement Concerning Inventions, Patent Rights, Trade Secrets, Confidential Information and Noncompetition" with Cook Compression, an affiliate company of Windrock, however, the non-compete terms of that agreement expired prior to the formation of RSI.

11.     Mr. Beam was employed by Windrock in 2006 and left his employment with Windrock in October 2018. Windrock claims Mr. Beam previously entered into a Retention Agreement with Dover Energy Automation, an affiliate company of Windrock, however, the non-compete terms of that agreement expired prior to the formation of RSI.

12. Mr. Kelley was employed by Windrock in 2007 and left his employment with Windrock in January 2018. Beginning January 11, 2018 he worked as an independent contractor (on a part time basis) for Windrock, until January 2019. Windrock claims Mr. Kelley entered into a Retention Agreement with Dover Energy Automation, an affiliate company of Windrock, however, the non-compete terms of that agreement expired prior to the formation of RSI. Windrock claims Mr. Kelley also entered into a "Mutual Confidentiality and Non-Disclosure Agreement" with Windrock, but that agreement did not contain a non-compete provision.[1]

**B.  Windrock**

13. Windrock also was and is in the business of manufacturing and distributing portable analyzers and its associated software, known as Windrock MD, that allow businesses in the oil and gas industry to monitor reciprocating equipment.

14. Windrock has sold several models of its portable analyzer over the years. As is relevant here, these models include the 6320 family of portable analyzers (the "6320") and the 6400 family of portable analyzers (the "6400")(collectively "the Analyzers").

15. Upon information and belief, Windrock first released the 6320 in 2009.

16. Upon information and belief, Windrock released the 6400 in 2016.

17. From and after September 1, 2017, as relates to the facts and claims raised herein, Defendants, at all times, acted through their employees, actual agents, and/or apparent agents. These employees and agents acted on behalf of Defendants and Defendants' current and past subsidiary and affiliate entities.

18. ████████████████████████████████████

---

[1] RSI is not taking a position on whether the agreements with the Founders are enforceable or applicable to other claims in this case. There is no dispute between the parties that the non-compete provisions of the agreements expired prior to the formation of RSI.

4

19. Several of Windrock's ███████████████████████

20. In a letter dated September 15, 2017, Windrock informed its customers that it no longer intended to sell the 6320 as of September 1, 2017, advising that "the acquisition of specific parts [Windrock] use[d] to manufacture our 6320 Portable Analyzer has developed into a serious issue. We are experiencing difficulty in obtaining necessary parts and in some cases, our vendors have discontinued critical components." A copy of this letter is attached as Exhibit 1.

21. This letter further represented that due to Windrock's difficulties obtaining parts for the 6320, Windrock would "honor, to the best of [its] ability" its product support plan through 2021.

22. On or before April 1, 2020, Windrock announced to its customers that, beginning on September 30, 2020, Windrock would no longer provide support or maintenance for the 6320. A copy of this letter is attached as Exhibit 2.

23. In this letter, Windrock stated to its customers that it could not support the 6320 beyond September 30, 2020 because it lacked the ability to manufacture or otherwise obtain certain parts for the 6320.

24. Upon information and belief, Windrock's primary purpose in ending support for the 6320 was to force its customers to purchase its newer 6400, even though the 6320 was sufficient to meet most, if not all, of its customers' needs.

25. Upon learning that Windrock had informed customers that it would no longer support or service the 6320, RSI began actively soliciting customers using the 6320, advertising that it could provide support and service for the 6320.

5

2365040.2
Case 3:21-cv-00288-TAV-JEM   Document 148   Filed 06/21/23   Page 5 of 15
PageID #: 3274

## C. Interference by Windrock and ChampionX

26. Since 2020, RSI has competed with Windrock for multiple customers, including, but not limited to, ▮▮▮ ("W"), K, ▮▮▮ ("E") and ▮▮▮ ("Y"). Some of RSI's customers have purchased RSI's products and services instead of Windrock's products and services due to RSI's superior-quality products and services as well as more competitive pricing.

27. In early 2020, Defendants began investigating RSI's principals, business, products, and services.

28. Sometime in April of 2020, Windrock sent a letter to its customers acknowledging that, after it had announced that it would no longer support or service the 6320, "other companies in the industry" had begun "claiming to be able to maintain" Windrock's 6320. In this letter, Windrock expressed that because of its "care for" its customers, it wanted to "inform them about [Windrock] as the Original Equipment Manufacturer" ("OEM") for the 6320, and made several statements about Windrock as the OEM. A copy of this letter is attached as <u>Exhibit 3</u>.

29. In this letter, Windrock implied to customers that any service or maintenance that customers received from companies in the industry other than Windrock would be of lesser quality and even suggested that calibrations of the 6320 performed by other companies in the industry might not be accurate.

