UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CHAMPIONX, LLC, f/k/a WINDROCK, INC., )
)
Plaintiff, )
)
v. )                No. 3:21-CV-288-TAV-JEM
)
RESONANCE SYSTEMS, INC., *et al*., )
)
Defendants. )

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and

Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Reopen Rule 30(b)(6) Deposition of

Defendant Resonance Systems, Inc., and for Sanctions [Doc. 348]. Defendant Resonance Systems,

Inc. ("RSI") responded in opposition to the motion [Doc. 356], and Plaintiff filed a reply

[Doc. 362]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set

forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion

[**Doc. 348**].

I.      **BACKGROUND**

On February 28–29, 2024, Plaintiff's counsel, Attorney Weber, deposed Defendant RSI's

corporate designees, Steve McNair ("Mr. McNair") and Josh Kelley ("Mr. Kelley") [Doc. 349

p. 1]. Defendant RSI designated Mr. McNair on Topic 1 (except as it relates to the development

of Defendant RSI's Rmonix software), Topics 2–23, and Topics 29–33 [*Id*.]. Defendant RSI

designated Mr. Kelley on Topic 1 (as it relates to the development of Defendant RSI's Rmonix

software) and Topics 24–28 [*Id*.].

According to Plaintiff, four issues arose during the deposition: (1) "Mr. McNair was woefully unprepared to testify concerning Topics 3, 4, and 5"; (2) "Mr. McNair was not adequately prepared to testify concerning a number of other issues that were directly relevant to the topics for which he was designated, including Topics 2, 7, and 8"; (3) "Mr. McNair was improperly instructed not to answer a question related to his preparation of the deposition and understanding his role as a Rule 30(b)(6) designee"; and (4) "following a break in the [d]eposition, Mr. Kelley altered previous testimony related to viewing Windrock data files in Windrock MD and then was improperly instructed not to answer a question about this abrupt change in his testimony that occurred immediately after a break" [Doc. 348 pp. 1, 3, 4]. Plaintiff seeks the following relief:

(1) [Defendant] RSI must prepare Mr. McNair and make him available for no more than four (4) hours to testify concerning Topics 3, 4, and 5[.]

(2) [Defendant] RSI must prepare Mr. McNair and make him available for no more than two (2) additional hours to testify concerning the other issues and topics that the transcript shows Mr. McNair was unprepared to testify about (Topics 2, 7, and 8)[.]

(3) [Defendant] RSI must update its relevant document production and discovery responses at least five (5) business days prior to the reopened deposition (e.g., produce a full year P&L for 2023, produce a partial year P&L for 2024, produce RSI's 2023 and 2024 invoices issued to its customers that [Defendant] RSI knows or has reason to know were former customers of Windrock, and supplement RSI's response to Plaintiff's Interrogatory No. 12)[.]

(4) Mr. Kelley must reappear for no more than thirty (30) minutes to answer questions about whether he discussed the need to change his testimony during the break in the [d]eposition and any reasonably related follow-up questions concerning the changed testimony[.]

(5) [Defendant] RSI must pay [Plaintiff's] reasonable attorneys' fees and costs related to bringing this [m]otion, preparing for the reopened deposition, and completing the reopened deposition[.]

[*Id*. at 3–4].

Defendant RSI responds that Plaintiff's "arguments relating to reopening Topics 2, 3, 4, 5, 7, and 8 rely upon distorting and omitting portions of [Mr.] McNair's testimony" [Doc. 356 p. 3]. In addition, Defendant RSI states that Plaintiff "has inaccurately represented [its] document production both to witnesses during the deposition as well as to this Court" [*Id.*]. According to Defendant RSI, Plaintiff's "arguments regarding counsel's instructions to both [Mr.] McNair and [Mr.] Kelley not to answer questions pursuant to attorney-client privilege are . . . unsupported" [*Id.*]. Asserting that the Court should deny the motion, Defendant RSI states that it is entitled to its attorneys' fees incurred by responding to the motion [*Id.*].

Plaintiff filed a reply stating that while Defendant RSI did not supplement its discovery responses, it "repeatedly mischaracterizes [the m]otion as a dispute about document productions rather than a dispute about [Mr.] McNair's level of preparation" [Doc. 362 pp. 1, 2]. It maintains that Mr. McNair was not prepared on Topics 2–5, 7, and 8 [*Id.* at 3–7]. Further, defense counsel's instructions to Mr. McNair and Mr. Kelley not to answer questions, Plaintiff argues, were not appropriate [*Id.* at 7–8].

## II.     MR. MCNAIR'S ALLEGED UNPREPAREDNESS

The deposition of a corporate representative is governed by Rule 30(b)(6), which provides in relevant part:

> The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(5); *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505, 2021 WL 1685955, at *4 (E.D. Tenn. Feb. 3, 2021). This rule "imposes burdens on both the

3

discovering party and the designating party." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).

The party seeking a Rule 30(b)(6) deposition "must describe the matters to be explored in the deposition with 'reasonable particularity' sufficient to enable the responding corporation or business entity to produce a representative witness who can testify to the entity's knowledge on the topics so identified." *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023, 2018 WL 826379, at *3 (W.D. Ky. Feb. 9, 2018) (citation omitted). "The test for reasonable particularity is whether the request places upon 'reasonable notice of what is called for and what is not.'" *Id*. at *7 (quoting *St. Paul Reinsurance Co. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000)).

With respect to the responding organization, "it is obligated to produce a witness or witnesses knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation." *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 331 (W.D. Ky. 2022) (citation omitted). "Absolute perfection is not required of a 30(b)(6) witness[,]" and "[t]he mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *QBE Ins. Corp.*, 277 F.R.D. at 691 (citation omitted).

