UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHAMPIONX, LLC, f/k/a WINDROCK, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 3:21-CV-288-TAV-JEM | |
| ) | | |
| RESONANCE SYSTEMS, INC., *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and the Order [Doc. 455] referring this matter by United States District Judge Thomas A. Varlan.

Now before the Court is Defendants' Motion in Limine to Exclude Evidence Regarding Expert Witness James Plank's Prior Arbitration with StreamScale, Inc. [Doc. 372]. Plaintiff responded in opposition to the motion [Doc. 392], and Defendants replied [Doc. 413].

Also before the Court is Plaintiff's Motion to Reopen Deposition of Defendants' Expert Witness Dr. James Plank and for Sanctions [Doc. 393]. Defendants responded in opposition to the motion [Doc. 425], and Plaintiff filed a reply [Doc. 431].

The motions are ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion in limine [**Doc. 372**] and **DENIES** Plaintiff's motion to reopen the deposition [**Doc. 393**].

I.  BACKGROUND

On February 21, 2024, Plaintiff's counsel took the deposition of Defendants' expert, James S. Plank, Ph.D. ("Dr. Plank") [Doc. 392-1 p. 1]. Plaintiff's counsel asked Dr. Plank whether he had ever been a party to a lawsuit [*Id*. at 5]. Dr. Plank responded that in 2014, StreamScale Inc.,

("StreamScale"), where he had been a consultant, named him as a defendant and accused him of "[i]mproper information disclosure" [*Id*.]. He testified that he had signed a nondisclosure agreement and StreamScale alleged that he violated that agreement [*Id*.]. Dr. Plank further testified that he and StreamScale participated in arbitration where they agreed to settle "and no blame was assigned either way" [*Id*.]. As part of the arbitration, Dr. Plank signed a confidentiality agreement [*Id*.]. Plaintiff's counsel asked if source code was involved in that litigation, and Dr. Plank responded, "I'm actually not going to answer. Again, I signed a confidentiality agreement about that suit, and I'm not comfortable disclosing details" [*Id*.]. Defense counsel stated, "I'm going to object. That's a privilege[] between him and his attorney at the time. Dr. Plank is asserting privilege" [*Id*.].

Later, during the depositions, Plaintiff's counsel raised the issue again [*Id*. at 6]. He asked if the lawsuit involved source code, and Dr. Plank stated, "And I signed a confidentiality agreement, and I plan to honor that completely. So I'm not going to answer that question" [*Id*.]. The parties took a break, and upon return, defense counsel stated:

> So, Dr. Plank has entered into an agreement in this other case. He would be from what I understand, he would be violating that agreement if he answered any further questions. Also a lot of the information is attorney-client privilege. I have not received the agreement or talked to the attorney. It's difficult for me to fully evaluate the privilege and address each of these questions, so until I can do that, I'm instructing him not to answer any further questions on this case.

[*Id*.]. Upon questioning by Plaintiff's counsel, defense counsel agreed to review the agreement for the purpose of possibly changing his instruction to Dr. Plank [*Id*.].

Following the deposition, in an email dated February 23, 2024, Plaintiff's counsel stated: "Please let us know as soon as possible whether Defendants will instruct Dr. Plank not to answer any questions regarding the aforementioned arbitration matter, whether Dr. Plank will maintain his

2

refusal to answer any further questions concerning the arbitration or whether Dr. Plank will respond to such questions" [Doc. 392-1 p. 8]. Plaintiff's counsel followed up on March 1, 2024 [*Id*. at 9]. The parties agreed that Defendants needed to put StreamScale on notice of Plaintiff's inquiries [*Id*. at 11–13].

Later, Plaintiff's counsel requested to resume Dr. Plank's deposition and agreed to allow StreamScale's attorney to be present [*Id*. at 17–23]. The parties reached an impasse on whether to reconvene Dr. Plank's deposition [*Id*.].