30. Although Windrock was the company responsible for the sale and maintenance of the Analyzers, the letter reminding customers that Windrock was the OEM for the 6320 was sent on joint Windrock and Apergy letterhead.

31. The letter also encouraged customers to take advantage of Windrock's "low cost trade in program that will allow customers to upgrade their analyzer to the latest model"; i.e. the

6400, and suggested that they contact either Javvad Qasimi or Dylan Abel regarding upgrading from the 6320 to the 6400 by phone or at either individual's Apergy email address.

32. Upon information and belief, Mr. Qasimi and Mr. Abel were both employees of Apergy, which is now ChampionX, at the time this letter was sent. Alternatively, Mr. Qasimi and Mr. Abel appeared to be employees of Apergy at the time the letter was sent.

33. ███████████████████████████████████████

34. The intent of the April 20, 2020 letter was to falsely state to customers in the industry that RSI could not support the 6320.

35. ███████████████████████████████████████
As of September 30, 2020, RSI was not in competition with Windrock for business supporting and maintaining the 6320 because Defendants had already publicly announced its intention to no longer service the 6320 and ceased its support of the 6320 as it had announced it would do.

36. In late 2020 and early 2021, ███████████████████████████████
███████████████████████

37. ███████████████████████████████████████
███████████████████████████████████████
███████████████████

38. On or before February 11, 2021, ███████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████

39. On February 26, 2021, Windrock ███████████████████████
███████████████████████████████████

7

40. On April 16, 2021, Windrock sent a letter to the Founders threatening that Windrock would take legal action against them if they did not cease and desist from "unfairly competing" with Windrock. Windrock stated in the cease and desist letter that "RSI's capability to use, repair and/or calibrate the older version of Windrock's portable data collectors" was an unlawful activity and demanded that RSI stop its service activity. A copy of this letter is attached as Exhibit 4.

41. On May 4, 2021, Defendants' employees or agents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

42. On ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

43. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

44. That same day, ChampionX and/or Windrock's employees and/or agents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

45. Upon information and belief, Defendants employees and/or agents then informed W and other customers or potential customers of RSI that RSI had received a cease and desist letter from Windrock's counsel regarding RSI's business.

46. On August 5, 2021, W issued a purchase order to RSI for the purchase of RSI's Lenz portable analyzers.

47. W has also made other purchases of services and equipment, including sensors, from RSI.

48. Less than one week after W issued its purchase order to RSI, on August 9, 2021,

8

Windrock filed its original Complaint the instant legal action against RSI and Josh Kelley, claiming injury and seeking damages and injunctive relief.

49. On October 13, 2021, Windrock personnel ████████████████████
████████████████████████████████████████████

50. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

51. Upon information and belief, Defendants were concerned about competition from RSI, particularly given ████████████████████████████
████████████████████████████████████████████
████████████ with RSI for the improper purpose of causing W not to do business with RSI.

52. Upon information and belief, the ████████████████████████
████████ and to other of RSI's actual or prospective customers.

53. In early 2022, Defendants ████████████████████████
████████████████████████████████████████████

54. In the first half of 2022, ████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

9

███████████████████████████████████

55. At or about this same time, Windrock's ████████████████████████

████████████████████████████████████████████

56. In these discussions, Windrock's ██████████████████████

████████████████████████████████████████████

█████████████████████

57. In the spring of 2022, RSI and Windrock were in competition to sell E competing products at E's ████████████████████

58. Rather than use RSI's products to maintain its 6320, ████████████████

████████████████████████████████████████████

59. Upon information and belief, E decided to upgrade its 6320 to a 6400, rather than use RSI to maintain the 6320 or provide a new portable analyzer, due to misrepresentations made by Defendants about RSI's products' capabilities and Windrock's lawsuit against RSI.

60. On June 27, 2022, ████████████████████████████████ ████████████████████████ W, issued a purchase order to RSI for portable analyzers and associated equipment to be shipped to various locations owned by W.

61. Additionally, in July of 2022, Y issued a purchase order to RSI for an RSI Systems Compressor Kit ("Compressor Kit").

62. At or around the same time, RSI was competing with Windrock attempting to sell its own portable analyzer to Y.

63. In order to fulfill this purchase order, RSI began the process of registering as one of Y's suppliers.

64. RSI was even informed that Y's intended user of the Compressor Kit had approved

10

the purchase and was waiting on a manager's final signature.

65. However, Y ultimately decided to cancel this purchase order.

66. Upon information and belief, Y decided to upgrade its 6320 to Windrock's 6400, rather than use RSI to maintain its existing 6320 or provide a new portable analyzer.

67. Upon information and belief, Y cancelled this purchase order with RSI because Windrock discovered Y's purchase order to RSI and had been undermining RSI's reputation to Y and suggesting to Y that doing business with RSI was risky due to Windrock's pending lawsuit against RSI.