The party claiming that a corporate representative was unprepared "must make at least an initial showing—with record citations—suggesting that the designee's preparation was inadequate." *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) (citation omitted). In determining whether a witness was unprepared, the Court must compare the noticed topics to the deposition testimony. *Id*. (citation omitted).

4

After reviewing the deposition transcript, the Court finds that Mr. McNair was not prepared on Topics 2–5, 7 and 8.

## A.    Mr. McNair's Alleged Unpreparedness on Topics 3, 4, and 5

*Mr. McNair's Testimony on Topic 3*. This topic seeks information about "[t]he products and services [Defendant] RSI has sold to each of its customers, including a description of each product and service sold to each customer, the volume of each product and service sold each customer, the price [Defendant] RSI has charged for each product and service sold to each customer, and the profits [Defendant] RSI has earned from each product and service sold each customer" [Doc. 349-1 p. 3]. It seeks information from 2007 to the present [*Id*.]. When Attorney Weber asked what he did to prepare for this topic, Mr. McNair stated, "It's really related more to my overall knowledge of what we've done" [Doc. 348-2 p. 27]. Attorney Weber asked if he compiled any information, and Mr. McNair responded, "Only in preparing to think about what this would be" [*Id*. at 28]. He testified that he was "prepared to look at the invoices [Attorney Weber had] and talk about what they are" [*Id*.].[1] He did review some invoices [*Id*. at 29]. Because he knew that he could not memorize such information, his plan for answering this topic was to allow Attorney Weber "to show [him] things and talk about things individually" [*Id*. at 29–30]. Attorney Weber asked whether he could testify "about the sales volume that [Defendant] RSI has earned from [certain companies,] through the present, and Mr. McNair responded, "No. My understanding

---

[1]    Attorney Nasrollahi objected to this question because it had been "asked and answered" [Doc. 239-2 p. 28]. The first question Attorney Weber posed was whether Mr. McNair was "prepared to testify as to this information, the sales volume, prices, and profits, for any of [Defendant] RSI's customers" and Mr. McNair said he could not testify about profits and "couldn't memorize the details of each of these" [*Id*.]. Attorney Weber then asked if Mr. McNair could testify individually to any of the above categories [*Id*.]. The first question, which Mr. McNair did not address in full, was different from the second question. The Court therefore overrules the objection.

5

was that we have submitted discovery documents that would have said that" [*Id*. at 31]. Attorney Weber asked:

> Q. Well, the discovery document, as you've seen, the invoices stop at a certain point, and we have very few invoices for 2023, and so you testified earlier that, with respect to some of these customers, [Defendant] RSI has continued to do business for them through 2023 and there would be invoices in 2023 related to some of these customers. So you were able to review those invoices before the deposition, weren't you?
>
> A. I looked over them, is what I did.
>
> A. Well, did you understand, though, that the topic number 3 is requesting that you provide this information through the present? Did you understand that?
>
> A. I did not understand that I was to bring this information with me. I thought that we had answered – I thought we had answered these through discovery.

[*Id*. at 31–32].

*Mr. McNair's Testimony on Topic 4*. This topic seeks information regarding "[Defendant] RSI's revenues, costs, and profits derived from its sale and servicing of [Defendant] RSI's portable analyzers and related software from January 1, 2019, through the present" [Doc. 349-1 p. 3]. It seeks information from January 1, 2019, through the present [*Id*.]. When Attorney Weber asked how he prepared to testify about this topic, Mr. McNair stated, "This is really just—as you've seen, our accounting system is not up to speed, so I don't really have a perfect way to account for this. So this is going to be more based off what we have submitted to you and kind of my opinion of where we are on that" [Doc. 349-2 p. 32]. He acknowledged that the profit and loss statements provide costs and revenues per year, but they do not show the costs and revenues associated with Defendant RSI's portable analyzers and related software [*Id*. at 32–33]. When asked whether he understood that he was under an obligation to testify to the information that was reasonably

6

available to Defendant RSI, he responded, "My understanding is that I would do my best with what I had with this, yes" [*Id*. at 33]. When Attorney Weber inquired further, Mr. McNair referred to his "personal knowledge on this" [*Id*.]. Attorney Weber asked, "There was no reason why you couldn't have reviewed the business records of [Defendant] RSI, correct?" [*Id*.]. Mr. McNair testified, "Well, the time that it takes is really time I don't have to do that in detail" [*Id*.]. He did prepare with his legal counsel [*Id*. at 34–35]. The following exchange occurred:

> Q.    For example, can you testify today about [Defendant] RSI's total revenue received from [a certain company] for the sales and servicing of RSI's portable analyzers and related software through the present?
>
> A.    No. I don't have that detail of information.
>
> Q.    And the same would apply to [four different companies]?
>
> A.    I can testify to them inasmuch as you've shown me the invoices that you have from discovery.
>
> Q.    But those invoices aren't complete. So in terms of that information through the present as requested in this topic, we didn't receive those invoices in discovery, correct?
>
> A.    I don't know if you did or not.

[*Id*. at 35]. Later, he testified that he could give ballpark estimates of the revenues Defendant RSI received from certain customers [*Id*. at 45–46].