Defendants now seek an order "prohibiting [Plaintiff], its counsel, and its witnesses from presenting any evidence or arguments or otherwise referring to an arbitration proceeding filed against Defendants' expert witness, [Dr. Plank]" [Doc. 372 p. 1]. Pursuant to Rules 401 and 608 of the Federal Rules of Evidence, Defendants state that the StreamScale Arbitration and the StreamScale Settlement are irrelevant, especially "because neither StreamScale nor Dr. Plank admitted any fault" [Doc. 373 p. 5]. In addition, relying on Rule 403, Defendants submit that allowing Plaintiff to cross-examine Dr. Plank about the StreamScale Arbitration or the StreamScale Settlement will be confusing and mislead the jury because Dr. Plank "will be forced to testify on his dispute with StreamScale" [*Id*.]. They explain that "[i]f Plaintiff is allowed to cross-examine Dr. Plank about the StreamScale Arbitration or the StreamScale Settlement, Dr. Plank's hands will be tied, and he will be forced to refuse to testify on his dispute with StreamScale, just as he did at his deposition" [*Id*.]. In addition, according to Defendants, allowing Plaintiff to discuss the StreamScale Settlement and the StreamScale Arbitration "would effectively turn [this case] into a 'mini-trial' concerning improper considerations painting Dr. Plank as an uncredible witness" [*Id*. at 6]. Stating that Dr. Plank's testimony "goes to the very heart of Defendants' defense[]," they

3

argue that allowing such evidence "would undermine Dr. Plank's credibility and resultantly and unfairly prejudice Defendants and hamstring [their] defense" [*Id*. at 7].

Plaintiff responds that "[n]either Defendants' arguments nor their cited caselaw are sufficient to support this [m]otion" [Doc. 392 p. 3]. It contends that "the jury should be permitted to evaluate the issues in [Dr.] Plank's arbitration" [*Id*. at 5]. According to Plaintiff, "[a]t a minimum, the arbitration appears to have some similarity to the allegations in this case—improper disclosure of confidential information" [*Id*.]. Although Defendants claim that "Dr. Plank's hands will be tied[,]" if asked questions about the StreamScale Arbitration and StreamScale Settlement, Plaintiff states this argument "ignores the Court's inherent authority over witnesses and evidence and ignores that his testimony would be subject to the Protective Order entered in this cause" [*Id*. at 6]. Given that Defendants call Dr. Plank a "key witness," Plaintiff should be allowed to test his credibility and bias [*Id*.].

Defendants reply that Dr. Plank's opinions are not related to violations of non-disclosure agreements [Doc. 413 p. 1]. While Plaintiff states it should be able to test bias, Defendants argue that StreamScale's accusation against Dr. Plank "should not be allowed to imply bias when it is not directly related to Dr. Plank's opinion or his expertise" [*Id*. at 3].

Before Defendants replied, on May 13, 2024, Plaintiff filed its motion to reopen, which largely relies on its response to Defendants' motion in limine [Doc. 393].

Defendants responded to the motion to reopen asserting that Plaintiff did "not compl[y] with the Court's order regarding discovery procedures in bring this motion" [Doc. 425 p. 2]. They also rely on the briefing to their motion in limine [*Id*. at 2–3]. To the extent the Court allows Dr. Plank to be re-deposed, Defendants request that "a protective order be entered limiting

4

Dr. Plank's deposition testimony to testimony that does not cause him to violate the StreamScale Agreements" [*Id*. at 3].

Plaintiff replies that it did not follow the discovery dispute procedure because Defendants initially raised this issue in their motion in limine and the issue is related to Plaintiff's response to that motion [Doc. 431 p. 1]. In addition, Plaintiff contends that, at the time, "trial was imminent" [*Id*.]. While Defendants seek a protective order, Plaintiff argues "seeking affirmative relief in a [r]esponse is not procedurally correct" [*Id*. at 2 (citation omitted)]. Further, Plaintiff states that the existing Protective Order in this case protects Dr. Plank's testimony relating to StreamScale, and the Court has the authority to direct Dr. Plank to respond to questions [*Id*. (citation omitted)]. According to Plaintiff, Defendants' requested protective is "illogical" because it does not know what questions would violate the StreamScale Agreement and it appears that any question would be a violation [*Id*. at 2–3].[1]

## II. DEFENDANTS' MOTION IN LIMINE

"Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration." *Greene v. LEDVANCE LLC*, No. 3:21-CV-256, 2024 WL 4181777, at *1 (E.D. Tenn. Sept. 12, 2024) (quoting *United States v. Amir*, No. 1:10-CR-439, 2011 WL 3862013, at *1 (N.D. Ohio Aug. 31, 2011)). "Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citation omitted). "A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the

---

[1] On July 22, 2024, Dr. Plank filed a Motion for Protective Order [Doc. 440], requesting that that the Court enter a protective order prohibiting another deposition.

district court." *Greene*, 2024, WL 4181777, at *1 (quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994)).