68. On or before August 12, 2022, W's personnel ███████████████████ ███████████████████████████████████████████████████ ███████████████ A copy of Windrock's ███████████ is attached as <u>Exhibit 5</u>.

69. On or before August 12, 2022, Windrock's ███████████████ ███████████████████████████████████

70. Sales personnel for Windrock ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████ *See* Exhibit 5.

71. Work done by a qualified service technician to repair or service a portable analyzer

does not invalidate the analyzer's safety certifications such as the certification for a Class 1 Division 2 location.

72. RSI provides repair and service through qualified technicians.

73. Windrock's statements to W, and upon information and belief other customers and prospective customers of RSI, were made with the intent to dissuade W and other customers from purchasing or continuing to use RSI's products and services. These statements were knowingly false and misleading, or, alternatively, made with reckless disregard for the truth.

74. Windrock made these statements to W in an attempt to terminate RSI's business relationship with W.

## CAUSE OF ACTION
**(Intentional Interference with Business Relations)**

75. Plaintiff realleges and incorporates herein the allegations contained within the foregoing paragraphs of this Countercomplaint.

76. Upon information and belief, in early 2020 Defendants became aware of of RSI's entry into the marketspace as a competitor to Windrock .

77. Since it began promoting its products and services in the marketplace, RSI has acquired actual and prospective business relationships with multiple businesses in the oil and gas industry, including, but not limited to, W, K, E, and Y.

78. Upon information and belief, Defendants, by and through their actual or apparent employees and/or agents, undertook steps to determine what businesses in the oil and gas industry RSI was doing business with or had sought to do business with.

79. Upon information and belief, Defendants, through their efforts at investigating RSI's operations, learned of and/or identified RSI's prospective business relationships with

12

numerous businesses in the oil and gas industry.

80. RSI entered into a business relationship with W on or about August 3, 2021.

81. Upon information and belief, Defendants, by and through their respective employees and/or actual or apparent agents, gained specific knowledge of RSI's business relationship with W no later than August 5, 2021.

82. Upon information and belief, Defendants, through their respective employees and/or actual or apparent agents, have utilized improper means to interfere with RSI's existing and prospective business relationships with customers in the oil and gas industry.

83. Defendants' improper means included:

   a. communications to RSI's existing and prospective customers warning them that their analyzers would lose the manufacturers' warranty on their analyzers if they allowed third parties who were not the OEM for the analyzer to provide service work on the analyzers;

   b. making false statements to actual and prospective customers of RSI, ███ ███████████████████████████████████ ████████;

   c. communications with RSI's actual and prospective customers, sharing that Windrock ███████████████████████████████ in an effort to dissuade RSI's actual and prospective customers from doing business with RSI and thereby lessen Windrock's competition in the market of oil and gas companies;

   d. communications with RSI's actual and prospective customers, falsely claiming

13

that ███████████████████████████████████████

███████████████████████████████

   e. bringing legal action against RSI for the improper and predominant purpose of forcing RSI out of business to lessen Windrock's competition; and

   f. using the existing of the pending legal action against RSI to improperly damage RSI's reputation in the business community and to improperly damage RSI's relationships with its existing and prospective customers.

84. Defendants' improper actions have damaged RSI's existing and prospective business relationships.

85. Defendants' improper actions have caused RSI damages, including lost sales from existing and prospective customers.

86. Defendants' conduct in making misrepresentations to RSI's customers, and filing this unfounded litigation is in an attempt to unfairly compete with RSI, constitutes unethical conduct.

87. As a direct and proximate result of their intentional interference with RSI's business relations, Defendants have caused damage to RSI in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, COUNTER-PLAINTIFF RESONANCE SYSTEMS, INC. PRAYS FOR THE FOLLOWING RELIEF:

1. For award of damages against Defendants, jointly and severally, in favor of RSI for all damages sustained as a result of Defendant's intentional interference with RSI's business relations, in an amount to be proven at trial;

2. That RSI be awarded its costs in this action;

3. That RSI be awarded all such further and other relief that this Court deems just and proper; and

4. For a trial by jury.

Respectfully submitted this 21st day of June, 2023.

By: */s/ Cheryl G. Rice, Esq.*
**CHERYL G. RICE, ESQ., BPR#021145**
**JOHN L. WOOD, ESQ. BPR#027642**
**RAMEEN J. NASROLLAHI, ESQ., BPR#33458**
**DALTON T. HOWARD, ESQ., BPR#040274**
EGERTON, McAFEE, ARMISTEAD
   &amp; DAVIS, P.C.
900 S. Gay Street, Suite 1400
Knoxville, TN 37902
(865) 546-0500 (Telephone)
(865) 525-5293 (Facsimile)
crice@emlaw.com
jwood@emlaw.com
rjn@emlaw.com
*Counsel for Defendant Resonance Systems, Inc.*
*and Josh Kelley*