*Mr. McNair's Testimony on Topic 5*. This topic seeks, "[Defendant] RSI's revenues, costs, and profits derived from services it performed related to Windrock products (including hardware and/or software) owned by RSI's customers, from January 1, 2019, through the present" [Doc. 349-1 p. 3]. It includes information from January 1, 2019, through the present [*Id*.]. When asked how he prepared for this topic, Mr. McNair testified that "cost and profits are not possible to – they're not even possible to gather from our system" [Doc. 349-2 p. 38]. And with respect to

7

revenues, he reviewed invoices, and he noted that he was "prepared to talk to whatever [Attorney Weber] wanted to present to [him]" [*Id*.]. Attorney Weber asked whether he was aware of his duty to gather or compile information, Mr. McNair responded:

> A. Well, it does not say that in this. It says it's just a topic, so I prepared to speak to it, and that's the case for all of these topics. I didn't read into it that I had the responsibility to gather or all of the things that you are saying. I didn't read into that. I was prepared to speak to these topics.

[*Id*.]. Later, Attorney Weber asked the dollar amount of revenue that Defendant RSI derived from performing services to certain companies for certain products [*Id*. at 44]. Mr. McNair testified, "So I don't know the exact amount of what that would be" [*Id*.].

*Analysis of Preparedness*. Plaintiff states that Mr. McNair's testimony on these topics was deficient because he "(1) improperly treated the [d]eposition as an examination of his personal knowledge; (2) admitted that he did not understand his duties or responsibilities as a corporate representative; (3) did not make any efforts to gather or compile responsive information that was reasonably available to [Defendant] RSI; and (4) was unable to answer any specific questions under Topics 3, 4, and 5" [Doc. 349 p. 9].

Defendant RSI responds that "[Plaintiff's] selective excerpts of [Mr.] McNair's testimony omit the fact that [Plaintiff] had previously been informed that some of the information it sought was not available to [Defendant] RSI, that it refused to show [Mr.] McNair documents he requested in order for him to respond to its questions, that it improperly expected [Mr.] McNair to essentially have all of RSI's financial information memorized, and that it had [Defendant] RSI's documents regarding these topics available to it months prior to the [d]eposition" [Doc. 356 p. 4].

Based on a review of his deposition transcript, the Court finds that he was unprepared for Topics 3–5. With respect to Topic 3, according to Defendant RSI, "[Plaintiff] has not argued, nor

has it presented any evidence that [Mr.] McNair was unprepared to testify regarding products and services sold, a description of those products, or prices charged" [Doc. 356 p. 7]. But Plaintiff's counsel inquired about the invoices, which Mr. McNair "looked over" [Doc. 356-3 p. 38]. A fair reading of his deposition testimony as a whole shows that he could not testify as to specifics [*see* Doc. 348-2 p. 30 ("Well, I knew that I could not memorize this.")], and he acknowledged that he was not prepared to testify about the sales volumes of Defendant RSI's customers.

Further, when Attorney Weber asked how he prepared for these topics, he often responded through his general or personal knowledge and review of some invoices. But Rule 30(b)(6) requires more. *See* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to that organization."); *United States v. Humana, Inc.*, No. 318CV00061, 2023 WL 3168340, at *3 (W.D. Ky. Apr. 28, 2023) ("Rule 30(b)(6) testimony is designed to be representative of the corporation's knowledge not the individual's knowledge."). Defendant RSI argues that "[t]here is no requirement that Mr. McNair read every invoice to be prepared to talk about them, particularly when Mr. McNair stated that he was prepared to talk about any of the invoices" [Doc. 356 p. 7]. Even so, "the corporation or agency in preparation for the Rule 30(b)(6) deposition must review all matters known or reasonably available to it in a good faith effort to find out the relevant facts and to collect information, review documents[,] and interview those employees with personal knowledge." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047, 2016 WL 9460471, at *4 (W.D. Ky. June 29, 2016). Throughout Mr. McNair's deposition, when Attorney Weber asked him about these topics, he responded that such information had been produced in discovery or that he did not know.[2] Given that, the Court finds Mr. McNair was not prepared on these topics and that he may be redeposed.

---

[2]     With respect to costs and profits per customer, Mr. McNair testified that "costs and profits are not possible to–they're not even possible to gather from our system" [Doc. 294-2 p. 38]. The

*Discovery Supplementation.* In addition, Plaintiff asserts that its "ability to meaningfully question [Defendant] RSI related to [its] damages (Topics 3, 4, 5) was further impaired by the fact that [Defendant] RSI's discovery responses and document production related to these topics were outdated and incomplete" [Doc. 349 pp. 12–13]. According to Plaintiff, the most recent profit and loss statement Defendant RSI produced ends in August 2023, although Mr. McNair had access to the profit and loss statements for the entire year of 2023 [Doc. 340 p. 13 (citation omitted)]. Moreover, Plaintiff states that in Interrogatory No. 12, it seeks that Defendant RSI "separately identify the sales revenue and net profits, [it] generated from each person and/or business organization that it knew or had reason to know was a current or former customer of [Plaintiff]" [Doc. 349 p. 13 (citation omitted)]. Defendant RSI supplemented its response on December 1, 2023, but Plaintiff argues that "the supplemental response merely references invoices produced by [Defendant] RSI" and its "expert report on damages" [*Id.*]. "Instead of separately identifying the requested information for each customer (as requested)," Plaintiff argues, "[Defendant] RSI decided to simply provide a document dump and put the onus on [Plaintiff] to decipher [Defendant] RSI's sales to individual customers" [*Id.*]. Plaintiff explains that it requested that Defendant RSI provide sales revenues and net profits information for each customer separately [*Id.*]. It asserts that Defendant RSI ignored its repeated requests to "provide a spreadsheet detailing/itemizing [Defendant] RSI's sales to specific customers" [*Id.* p. 13 n.4].