Defendants seek to prohibit Plaintiff from presenting arguments or evidence regarding Dr. Plank's arbitration with StreamScale, arguing that such evidence is irrelevant. Defendants assert that inquiries about the StreamScale arbitration have no probative value. Plaintiff responds that Dr. Plank's previous arbitration is relevant for purposes of his credibility and bias at trial, reasoning that "the arbitration appears to have some similarity to the allegations in this case" [Doc. 392 p. 5]. It states that "[h]aving been accused himself, there is at least an argument that [Dr.] Plank is biased in favor of programmers like [Defendant] Kelley who are accused of violating [non-disclosure agreements], in addition to biased toward freely using or sharing work created or held in confidence for someone else" [*Id*. at 5–6].

Rule 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). Rule 608(b) states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1).

"[C]ourts routinely exclude evidence about the prior litigation history and the disciplinary records of expert witnesses." *Ferris v. Tenn. Log Homes, Inc.*, No. CIVA4:06CV-35-M, 2010 WL 1049852, at *1 (W.D. Ky. Mar. 19, 2010) (collecting cases). But courts will allow such inquiries "when doing so is of sufficiently probative value." *Id*. at *2; *see also In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-CV-3487-RMG, 2023 WL 3409041, at *2

6

(D.S.C. May 12, 2023) (granting motion in limine to exclude expert's alleged violation of certain laws because the inquiry was not "of any probative value"); *Giles v. Sam's E., Inc.*, No. 118CV00170, 2021 WL 6274876, at *5 (W.D. Ky. Sept. 23, 2021) (explaining that evidence of past malpractice claims "*may* be admissible when it is of sufficiently probative of value"). And "[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (quoting 3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970)); *see also In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 510 F. Supp. 3d 538, 556 (S.D. Ohio 2020) (explaining how evidence of bias is relevant and "ultimately an issue for the jury" (citation omitted)).

According to Defendants, "Dr. Plank has retained the data file created by Windrock's analyzer, the source code of both parties, and render opinions related to both. Dr. Plank was not retained to evaluate a non-disclosure agreement or opine on whether a non-disclosure agreement was violated" [Doc. 413 p. 1]. But Defendants also retained Dr. Plank to "[i]nvestigate and evaluate Plaintiff's claim that [Defendants used its] trade secret and confidential material" [SEALED Doc. 247-11 p. 7]. He also opines that Defendant Kelley did not reverse engineer Plaintiff's data by accessing its source code [*id.*], which is not too different from the allegation that Dr. Plank mishandled confidential information [*See* Doc. 440-1 ¶ 5 ("Disputes arose between StreamScale and [Dr.] Plank concerning the Consulting Agreement with Streamscale asserting that [Dr.] Plank had breached the confidentiality provisions of that Agreement and included some of the confidential material in publicly disclosed materials.")].

7

Bias may arise in a "vast variety of situations." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 575 F. Supp. 3d 942, 945 (S.D. Ohio 2021) (citation omitted). As the Sixth Circuit has explained:

> Extrinsic testimony, or that elicited by cross examination to show the bias or interest of a witness in a cause, covers a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only.

*Id*. at 945–46 (quoting *Majestic v. Louisville & N.R. Co.*, 147 F.2d 621, 627 (6th Cir. 1945)). Considering this, and the subject matter of Dr. Plank's opinions, the Court finds that the matter of Dr. Plank's arbitration with StreamScale is significantly probative. *See Rheinfrank v. Abbott Lab'ys, Inc.*, No. 1:13-CV-144, 2015 WL 5258858, at *1 (S.D. Ohio Sept. 10, 2015) (noting that the experts' malpractice lawsuits were "relevant and may be useful in helping the jury assess expert credibility and competency on cross-examination[,]" in a product liability lawsuit, alleging that the ingestion of Depakote during a pregnancy caused injuries to the baby); *Ferris*, 2010 WL 1049852, at *1 (denying the defendant's motion in limine to exclude the appraisal board actions against its appraiser, explaining that "the mistakes alleged to have been made in [the expert's] assessment of [the plaintiffs'] property are related to the same types of mistakes he admittedly made in the assessment of the properties for which he was disciplined"); *cf. In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2023 WL 3409041, at * 1–2 (granting the plaintiff's motion in limine to exclude the defendants from presenting evidence that their expert was alleged to have violated Anti-Lobbying laws in a case about defendants' contamination of the plaintiff's water supply, finding that defendants "have not shown this line of inquiry is of an probative value—especially given that no wrongdoing was ever issued against [the expert]");

*Giles*, 2021 WL 6274876, at *5 ("Because [the p]laintiff has not shown that the malpractice claims are relevant to [the expert's] opinions in this case and the introduction of the claims would involve collateral and irrelevant matters, this testimony will be excluded.").