Defendant RSI responds that it produced to Plaintiff its invoices from 2022 to October 2023 [Doc. 356 pp. 4–5]. It produced these documents in September and October 2023, when

---

Court finds no further inquiry needs to be made regarding costs and profits on a customer-level basis. *See* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."). Further, Defendant RSI represents that "this information has been calculated by [its] expert, Michael Harvey, based upon the same documents that have been provided to [Plaintiff]" [Doc. 356 p. 8 n.4].

10

Plaintiff served its first notice of Defendant RSI's Rule 30(b)(6) witness's deposition [*Id*. at 5]. Plaintiff did not, Defendant RSI asserts, take its deposition until February 2024 [*Id*.]. Defendant RSI's expert relied on these invoices in his November 6, 2023 report, and it referenced them in an interrogatory response December 1, 2023 [*Id*. (citation omitted)]. According to Defendant RSI, "[Plaintiff] knew it had the vast majority of the documents it claims it is missing no later than December 1, 2023, months prior to [Defendant] RSI's Rule 30(b)(6) deposition" [*Id*.]. Further, with respect to Interrogatory No. 12, Defendant RSI responds that "it does not keep certain information sought by Plaintiff on a per-customer basis" [*Id*.]. This Court, Defendant RSI, states found that it could produce business records pursuant to Rule 33(d) to "meet [its] obligation to provide information regarding profits" [*Id*. at 6 (citing Doc. 53 p. 9)]. Defendant RSI submits that "[w]hen [Plaintiff] raised this issue again in the fall of 2023, the Court ordered that if, after expert disclosures were made, [Plaintiff] was not satisfied with the information received, the parties could meet and confer on this issue" [*Id*. (citing Doc. 206 p. 4)]. Plaintiff did not, Defendant RSI asserts, meet and confer [*Id*.].

Under Rule 26(e), the parties have a continuing obligation to supplement their discovery responses "in a timely manner." Fed. R. Civ. P. 26(e). Rule 26(e) does not define "in a timely manner" and the phrase "necessarily depend[s] on the facts and circumstances of each case." *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016) (citation omitted), *aff'd*, 899 F.3d 428 (6th Cir. 2018). "Parties should supplement disclosures and responses 'periodically in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case.'" *Id.* (quoting *U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03–0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009)); *see also Dolgencorp, LLC*, 196 F. Supp. 3d at 795 ("Courts are likely to determine that a party violated Rule 26(e) when the

party supplemented disclosures or responses after the discovery deadline in the case." (citations omitted)).

The topics at issue seek information to the present, which Mr. McNair was not prepared to address. In order to conduct a meaningful Rule 30(b)(6) deposition, and to the extent it has not already done so, the Court **ORDERS** Defendant RSI to supplement its discovery responses **within seven days of entry of this Order** by providing the most current invoices and profit and loss statements [*See* Doc. 160 p. 2 (citations omitted) (explaining that discovery shall be completed by March 6, 2024)]. With respect to Interrogatory No. 12, on November 3, 2023, the Court noted:

> Plaintiff states that Interrogatory No. 12 seeks RSI's sales revenue and net profits generated from Plaintiff's current and former customers, but RSI only produced invoices, which is not sufficient. Defendants offered to amend their interrogatory response once their expert provides his opinion on damages. Plaintiff agreed to this proposal. To the extent there are further issues, the parties shall engage in a meaningful meet and confer in an attempt to resolve them.

[Doc. 206 p. 4]. To the extent this is still an issue [*see* Doc. 362 pp. 4–5], the Court declines to order Defendant RSI to supplement its interrogatory response, other than providing invoices and profit and loss statements, considering Defendant RSI's unrebutted assertion that the parties did not meet and confer as ordered [*See also supra* n.2].

### B. Mr. McNair's Alleged Unpreparedness on Topic 2

This topic seeks testimony about "[h]ow and when RSI originated the relationship with each of its customers and who at RSI was involved in originating each customer relationship" [Doc. 349-1 p. 3]. Mr. McNair testified that this answer was part of an interrogatory response, which he reviewed to prepare for this topic [Doc. 356-3 p. 4]. Mr. McNair did not have the list memorized but stated that if Attorney Weber showed him the interrogatory response, he would be able to speak to the topic [*Id.* at 5]. Mr. McNair identified three customers from memory [*Id.* at 6].

12

He discussed one specific company and how it and Defendant RSI interacted prior to the company purchasing products or services [*Id*. at 6–7]. In addition, Mr. McNair testified about the origination of several customer relationships [*Id*. at 9–10, 12]. He generally testified when some companies became a customer of Defendant RSI [*Id*. at 24, 29], but he was unable to remember the details of another business relationship [*Id*. at 27]. For example, when asked about a specific company, Mr. McNair testified:

> I don't remember the details, but it was in general the same sort of reaching out on LinkedIn, trying to find people. Some people heard about us through word of mouth and contacted us. There was kind of a general – I don't know how the detail of how it happened exactly, but it just sort of happened, and kind of like in the summer of 2020, we became aware of each other around then.

[*Id*.]. When asked who at Defendant RSI was responsible for originating a relationship with a certain company, Mr. McNair stated, "So I believe we've answered all of these in the interrogatories. So if you could show them to me where we've answered that question in an interrogatory, I could talk you through that" [*Id*. at 32; *see also id*. at 33].

Plaintiff argues that "Mr. McNair essentially testified that he was relying on an interrogatory response and a smattering of personal knowledge" [Doc. 349 p. 15]. "At the very least," Plaintiff argues, "[he] should have been prepared to testify on how and when these relationships were formed, and who at RSI was involved" [*Id*.].