But even if evidence is relevant, the Court may exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . , [and] wasting time . . . ." Fed. R. Evid. 403. With respect to the matter before the Court, the Court is mindful "that extensive cross-examination on the topic could waste time and result in mini-trials." *Rheinfrank*, 2015 WL 5258858, at *8. While Dr. Plank's general dispute with StreamScale and how they resolved it is relevant to his credibility and alleged bias, any further inquiries relating to these subjects beyond what Dr. Plank testified to in his deposition would be a waste of time and would risk confusing the issues before the jury in this case. Fed. R. Evid. 403; *Magnuson v. Trulite Glass & Aluminum Sols., LLC*, No. 19 C 6158, 2024 WL 1216338, at *13 (N.D. Ill. Mar. 21, 2024) (limiting the plaintiff's cross examination of the expert witness's previous testimony under Rule 403, finding "any probative value from allowing such a questionable impeachment was exceeded by the danger of confusing the jury with potentially time-consuming subtrials, remote from the subject matter"); *see also Esteban-Garcia v. Wal-Mart Stores E., LP.*, No. 21-23831, 2022 U.S. Dist. LEXIS 203580, *21 (S.D. Fla., Oct. 4, 2022) ("Moreover an inquiry into those lawsuits would undoubtably lead to a mini trial where [the expert] would be forced to defend his actions even though they were based on the facts entirely different from those presented here."); *Robertson v. Neison*, No. 2016CV30861, 2018 Colo. Dist. LEXIS 257, at *9 (D. Col. Mar. 9, 2018) ("In any event, any information on [the expert's] lawsuit including all of the extensive background information which would necessarily have to go to the jury for fair understanding of the issue, is completely collateral to the disputed substantive issues in his case.

Presentation of such evidence would lead to the sideshow to take over the circus and derail the orderly completion of these proceedings."). Hence, Dr. Plank's concerns about answering additional questions related to his dispute with StreamScale as violative of his settlement agreement and how his inability to testify would cause confusion, mislead the jury, and be unfairly prejudicial are moot.[2]

### III. PLAINTIFF'S MOTION TO OPEN

Plaintiff seeks to reopen Dr. Plank's deposition so that he can "answer questions about the facts underlying his prior arbitration with StreamScale" [Doc. 393 p. 1]. It also seeks sanctions [*Id.*].[3]

Dr. Plank testified that StreamScale alleged that he disclosed confidential information and the parties settled during an arbitration without admitting liability [Doc. 392-1 p. 5]. StreamScale's counsel, Michael Adler, filed an unsworn declaration under the penalty of perjury, stating that Dr. Plank and StreamScale signed a Consulting Agreement that contained a confidentiality obligation [Doc. 440-1 ¶ 4]. He describes, "Disputes arose between Streamline and [Dr.] Plank concerning the Consulting Agreement with StreamScale asserting that [he] had breached the confidentiality provisions of that Agreement and included some of the confidential material in publicly disclose materials" [*Id.*]. "StreamScale initiated an arbitration proceeding against [Dr.] Plank[,]" and the parties settled" [*Id.* ¶¶ 5, 7].

---

[2]  Plaintiff offers that Dr. Plank's testimony could be designated as "attorney's eyes only" [Doc. 383 p. 6], but Plaintiff does not explain how such a designation would allow any such testimony to be introduced at a trial.

[3]  Defendants object to the motion because Plaintiff did not follow the Court's Scheduling Order that requires the parties to participate in an informal conference with the magistrate judge [*See* Doc. 26 p. 3]. As Plaintiff argues, Defendants initially raised the issue in their motion in limine [Doc. 431 p. 1]. Because Defendants' motion in limine and Plaintiff's motion to reopen are "inextricably linked" [*id.*], the issue is not amendable to an informal discovery conference.

10

"On motion or on its own, the [C]ourt must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that[] . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(a)(2)(C)(i). Considering the Court's ruling on the motion in limine, and the evidence already in the record, the Court finds that reopening Dr. Plank's deposition is unreasonably cumulative and duplicative under Rule 26(a)(2)(C)(i).

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion in Limine to Exclude Evidence Regarding Expert Witness James Plank's Prior Arbitration with StreamScale, Inc. [**Doc. 372**] and **DENIES** Plaintiff's Motion to Reopen Deposition of Defendants' Expert Witness Dr. James Plank and for Sanctions [**Doc. 393**].

**IT IS SO ORDERED.**

ENTER:

_Jill E. McCook_
Jill E. McCook
United States Magistrate Judge