Defendant RSI responds that Plaintiff's arguments are "based upon selectively excerpting [Mr.] McNair's testimony and completely obscuring the fact that [Mr.] McNair requested a specific document that would have aided him in responding to [Plaintiff's counsel's] questioning" [Doc. 356 p. 13].

Upon review, the interrogatory response that Defendant RSI relies on identifies a list of customers with some detail regarding how they became customers, but it does not provide specifics

regarding how Defendant RSI originated the relationship with each customer, who at RSI developed the relationship, and when Defendant RSI developed the relationship [SEALED Doc. 358-3 pp. 5–6]. "It is true that a deposition is not a memory contest." *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09CV0169, 2011 WL 13334451, at *7 (N.D. Ohio Sept. 15, 2011) (citations omitted). But still, "the deponent must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization." *Id.* (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150 (S.D. N.Y. 1997)). There are a limited number of companies identified in the interrogatory. As the corporate designee, it is Mr. McNair's responsibility to be prepared to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); *see also Consumer Fin. Prot. Bureau*, 2016 WL 9460471, at *4 ("[T]he representative witness must be adequately prepared by the corporation or agency, which has an affirmative duty, to provide a witness that is able to put forward binding answers on its behalf." (citation omitted)); *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, No. 15-CV-1282-L, 2016 WL 4485564, at *5 (S.D. Cal. July 21, 2016) (noting that the plaintiffs have not "offered case law to support their assertion that it was opposing counsel's responsibility to provide [the p]laintiffs' Rule 30(b)(6) witness with documents to help him adequately respond on behalf of the [p]laintiff corporation").[3] While Mr. McNair was able to identify several

---

[3] Relying on *Davis Electronics Co. v. Springer Capital, LLC*, No. 320CV00038, 2022 WL 904609, at *14 (W.D. Ky. Mar. 28, 2022), Defendant RSI argues that "corporate designees may request to be shown a document 'prior to answering a question about a discrete topic'" [Doc. 356 p. 13]. The Court finds *Davis* inapposite. In that case, the plaintiff argued that the defendant's Rule 30(b)(6) witness was not was not prepared, in part, "because he could not point to specific documents[.]" *Davis Elecs. Co.*, 2022 WL 904609, at *14. The court explained, "As to [the Rule 30(b)(6) witness's] purportedly inability to point to specific documents, given that the production of documents being referenced . . . was purportedly 700 pages, the [c]ourt s[aw] no error in [the deponent] asking to be shown a specific document before answering a question about a discrete topic." *Id.* Here, Mr. McNair asked to see a discovery response that would not have answered the questions within the scope of this topic. And further, his general reference to Defendant's RSI's discovery response was not adequate. *See State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*,

companies and provide details on how they became customers, he was not able to identify them all.

The Court finds that Mr. McNair was not prepared on Topic. 2, and that he may be redeposed.

### C.    Mr. McNair's Alleged Unpreparedness on Topics 7 and 8

*Mr. McNair's Testimony on Topic 7*. Topic 7 seeks information about "[Defendant] RSI's communications with its customers and potential customers regarding the expiration or end of life of any Windrock product (including hardware and/or software) and/or the ability of Windrock and/or RSI to serve these products (including hardware and/or software)" [Doc. 349-1 p. 4]. During the deposition, Attorney Weber inquired about an April 10 email, and Mr. McNair testified:

> Well, we had been approached by quite a few people at the time that were upset that the announcement had been made that the 6320 was obsoleted, so there were a lot of customers in need, and so this was an attempt to try to find customers that possibility could have needed support services.

[Doc. 356-2 p. 13]. He could not recall which customers approached Defendant RSI about Plaintiff making the 6320 product obsolete but stated that if Attorney Weber's showed him Defendant RSI's interrogatory response, he could probably name some [*Id*.]. He could not recall if he attached Plaintiff's letter to his April 10 email [*Id*. at 14]. He could not recall if the recipients of the April 10 email were employed by companies using the 6320 product, explaining that the email was a "shotgun approach" [*Id*.]. He received "quite a few" return emails [*Id*. at 14–15]. Later, when asked how he prepared for this topic, Mr. McNair testified, "This is just based off my general knowledge from the beginning of the company" [*Id*. at 51]. He stated that Defendant RSI had "communications about when [Plaintiff] either has or planned to obsolete a product" [*Id*.]. It had

---

250 F.R.D. 203, 217 (E.D. Pa. 2008) (allowing the Rule 30(b)(6) deponent to point to the documents that contained the information "as long as he does so with some particularity").

communications about the 6320 portable analyzer [*Id.*]. He further testified: "There have been discussions about 6310 being obsolete[,] the 6300 being obsolete, the On-Guard series of online systems being obsolete. Usually the customer approaches us about something being obsolete and can we do anything with it, kind of thing" [*Id.* at 52]. He could not recall whether Defendant RSI had any communications about obsoleting the 6400 [*Id.*]. When Attorney Weber asked if there were any communications regarding it leaving the portable analyzer business, Mr. McNair stated that he did not remember the specifics, but "there have been discussions where customers have brought that up to us" [*Id.* at 53]. Plaintiff's counsel asked whether he expressed any opinions on this issue, and Mr. McNair responded, "I can't remember how we would have handled that at the time" [*Id.* at 54].

*Mr. McNair's Testimony on Topic 8*. This topic seeks information about "[Defendant] RSI's communications with any non-party to this litigation concerning Plaintiff, Plaintiff's goods and services, [Defendant] RSI's competition with Plaintiff, and/or this litigation" [*Id.*]. Mr. McNair testified that he does not recall seeing documentation of interactions between Javvad Qasimi and a customer, but "[t]here could have been some in . . . . discovery" [Doc. 356-3 p. 18]. He provided his primary source of information regarding Mr. Qasimi's interactions, which was confirmed by "[a]nalysts and some folks[,]" but Mr. McNair could not recall all their names [*Id.* at 19]. Later, he stated that he was testifying on behalf of Defendant RSI and that the testimony he provided regarding Ms. Qasimi's interactions is all that he knows but that "there could have been things in discovery that [he does not] remember" [*Id.* at 23].

*Analysis of Preparedness*. Plaintiff argues that with respect to Topic 7, "McNair testified that he was relying on his personal knowledge of these topics[,]" but regardless, "his memory . . .

16

was selective or faulty" [Doc. 349 p. 16 (citations omitted). Noting that Mr. McNair repeatedly testified that he did not know, Plaintiff asserts that he was also unprepared on Topic 8 [*Id*.].

Defendant RSI responds that Plaintiff ignored Mr. McNair's request to see Defendant RSI's discovery responses during the deposition [Doc. 356 p. 14]. According to Defendant RSI, Mr. McNair "was able to explain his approach about contacting potential customers and did answer question about specific contacts to the extent he could recall them without reference to [Defendant] RSI's written discovery response providing this information" [*Id*. at 14–15]. Attorney Weber's questioning, Defendant RSI argues "is more related to [its] counterclaim than Topics 7 and 8" [*Id*. at 15].

The Court finds that Mr. McNair was unprepared to testify on Topics 7 and 8. With respect to Topic 7, Mr. McNair could not recall (1) which customers approached Defendant RSI about the 6320 product, (2) if he attached Plaintiff's letter to the April 10 email, (3) if Defendant RSI had any communications about obsoleting the 6400 product, and (4) communications about Plaintiff leaving the portable analyzer business. When asked how he prepared on Topic 7, he responded that he was relying on his general knowledge. With respect to Topic 8, he could not answer many questions, noting that he believed that Defendant RSI produced responsive documents in discovery.[4] Therefore, he may be redeposed on these topics.

## III.   THE ALLEGED IMPROPER INSTRUCTIONS

Plaintiff claims that defense counsel improperly instructed Mr. McNair and Mr. Kelley not to answer a question based on the attorney-client privilege. "A person may instruct a deponent not

---

[4]     Defendant RSI argues that "the questions were more related to [Defendant] RSI's counterclaim than Topics 7 and 8" [Doc. 356 p. 15]. It does not expand on this assertion, and, therefore, the Court declines to consider it. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted and alteration in original)).

17

to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2); *see also* [Doc. 3 ¶ 1]. The Sixth Circuit Court of Appeals has recognized eight elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citation omitted). The party asserting the privilege bears the burden of showing it applies. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) (collecting cases). "In the context of discovery, the privilege must be narrowly construed to facilitate the full discovery of relevant information in the course of a lawsuit while still 'full and frank communication' between attorney and client." *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 3326814, at *2 (M.D. Tenn. Apr. 17, 2018) (citing *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005)).

"[T]he mere fact of consultation with a lawyer about an issue is generally neither privileged nor protected." *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 189 (D.D.C. 2014) (citation omitted). It becomes privileged when there are "inquir[ies] into the specific content of the conversation between attorney and client." *Id.* "[C]ommunications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 185 (N.D. Ill. 2018) (citations omitted).

The Court finds the instruction to Mr. McNair not to answer the question was proper. The Court finds the instruction to Mr. Kelley not to answer the question was premature.

18

## A. The Instruction to Mr. McNair

Plaintiff claims that "Mr. McNair was improperly instructed not to answer a question about his preparation and understanding of his role as a Rule 30(b)(6) designee, purportedly based on the attorney-client privilege" [Doc. 349 p. 16]. During the deposition, Attorney Weber asked Mr. McNair, if he was going to rely on Defendant RSI's interrogatory responses, why he did not bring a copy of them to the deposition [Doc. 356-3 p. 45]. Mr. McNair stated that he was not aware that he could bring a copy with him to the deposition, and Plaintiff's counsel inquired, "So you would rely on your counsel to advise you whether you could do that or not?" [*Id*. at 45]. Attorney Nasrollahi instructed Mr. McNair not to answer based on privilege [*Id*. at 46]. The parties took a break so that defense counsel could confirm his objection [*Id*.]. He confirmed the privileged objection, stating "that he could have gotten advice from counsel one way or the other. You're just trying to find out what he was told or not" [*Id*. at 48]. Attorney Weber stated, "No. I'll accept a yes or no answer to that question" [*Id*.]. Attorney Nasrollahi responded, "I'm instructing him not to answer" [*Id*.].

Plaintiff asserts that "[t]he instruction by [Defendant] RSI's counsel was improper because [its] question did not seek privileged conversations between Mr. McNair and RSI's counsel" [Doc. 349 p. 17]. Because Mr. McNair could not answer other questions and was not aware he could bring documents, Plaintiff states that its inquiry was permissible [*Id*.].

Defendant RSI argues that Mr. McNair's "answer would require [him] to divulge communications protected by the attorney-client privilege" [Doc. 356 p. 16]. The question, Defendant RSI contends, "sought to discover whether Mr. McNair had discussed his ability to bring information with him to the deposition with counsel" [*Id*. at 17].

19

The Court finds the attorney-privilege protects Mr. McNair's response from disclosure. given the context of the questioning. Mr. McNair testified that he was not aware he could bring copies of the discovery requests with him to the deposition, and Attorney Weber immediately followed, "So you would rely on your counsel to advise you whether you could do that or not?" [Doc. 356-3 p. 45]. Plaintiff states that it "did not ask [Mr.] McNair whether he discussed bringing documents into the [d]eposition with his counsel or what was discussed" but instead, "the question was intended to establish whether [Mr.] McNair knew he had the ability to request advice of counsel regarding the extent of his duties as a Rule 30(b)(6) designee" [Doc. 362 p. 7 (emphasis omitted)]. But in reading the exchange, this question seeks "to discover whether Mr. McNair had discussed his ability to bring information with him to the deposition with counsel" [Doc. 356 p. 17]. And Mr. McNair already testified that he was not aware he was allowed to bring documents with him to the deposition. Plaintiff states that it would have accepted a "yes" or "no" to that inquiry. Even so, requiring a response would have elicited the specific conversation with his counsel about the ability to bring documents to a deposition.[5] *See Haver v. LVNV Funding, LLC*, No. 21-12893, 2022 WL 22694856, at *3 (E.D. Mich. Oct. 20, 2022) ("[B]ut inquiries into whether there was an exchange between [the plaintiff] and his attorney and what that exchange consisted of directly intruded on privileged communications."), *objections overruled by* No. 21-CV-12893,

---

[5]     The Court does not find Plaintiff's reliance on *Fort v. Leonard*, No. CV 7:05-1028, 2006 WL 8444690, at *3 (D.S.C. Oct. 11, 2006), persuasive. In that case, the defendants raised a blanket objection over questions about "documents defense counsel asked the deponents to review[.]" *Id*. The court found the "blanket objection . . . failed to show that any communications or documents inquired into the depositions at issue are protected by the privilege[.]" Here, Defendant RSI did not assert a blank objection.

2023 WL 11113881 (E.D. Mich. Aug. 7, 2023). The Court finds Attorney Nasrollahi properly instructed Mr. McNair not to answer this question.[6]

### B.    The Instruction to Mr. Kelley

According to Plaintiff, during a break while Mr. Kelley's deposition was pending, "[Attorney Wood] and Mr. Kelley apparently had a substantive conversation about the need for Mr. Kelley to change his previous testimony related to viewing Windrock data files in Windrock MD" [Doc. 349 p. 19 (citation and emphasis omitted)]. During the deposition, Attorney Weber asked Mr. Kelley why he "need[ed] to use Windrock MD to view the data in the customer data files" [Doc. 356-2 p. 3]. Mr. Kelley responded that the standard reverse engineering process is to "open the file in the application" [*Id*. at 4]. Attorney Weber asked whether he "could . . . have used another software to view the data[,]" and Mr. Kelley responded, "I'm not aware of other software that could fully interpret the Windrock MD" [*Id*.]. Attorney Weber asked if Mr. Kelley was "interpreting the data files" [*Id*.]. Mr. Kelley testified, "I think we may be using terms differently. I'm not sure I'm following you" [*Id*.]. The following exchange took place:

---

[6]      Plaintiff also argues that Attorney Nasrollahi made improper speaking objections [Doc. 349 p. 18]. Attorney Nasrollahi did make some speaking objections [*see, e.g.*, Doc. 356-2 p. 42], and he should avoid doing so in the future [*see also* Doc. 3 ¶ 2]. *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *11 (W.D. Ky. July 18, 2017) ("It is the attorney's job to make an objection and then stop talking."). Even so, when reading the transcript as a whole, the Court finds that Attorney Nasrollahi did not misuse his objections or coach Mr. McNair in such a way that impeded the deposition. *Lipian v. Univ. of Mich.*, No. 18-13321, 2020 WL 3402013, at *10 (E.D. Mich. June 19, 2020) ("But improper speaking objections to suggest responses or otherwise coach a witness do not necessarily warrant sanctions, or even an order to reconvene the deposition or to permit other additional discovery. Courts assess whether the inappropriate interjections and other improper obstruction actually impeded deposing counsel's questioning or the witness' testimony." (citations omitted)); *Pogue*, 2017 WL 3044763, at *11 (finding that "in the context of this case as a whole and in the context of the Rule 30(b)(6) deposition in particular, it is understandable, even expected that [defense] counsel provided more detail than usual when objecting in the course of deposition[,]" explaining that the "case had endured an unusual number of discovery disputes").

21

Q. Well, in paragraph 11, you say you were visualizing the data in the Windrock MD data file. So these are the files of data collected by the portable analyzers. Agreed?

A. Yes. In that context, the Windrock MD data file means a file of data collected by the Windrock analyzer.

Q. Right. So in order to visualize, as you say, or see the data, you had to use Windrock MD and that was your only option?

A. It was at least the best or most convenient option.

[*Id*.].

Mr. Kelley stated that there was no other software to view the data, except for the Windrock analyzer [*Id*. at 4–5]. The parties then took a break [*Id*. at 6]. Upon resuming, Attorney Weber asked:

Q. Okay. Mr. Kelley, I don't have any more substantive questions for you, but before we wrap up, I want to ask you, do you have any testimony that you gave prior to the last break that you would like to change?

A. Yeah. You were asking about if there's any other way to view the files other than Windrock MD, and I got -- I thought this and then got overly focused on analyzer versus MD, because of some of your follow-up questions, but there are obvious ways, (inaudible) Hex Editor and start interpreting the bytes yourself, and that's what I spent most of doing during the reverse engineering process.

Q. Did you discuss this topic during the break with anybody?

MR. WOOD: Objection. That would be privileged.

MR. WEBER: Not really, not after he changes his testimony after the break. I can inquire if –

[*Id*. at 6–7]. Mr. Wood instructed Mr. Kelley not to answer [*Id*. at 9].

Plaintiff argues that the Eastern District of Tennessee allows consultations with clients during breaks, but it asserts that "it was improper for [Attorney Wood] and Mr. Kelley to have a

substantive conference related to changing Mr. Kelley's previous testimony during a break while the deposition was pending" [Doc. 349 p. 20]. According to Plaintiff, it "should have been allowed to probe the reason Mr. Kelley changed his testimony and how the change came about" [*Id.*].

Defendant RSI responds that the Court's Order Governing Depositions "ends the inquiry on this issue" [Doc. 356 p. 19]. "[Plaintiff] seeks the power[,]" Defendant RSI argues, "to flip a switch and render privilege arbitrary based upon its assumptions or allegations" [*Id.*].

The Court's Order Governing Depositions provides in relevant part:

> Counsel and their witness–clients shall not engage in private, off–the–record conferences while the deposition is proceeding in session, except for the purpose of deciding whether to assert a privilege. Counsel may confer with their clients during midmorning, lunch, midafternoon, or overnight breaks in the deposition. However, counsel for a deponent may not request such a break while a question is pending or while there continues a line of questioning that may be completed within a reasonable time preceding such scheduled breaks.

[Doc. 3 ¶ 3]. Plaintiff acknowledges that the Court allows attorneys and their clients to consult but argues attorneys may not coach the witness. But whether defense counsel coached Mr. Kelley during the break is speculative. Plaintiff states that "[g]iven that Mr. Kelly changed his prior unambiguous testimony, [it] should have been allowed to inquire why" [Doc. 349 p. 21]. Because the question did not relate to any specific conversations, the Court finds that Defendant RSI has not established that the question elicited privilege information. *See Heins v. Com. & Indus. Ins. Co.*, No. 3:17-CV-110, 2018 WL 4963570, at *4 (S.D. Ohio Oct. 15, 2018) (finding that the objection to the question, whether the deponent discussed his answer with counsel during the break, was improper); *Phillips v. Spartan Light Metals, Inc.*, No. 3:06-CV-864, 2008 WL 11508988, at *4 (S.D. Ill. Jan. 25, 2008) (finding the question, "Did you and the lawyer discuss [d]eposition [e]xhibit 35 during the break?" was not protected by the attorney-client

23

privilege because it did not seek the substance of those conversations). Attorney Weber's "general question was permissible, even if a question into the substance of the communication would not be." *Phillips*, 2008 WL 11508988, at *4 (noting that the question, "what did the attorney say to you about Exhibit 35?" would be impermissible).

Defendant RSI argues that even if the Court were to find that Mr. Wood's instruction was not proper, "a second deposition solely to ask what a witness and his counsel discussed during the break is unreasonable" [Doc. 356 p. 21 (quoting *Heins v. Com. & Indus. Ins. Co.*, No. 3:17-CV-110, 2018 WL 4963570, at *6 (S.D. Ohio Oct. 15, 2018)]. Defendant RSI does not sufficiently explain why it would be unreasonable. And to the extent Defendant RSI asserts that a second deposition on its own is unreasonable, the Court finds limiting the time of questioning addresses the concern.

## IV.    SANCTIONS

Plaintiff seeks to reopen the Rule 30(b)(6) deposition, and it seeks its "attorneys' fees and costs related to bringing this [m]otion, preparing for the reopened deposition, and completing the reopened deposition" [Doc. 348 p. 4]. The Court has noted several areas where Plaintiff has established that Defendant RSI was not prepared to testify. "[P]roducing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Fed. R. Civ. P. 37(d)." *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio Sept. 30, 2017) (citation omitted). "Rule 37(d) provides for a variety of sanctions[,]" including "imposition of costs[.]" *Id.* (quoting *QBE Ins. Corp.*, 277 F.R.D. at 690). If a Rule 30(b)(6) witness is unprepared, courts may order that the deposition be reopened. *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-CV-3785, 2022 WL 3582366, at *5 (S.D. Ohio Aug. 19, 2022).

24

The Court grants Plaintiff's request to open the Rule 30(b) deposition so that Plaintiff can ask Mr. McNair about Topics 2–5, 7, and 8 and can ask Mr. Kelley whether he discussed changing his testimony during the break with anybody and any appropriate, non-privileged follow-up questions within the scope of that question. The parties **SHALL** complete the Rule 30(b)(6) deposition within **fourteen (14) days of entry of this Order**. In light of the limited nature of the deposition, the Court will limit Mr. McNair's deposition to 3.5 hours and Mr. Kelley's deposition to twenty minutes. The Court further awards Plaintiff its attorneys' fees for re-taking the Rule 30(b)(6) deposition. *See* Fed. R. Civ. P. 37(d)(3). Given Plaintiff's partial success on its motion, the Court finds an award of attorney's fees for motion practice appropriate. The Court, however, limits the amount of fees to 75% to account for the partial success. *See id*.; *Hamm v. Acadia Healthcare Co., Inc.*, No. CV 20-1515, 2024 WL 1463168, at *11 (E.D. La. Apr. 4, 2024) (reducing the award for attorney's fees because the "motion for sanctions was not wholly successful"). The parties **SHALL** meet and confer over the amount of reasonable attorney's fees incurred. To the extent they cannot agree to the amount, Plaintiff **SHALL** file a supplemental brief explaining the amount requested within **twenty-one (21) days.** The Court declines to award Plaintiff time for preparing for the reopened deposition as it has already spent time preparing for the deposition and the additional time to prepare will largely be duplicative.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Reopen Rule 30(b)(6) Deposition of Defendant Resonance Systems, Inc., and for Sanctions [**Doc. 348**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge

26