CHAMPIONX, LLC, f/k/a WINDROCK, INC., )
)
Plaintiff, )
)
v. )        No. 3:21-CV-288-TAV-JEM
)
RESONANCE SYSTEMS, INC., *et al.*, )
)
Defendants. )

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Exclude the Testimony of John O'Donahue [Doc. 301]. Plaintiff has responded in opposition to the motion [Doc. 332], and Defendants filed a reply [Doc. 343]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion [**Doc. 301**].

## I.    BACKGROUND

"[Plaintiff] designs and manufactures data acquisition products and online systems that are used worldwide by operators, engineers, and maintenance personnel to analyze, monitor, trend, alarm, and automatically diagnose the condition of machinery" [Doc. 176 ¶ 17]. It sells portable analyzers—"devices that collect data that is used to assess the mechanical condition and performance of reciprocating compressors and engines, as well as rotating equipment" [*Id*. ¶ 18]. With its portable analyzers, Plaintiff also sells its software, "Windrock MD" [*Id*. ¶ 19]. This software "allows an authorized user to review and analyze data collected on the user's assets from

[Plaintiff's] data acquisition products to determine the health of the assets" [*Id*. ¶ 20]. While the portable analyzers "collect data in binary format, which is presented as an intelligible continuous series of binary digits having no contextual meta-data for decoding or interpretation[,]" Windrock MD translates the data into readable reports [*Id*. ¶ 110]. Plaintiff claims that the Windrock MD source code "contains proprietary data structures and data indexing" [*Id*. ¶ 115].

The individual Defendants are Plaintiff's former employees [*Id*. ¶¶ 25, 33, 35, 36]. Plaintiff alleges that in December 2018, Defendant Paul Beam ("Beam") emailed Defendant Josh Kelley ("Kelley"), while Defendant Kelley was still employed by Plaintiff, about "develop[ing] a new portable analyzer to compete with [Plaintiff's] portable analyzers" [*Id*. ¶¶ 117–18]. These Defendants, along with Defendants Edward Flanagan ("Flanagan") and Steve McNair ("McNair"), began collaborating to develop a competing source code, which they called, "Rmonix" [*Id*. ¶¶ 119–27]. "On or about March 25, 2020, Defendants Beam and McNair formed Defendant RSI" [*Id*. ¶ 128]. Afterwards, "Defendant RSI demonstrated the ability of its Rmonix software to decode and translate data received from [Plaintiff's] portable analyzer and other . . . products from [its] proprietary data files" [*Id*. ¶ 134]. Plaintiff alleges:

> There are only two possible explanations for Defendant RSI's software having this capability: (1) Defendant Kelley, acting on behalf of Defendant RSI, utilized a copy of Windrock MD that was unlawfully obtained from a Windrock customer, used his intimate knowledge of Windrock MD's source code and the proprietary data structures and data indexing therein to decode and translate the encoded binary data from Windrock's data files, or (2) Defendant Kelley, acting on behalf of Defendant RSI, unlawfully accessed, relied on, and/or used portions of the Windrock MD source code.

[*Id*. ¶ 136]. "In 2021, RSI introduced its competing portable analyzer, the Lenz" [Doc. 302 p. 4 (citation omitted)].

Plaintiff disclosed John O'Donahue ("Mr. O'Donahue") as its expert witness [SEALED Doc. 247-12]. Mr. O'Donahue has "over 50 years' experience as a software developer and engineering manager, including over 30 years of development software in C and C++" [*Id*. at 2; *see also* Doc. 332 p. 16]. Among other opinions, Mr. O'Donahue opines that (1) the replication of Windrock MD is virtually impossible ("Opinion No. 1"), (2) the protocol buffer definition was made accessible in dynamic link libraries ("Opinion No. 2"), (3) Plaintiff took reasonable steps to protect its source code ("Opinion No. 3"), and (4) Defendant Kelley's use of Windrock MD was not a proper internal business purpose as allowed by the license agreement ("Opinion No. 4") [Doc. 274-12 pp. 3–56; *see also* Doc. 301 pp. 1–2].

Defendants seek to exclude these opinions, citing Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579 (1993) [Doc. 302].

## II.     STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

3

Fed. R. Evid. 702.[1] The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (quoting *Daubert*, 509 U.S. at 593–94), *aff'd by* 89 F. App'x 927 (6th Cir. 2003). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers

---

[1]     Rule 702 was amended on December 1, 2023, but the changes to the rule are not substantive. *Nash-Perry v. City of Bakersfield*, No. 118CV01512, 2023 WL 8261305, at *13 (E.D. Cal. Nov. 29, 2023). Rather, "[t]he amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

## III.   ANALYSIS

Defendants seek to exclude Opinion Nos. 1–4, arguing that Opinion Nos. 1–4 are not reliable and that Opinion No. 4 constitutes a legal conclusion that Mr. O'Donahue is not qualified to render. For the reasons explained below, the Court declines to exclude Opinion Nos. 1 and 2 but will exclude Opinion Nos. 3 and 4.

### A.   Opinion No. 1

Mr. O'Donahue opines "that reverse engineering the Windrock data file is virtually impossible" [Doc. 302 p. 12; *see also* SEALED Doc. 247-12 § 6.1]. Defendants state that Mr. O'Donahue's opinion that replication is virtually impossible "has no basis in any scientific method, testing, or reliance on scientific research, and is simply based on Mr. O'Donahue saying it is so" [Doc. 302 p. 10]. According to Defendants, Mr. O'Donahue includes a 20-page discussion about this opinion and it "does not contain a single reference to any scientific treatise or authority or discuss that Mr. O'Donahue performed any tests or studies" [*Id*. (citation and footnote omitted)]. Defendants state that his "opinion is focused on the complexity of the data types" [*Id*. (citation omitted)]. But in his discussion of the four data types, Defendants assert that he makes conclusory statements, fails to "test[] or support[] his conclusory statements[,]" and does not rely "on any scientific study or methodology to support his conclusion" [*Id*. at 10–11]. "In contrast," Defendants contend, "Dr. Plank[, their expert], applied a scientifically tested reverse engineering process to show that the data files can be reverse engineered without 'intimate familiarity'" [*Id*. at 11]. Stating that "Mr. O'Donahue's opinion is based solely on his subjective belief," Defendants contend that "it is impermissible *ipse dixit* testimony" [*Id*. at 12].

Plaintiff responds that Mr. O'Donahue relied on his experience, which is an acceptable methodology [Doc. 332 p. 8]. "Among other things," Plaintiff states, "Mr. O'Donahue's conclusions are based on his review and comparison of source codes, including comments that [Defendant] Kelley saved in the parties' respective source code, combined with his 50 years of experience in software development" [*Id*. at 10].

Defendants reply that the "numerous opinions or conclusions put forth by [Mr.] O'Donahue that Defendants' [m]otion seeks to exclude are unreliable because [he] has pointed to no analysis or testing he performed which supports them and, he has neither investigated nor referenced support for any facts upon which his opinions are based" [Doc. 343 p. 3].

To be admissible, Mr. O'Donahue's opinions must be reliable. Generally, the factors relevant in evaluating the reliability of the testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey*, 187 F. Supp. 2d at 970–71 (citing *Daubert*, 509 U.S. at 593–94). But these factors do not constitute a definite checklist or test. *Kumho Tire Co.*, 526 U.S. at 138–39 (citing *Daubert*, 509 U.S. at 593). Instead, the "inquiry is 'a flexible one.'" *Id*. at 150 (quoting *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

The Sixth Circuit has recognized that "the four specific factors utilized in *Daubert* may be of limited utility in the context of non-scientific expert testimony[,]" and that if the four factors "were to be extended to outside the scientific realm, many types of relevant and reliable expert testimony—that derived substantially from practical experience—would be excluded."

6

*First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (quoting *United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997)); *see also Kumho Tire Co.*, 526 U.S. at 150 (explaining that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience"); *Kush Enters., LLC v. Mass. Bay Ins. Co.*, No. 3:18-CV-492, 2021 WL 3007263, at *7 (E.D. Tenn. July 15, 2021) (finding that the reliability factors in *Daubert* were not helpful because the "expert testimony [was] derived largely from his practical experiences" (citing *Barreto*, 268 F.3d at 335)).

Starting with Defendants' argument that Mr. O'Donahue did not perform any tests or that his opinion contains no methodology, Plaintiff responds, "Defendants ignore the facts in the record including Mr. O'Donahue's 50 years of experience in the software programming industry—starting at a time well before computers became ubiquitous[] and fail to cite well-settled authority which recognizes that experience may provide an acceptable methodology and sold basis for an expert opinion" [Doc. 332 p. 8]. Indeed, courts have explained that "[n]ot all expert opinions are susceptible to scientific and methodological testing that can be replicated in a lab or confirmed through empirical analysis." *Salter v. Olsen*, No. 18-CV-13136, 2020 WL 4331537, at *4 (E.D. Mich. June 8, 2020), *report and recommendation adopted sub nom.*, *Salter v. City of Detroit*, No. 18-13136, 2020 WL 4284062 (E.D. Mich. July 27, 2020); *see also SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 384 (4th Cir. 2017) (affirming the district court's decision to allow a professor of computer science to "rel[y] on his experience to inform his testimony, rather than any particular scientific method"); *Mod. Holdings, LLC v. Corning, Inc.*, No. 513CV00405, 2022 WL 710174, at *21 (E.D. Ky. Mar. 9, 2022) ("[A]n expert is 'not required to conduct his own testing' because he 'may base an opinion on facts or data in a case that [he] has been made aware of or personally observed.'" (second alteration in original) (quoting *Czuchaj v. Conair*

*Corp.*, No. 5:13-CV-00405, 2016 WL 4414673, at *5 (S.D. Cal. Aug. 19, 2016))), *reconsideration denied*, No. 5:13-CV-00405, 2022 WL 2760751 (E.D. Ky. July 14, 2022); *In re: Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543, 2015 WL 9480448, at *5 (S.D.N.Y. Dec. 29, 2015) ("[A]n expert is not required to conduct independent testing in all cases." (citation omitted)). The Court therefore finds that Mr. Donahue's lack of testing in this case is not fatal to his opinions.

Defendants also submit that Mr. O'Donahue does not cite to any scientific treatise or authority [Doc. 302 p. 10]. They argue that Mr. O'Donahue's opinion is focused on "the complexity of four data types," which he "makes one conclusory statement after another about [them]" [*Id*.]. Plaintiff responds that "Mr. O'Donahue's conclusions do not require the study of or references to learned treatises or academic publications like those written by [Defendants' expert]" [Doc. 332 p. 11]. "Rather," Plaintiff asserts, "it requires familiarity and experience with source code, including how it actually works and the oddities within it" [*Id*.]. In addition, Plaintiff states that Mr. O'Donahue references the material he relied on in forming his opinion [*Id*. at 11].

Mr. O'Donahue explains in his expert report that in order to arrive at his opinions he: (1) examined the Windrock MD source code, (2) examined the Rmonix source code, (3) reviewed Defendant Kelley's comments that are stored in both source codes, (4) accessed the Rmonix demonstration website to test the applicability of Windrock MD data files in Rmonix, and (5) reviewed the discovery produced in this case, including Defendant Kelley's deposition testimony [Doc. 332 p. 12; *see also* SEALED Doc. 247-12 § 4]. He "identifies very unusual ways of accomplishing tasks in the Rmonix source code that are based on the Windrock source" [Doc. 332 p. 11; *see also* SEALED Doc. 427-12 § 6.1.4]. In addition, he reviewed Defendant Kelley's comments "about Windrock MD's capabilities in the Rmonix source code" [Doc. 332 p. 12 n.4; *see also* SEALED Doc. 247-12 § 6.1.4]. Rule 702 states that an expert may be qualified

by his "knowledge, skill, [and] experience." Fed. R. Evid. 702; *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) ("'In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'" (quoting Fed. R. Evid. 702 advisory committee's note (2000)); *Drips Holdings, LLC v. Teledrip LLC*, No. 5:19-CV-02789, 2022 WL 17718291, at *3 (N.D. Ohio Aug. 30, 2022) ("In some cases, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" (quoting *Kumho*, 526 U.S. at 150)). That is the case here. *See Grover v. BMW of N. Am., LLC*, No. 1:19-CV-12, 2022 WL 205249, at *7 (N.D. Ohio Jan. 24, 2022) ("Although somewhat conclusory, [the expert's] application of his knowledge and experience to his examination of documents . . . utilizes a reliable methodology sufficient to satisfy the Court's gatekeeping function." (citation omitted));[2] *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2020 WL 7318087, at *4 (E.D. Tex. Dec. 11, 2020) ("Because [the expert] utilized a reliable methodology in reaching his conclusion—namely, coupling his experience and knowledge with a review of various internal documents—the Court declines to exclude this opinion.").

Upon review, Mr. O'Donahue's opinion is not conclusory *ipse dixit*. The Court finds that Plaintiff has demonstrated that it is more likely than not that Mr. O'Donahue's testimony and opinion are reliable. Fed. R. Evid. 702. "'[R]ejection of expert testimony is the exception, rather than the rule,' and '[a]ny doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility.'" *Brackett v. Columbia Gulf Transmission, LLC*,

---

[2]      Defendants state that unlike "the expert in *Grover*," Mr. O'Donahue did not "identif[y] the documentation upon which he relied for any specific opinion" [Doc. 343 p. 8]. Instead, Defendants argue, "the documents on which [Mr.] O'Donahue relied are listed in the beginning of his report" [*Id*.]. But this argument elevates form over substance. Further, throughout § 6.1 of his report, Mr. O'Donahue discusses Windrock MD's source code in detail and explains why he considers it to be unique [Doc. 332 p. 11; SEALED Doc. 247-12 pp. 16–36]. And in his rebuttal report, he notes,, as he pointed out in his original report, Windrock MD is unique [SEALED Doc. 247-13 p. 7].

9

No. 1:20-CV-00168, 2024 WL 3205416, at *8 (W.D. Ky. June 27, 2024) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (alterations in original)).[3]

## B. Opinion No. 2

Mr. O'Donahue expresses opinions on the protocol buffer definitions being published in the dynamic link library [SEALED Doc. 247-12 §§ 5.1.5; 5.3.6; 6.1.5; 6.3.6; *see also* SEALED Doc. 247-13 pp. 14–15]. Defendants state that this opinion is not based on any facts [Doc. 302 pp. 12–14]. Instead, Defendants argue, "Mr. O'Donahue's sole basis was a comment that [Defendant] Kelley put in the Windrock MD source code some years ago about Google's recommendation" [*Id*. at 12 (citation omitted)]. According to Defendants, "Mr. O'Donahue admits that he did not review the documentation from Google that [Defendant] Kelley was referring to in the comment at issue" [*Id*. at 13 (citation omitted)]. They state that "Mr. O'Donahue went on to admit that he did not know if the protocol buffer definitions were available prior to being placed in a dynamically linked library" [*Id*.]. Defendants conclude "Mr. O'Donahue made no attempt to

---

[3]     While Defendants argue that "Plaintiff fails to cite any previous experience [Mr.] O'Donahue has with Windrock MD, Rmonix, or any previous work by [him] regarding software, such as work on reverse engineering" [Doc. 343 p. 10], Defendants have not pointed the Court to any authority that an expert must have previous experience on the specific item before rendering an opinion, and there is authority to the contrary. *See Cincom Sys., Inc. v. Labware, Inc.*, No. 1:20-CV-83, 2024 WL 3926256, at *4 (S.D. Ohio Aug. 22, 2024) ("Although [the expert] has limited to no experience working directly with Smalltalk or VSE, he has extensive experience in the field of computer science. Consequently, his lack of familiarity with VSE speaks to the weight and credibility of his testimony, not his qualifications." (citation omitted)); *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 624 F. Supp. 3d 808, 816 (W.D. Ky. 2022) ("[The plaintiff's m]otion and the arguments espoused in its [r]eply essentially attempt to discount [the expert's] experience by pointing to very nuanced and specific experiences that [the expert] does not have with [belt filter presses]. However, this argumentative strategy has been rejected by courts in this district on multiple occasions."). Regardless, prior to rendering his opinion, Mr. O'Donahue examined Windrock MD and Rmonix [Doc. 332 p. 10; *see also* SEALED Doc. 247-12 p. 2]. And Mr. O'Donahue opines about the uniqueness of the Windrock MD source code given his "[o]ver 50 years' experience as a software developer and software engineering manager, including over 30 years development software in C and C++[,]" in addition to his experience with reverse engineering with the Department of Defense [SEALED Doc. 247-12 p. 64; *see also* Doc. 332 p. 16]. He, therefore, is not a quintessential expert for hire.

verify his erroneous interpretation of [Defendant] Kelley's comment and thus his opinion should be excluded" [*Id*. at 14 (citation omitted)].

Plaintiff states that Defendants are "tak[ing] Mr. O'Donahue to task for relying on information provided by [Defendant] Kelley, such as his own comments in the Windrock MD source code about the risks of publishing the protobufs" [Doc. 332 p. 13]. According to Plaintiff, "Defendants are tacitly admitting that [Defendant] Kelley is an unreliable source of information; in other words, Mr. O'Donahue should not rely upon [Defendant] Kelley's written word" [*Id*.]. Nevertheless, while Defendants attack Mr. O'Donahue for not reviewing the documentation from Google, Plaintiff asserts that this challenge "goes to the weight of the opinion and not to its admissibility" [*Id*.].

Defendants reply that "[Mr.] O'Donahue did nothing to verify his interpretation of the comment made by [Defendant] Kelley or perform any kind of test or analysis to support his opinion on that point" [Doc. 343 p. 5].

"Even expert testimony based on erroneous facts is generally permitted 'when there is some support for those facts in the record.'" *Builders Mut. Ins. Co. v. GCC Constr., LLC*, 711 F. Supp. 3d 899, 917 (E.D. Tenn. 2024) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008)). There is support here as Mr. O'Donahue explained why he rendered this opinion. Specifically, during his deposition, Mr. O'Donahue testified that he relied on a comment that Defendant Kelley made in the source code [Doc. 302 p. 12; SEALED Doc. 326-1 p. 20]. After reviewing the Google protocol buffer documentation and the readme file, he could not point to any other information that supported his opinion other than his interpretation of the readme file and his expertise [Doc. 302 p. 13; SEALED Doc. 326-1 p. 28]. Defendants' challenge therefore goes more to the weight the jury should give the opinion rather than to its reliability and admissibility. *See In*

11

*re Flint Water Cases*, No. 5:16-CV-10444, 2024 WL 3495377, at \*4 (E.D. Mich. July 22, 2024) ("It is up to the jury to determine whether the one-month offset utilized in the research about the [hypothesis] is based on solid factual ground and, if not, whether any weaknesses undermine the basis of the opinions offered by experts who rely upon the [hypothesis]."); *Rembrandt Enters., Inc. v. Tecno Poultry Equip., Spa*, No. 21-CV-4007, 2023 WL 9004917, at \*10 (N.D. Iowa Dec. 28, 2023) ("'As a rule, questions regarding the factual underpinnings of the expert's opinion affect the weight and credibility of her testimony, not its admissibility.'" (quoting *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 997–98 (8th Cir. 2008)); *In re Flint Water Cases*, No. 17-10164, 2022 WL 189503, at \*2 (E.D. Mich. Jan. 20, 2022) ("As the Sixth Circuit has repeatedly clarified, 'it is not proper for the Court to exclude expert testimony 'merely because the factual bases for an expert's opinion are weak.'" (quoting *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 729 (6th Cir. 2012)).

### C.     Opinion No. 3

Mr. O'Donahue opines that "[Plaintiff] has taken reasonable steps to protect and maintain the confidential nature of its source code" [Doc. 302 p. 14 (quoting SEALED Doc. 247-12 § 5.4)]. Mr. Donahue discusses Plaintiff's physical facilities, its implementation of network security, the confidentiality of its source code, features about Windrock MD's database files, including "unorthodox encoding" [*Id*. at 15–16 (citations omitted)]. In addition, he notes that "Windrock employees annually acknowledge a Code of Conduct which includes confidentiality restrictions" [*Id*. at 16 (quoting SEALED Doc. 247-12 § 5.4.5)]. Mr. O'Donahue further states, "Use of Windrock MD is subject to an industry standard End User License Agreement (EULA) restricting

12

the use of Windrock MD" [*Id*. (quoting SEALED Doc. 247-12 § 5.4.7)].[4] He concludes, "Windrock has taken reasonable precautions to protect its intellectual property in compliance with industry standards" [*Id*. at 17 (quoting SEALED Doc. 247-12 § 5.4.8)].

Defendants challenge Mr. O'Donahue's opinion that "'[Plaintiff] has taken steps to protect and maintain the confidential nature of its source code'" [Doc. 302 p. 14 (citation omitted)]. They state that "Mr. Donahue's sole basis for this opinion is that Plaintiffs' counsel told him, and he did no independent verification or testing" [*Id*. (citation omitted)].[5]

Plaintiff responds that "Defendants are confusing Federal Rule of Evidence 703 with Federal Rule of Evidence 602" [Doc. 332 pp. 20–21]. According to Plaintiff, "Mr. O'Donahue can rely on information that he was made aware of and he is not required to have personally observed the security measures [Plaintiff] took to protect its confidential information for his opinions to be admissible" [*Id*. at 21]. Stating that Defendants' arguments "are not proper grounds for disqualification[,]" Plaintiff submits that they can cross examine Mr. O'Donahue on these issues [*Id*.]. "[M]ost telling[,]" Plaintiff asserts, "is the lack of contrary facts to dispute the facts upon which Mr. O'Donahue relies" [*Id*. (footnote omitted)].

Defendants reply that any assumed facts an expert witness relies on must be independently established [Doc. 343 p. 6]. They state that "[Mr.] O'Donahue's testimony admits that he is not aware of any facts to independently establish the facts that Plaintiff's counsel fed to him, and he did not undertake any effort to independently verify those facts" [*Id*.]. Plaintiff's statement that

---

[4]      During Mr. O'Donahue's deposition, he clarified that his opinion relates to whether it is standard to have an agreement and not that Plaintiff's licensing agreement was a standard agreement [Doc. 302-2 p. 16; *see also infra* Part IV, section D].

[5]      Defendants also claim that "Mr. O'Donahue's opinions [do] not meet the requirement of Fed. R. Civ. P. 26 to provide the facts he relied upon" [Doc. 302 p. 18]. But the assumed facts Mr. O'Donahue relies on for his conclusion that Plaintiff takes reasonable steps to protect its software's confidentiality are set forth in Mr. O'Donahue's report.

13

"Defendants have not provided any 'contrary facts,'" Defendants argue, "is against the authorities regarding expert testimony" [*Id*.].[6]

A witness may testify only about matters for which he/she has personal knowledge. Fed. R. Evid. 602. "This rule does not apply to a witness's expert testimony under Rule 703." *Id*. Instead, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; *see also Twin K Constr., Inc. v. UMA, Geotechnical Constr., Inc.*, 597 F. Supp. 3d 1204, 1212 (E.D. Tenn. 2022) ("While expert testimony is not subject to Rule 602, it is subject to Rule 703[.]" (citation omitted)).

"[But t]he concept of 'reliability' [set forth in Rule 702] implies that an expert's opinion must be based on something 'more than subjective belief or unsupported speculation.'" *Navarro v. Procter & Gamble Co.*, 501 F. Supp. 3d 482, 489 (S.D. Ohio 2020) (quoting *Daubert*, 509 U.S. at 590). Put differently, "[a]n expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citation omitted)).

Plaintiff has pointed to no factual support in the record for Mr. O'Donahue's opinions. Instead, Plaintiff asserts that Defendants have not offered contrary facts [Doc. 332 p. 21]. But it is not Defendants' burden to do so. *Daubert*, 509 U.S. at 592 n.10 (explaining that the party offering the expert has the burden of proving admissibility). Plaintiff has therefore not shown that Mr. O'Donahue's Opinion No. 3 is reliable. The Court excludes it.

---

[6]    Defendants assert, "'Justice will be best served if the opinion set forth by the expert is truly an independent opinion developed through the expert's own knowledge, skills and investigation rather than the regurgitated opinion of the attorney'" [Doc. 343 pp. 5–6 (quoting *FDIC v. First Heights Bank, F.B.*, No. 95-CV-72722, 1998 WL 34363723, at *4 (E.D. Mich. Apr. 13, 1998)))]. But in the case cited in support, the court addressed whether a party was entitled to discover the "opinion work product that forms the basis of an expert opinion." *FDIC*, 1998 WL 34363723, at *4. That issue is not before the Court, so the Court declines to consider the case for that proposition.

**D.     Opinion No. 4**

Mr. O'Donahue opined as follows in § 5.3.5 of his report:

> A Windrock Customer is allowed to use Windrock MD "on a single designated CPU" and "solely for Customer's internal business purposes." From my understanding, Defendant Kelley was not an employee of Viper or Signet, neither RSI nor Defendant Kelley was a Customer of Windrock and neither had obtained a license to use Windrock MD, yet Kelley accessed a copy of Windrock MD from Ed Flanagan/Viper or Ethan Clarke/Signet. Kelley's use of Windrock MD to assist in his development and testing of Rmonix to compete with Windrock MD would not be an internal business purpose of a Customer of Windrock.

[SEALED Doc. 247-12 § 5.3.5; *see also* Doc. 332 pp. 16–17]. Later, he explains that Plaintiff's Software Licensing Agreement allows a customer "to use Windrock MD 'on a single designated CPU' and 'solely for Customers' internal business purposes'" [SEALED Doc. 247-12 § 6.3.5; *see also* Doc. 332 p. 16]. He states that "the Licensing Agreement provides: 'Customer shall not permit disclosure of any licensed program in any form, to any person other than Customer's or Suppliers['] employees without the prior written consent of Supplier'" [SEALED Doc. 247-12 § 6.3.5; *see also* Doc. 332 p. 16]. Mr. O'Donahue further states:

> From his deposition, Kelley accessed a copy of Windrock MD from Ed Flanagan/Viper and Ethan Clarke/Signet, including remote access. Kelley's use of Windrock MD to assist in his development and testing of Rmonix to compete with Windrock MD would not be an internal business purpose of a Customer of Windrock, even if RSI or Kelley were a Customer or if Kelley had been an employee of Viper or Signet.

[SEALED Doc. 247-12 § 6.3.5 (citation omitted); *see also* Doc. 332 p. 17].

Similarly, in his rebuttal report, he states:

> Further, it is clear from emails provided in discovery that Mr. Beam, Mr. Kelley. Mr. Flanagan, and Mr. McNair communicated on a regular basis to advance their plans to form a company to compete with Windrock. It is also clear, both from RSI's response to interrogatories and Mr. Kelley's deposition, that RSI and Mr. Kelley

15

used Viper's copy of Windrock MD to create a competing product, which I consider to be unethical and in a manner not Compliant with Windrock MD's license terms. I note that Mr. Kelley agreed in deposition that Windrock's data formats are "proprietary."

In sum, RSI's use of Vipers and/or Signet's copy of Windrock MD to develop Rmonix as a competing product on behalf of RSI was not a valid business purpose of Viper (or Signet).

[SEALED Doc. 247-3 p. 3 (citation omitted); *see also* Doc. 332 p. 17].

During Mr. O'Donahue's deposition, defense counsel inquired about his opinion in § 5.3.5:

> Q.     You're not offering an expert opinion on what an internal business purpose is, are you?
>
> Mr. Trammell: Object to the form.[7]
>
> Q.     Are you, are you offering an expert opinion on what an internal business purpose is?
>
> A.     That depends on what you mean by expert.
>
> Q.     Are you and expert - - you told me before you were not an expert in interpreting license agreements.
>
> A.     I agree with that.
>
> Q.     Okay. So then you are not offering an expert opinion on internal business opinions purposes. This is just your personal opinion.
>
> A.     It's just my personal opinion.

[Doc. 302-2 pp. 5–6]. Later, defense counsel asked him about his opinion in § 5.4.7 that the "Use of Windrock MD is subject to an industry standard End User License Agreement (EULA) restricting the use of Windrock MD" [*Id*. at 15]. Defense counsel asked for the basis of this statement, and Mr. O'Donahue testified, "When I received a copy of Windrock MD, it contained an end user license" [*Id*.]. He explained, "Basically, most of the software that I've ever used had

---

[7]     As the Court has previously explained, Plaintiff's objection to the form of the question is waived [*See* Doc. 197 p. 11 (citations omitted)].

an end, what they call an end user license agreement, so it seems to be a standard to give people an end user license agreement. Again, they vary, and I don't know enough about end user license agreements to know if it's worth a d\*\*n. Worth anything. Sorry." [*Id*. at 15–16]. Defense counsel asked, "So you're, you're saying it's standard to have an agreement, correct?" [*Id*. at 16]. Mr. O'Donahue responded, "Yes." [*Id*.]. When asked if this agreement was a standard agreement, he testified, "I can't answer that." [*Id*.].[8]

He further testified that he was not "familiar with how a court determines what an expert is" [Doc. 332-5 p. 5]. He stated that he has reviewed more than 100 software agreements and that he is familiar with them [*Id*. at 6]. Mr. O'Donahue testified that software license agreements are "a standard part of the software world" [*Id*.].

Defendants assert that "Mr. O'Donahue improperly offers the legal opinion that [Defendant] Kelley's use of the Windrock MD was not a proper internal business purpose as allowed by the Windrock MD license agreement" [Doc. 302 p. 18 (citation omitted)]. During his deposition, Defendants state, "Mr. O'Donahue made it clear that that he was not offering an expert opinion" [*Id*. (citation omitted)]. Instead, Defendants argue, "Mr. O'Donahue's opinion is a personal opinion" [*Id*. at 19]. In addition, they submit that his statements about licensing agreements are impermissible legal conclusions [*Id*.].

Plaintiff responds that Mr. O'Donahue's testimony "should be put into proper context" as he "was simply acknowledging that he is a technical, source code expert" [Doc. 332 p. 18]. According to Plaintiff, "[c]aselaw supports the position that an expert does not disqualify himself in this manner" [*Id*. at 19]. Plaintiff argues that Defendants' attempt to "try to disqualify Mr. O'Donahue from opining about software license agreements in general . . . is based on

---

[8]     Plaintiff objected to the form of the question [Doc. 302-2 p 16]. This objection is waived. *See supra* note 11.

testimony that it taken out of proper context" [*Id*. at 20]. It asserts that "Mr. O'Donahue certainly has the industry-based experience" to render his opinions about licensing agreements [*Id*.].

Defendants reply that "[Mr.] O'Donahue admitted that he was not offering an expert opinion as to whether [Defendant] Kelley's actions constituted an 'internal business purpose' as provided for in the license agreement" [Doc. 343 p. 10]. They assert that "[Mr.] O'Donahue is not qualified to render any opinion on the license agreement, that he specifically declined to offer such opinion in his deposition" [*Id*. at 12].

As an initial matter, Mr. O'Donahue's statements about his expertise are not dispositive of whether he is qualified to render his opinions because this determination is within the purview of the Court. *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2018 WL 10733561, at *1 (E.D. Mich. July 9, 2018) ("Among other things, district courts must determine whether an expert is sufficiently qualified."). Mr. O'Donahue has "over 50 years' experience as a software developer and engineering manager" [SEALED Doc. 247-12 p. 2; *see also* Doc. 332 p. 16], but Plaintiff has not met its burden to show that this experience more likely than not qualifies him as an expert on what constitutes a "proper internal business purpose" for purposes of a software licensing agreement. *See* Fed. R. Evid. 702; *see also Ford Motor Co.*, 2018 WL 10733561, at *1 ("Courts must . . . 'determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony.'" (quoting *Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000)).[9]

---

[9]       Plaintiff cites *Martin v. Interstate Battery System of America, Inc.*, No. 12-CV-184, 2016 WL 4400776 (N.D. Okla. Aug. 18, 2016). In that case, the expert admitted he was not a warnings expert, but the court allowed him to testify as to the necessity of a warning given his multiple degrees in engineering, employment history, and work experience, which allowed him to understand the risks of batteries. *Id*. at *6. Plaintiff also cites *Media Glow Digital, LLC v. Panasonic Corp. of North America*, No. 16 CIV. 7907, 2019 WL 1055527 (S.D.N.Y. Mar. 6, 2019), where the court allowed the expert to opine "about industry practice regarding general responsibilities of an LED integrator or solutions provider given that he ha[d] over 20

Upon review, the Court finds that Plaintiff has not shown by a preponderance of the evidence that Mr. O'Donahue is sufficiently qualified to render an opinion that Defendant Kelley's use of Windrock MD was not a proper internal business purpose pursuant to the Licensing Agreement. While Mr. O'Donahue has reviewed about 100 software agreements, his knowledge is limited to whether it is standard to have an agreement [*See* Doc. 302-2 p. 16]. He testified that he does not know whether the Licensing Agreement was a standard agreement, and he stated he does not know enough about licensing agreements to know if they are worth anything [*Id*. at 15–16]. Further, there is no evidence that he is familiar with what constitutes a "proper internal business purpose."[10] The Court will therefore exclude Mr. O'Donahue from testifying about Opinion No. 4.[11]

---

years' experience in the industry[,]" despite him testifying that he was not an expert in air rights. *Id*. at *3. Unlike in these cases, Plaintiff has neither demonstrated that Mr. O'Donahue is an expert in software licensing agreements, nor shown that he has any specialized skills that would allow him to opine on anything more than whether it is standard to have such agreements.

[10]   It does not appear to the Court that testimony from an expert on whether Defendant Kelley's actions constituted a proper internal business purpose or were unethical would be helpful to the jury. *See Arrowood Indem. Co. The Lubrizol Corp. v. United States Fire Ins. Co.*, No. 1:10 CV 2871, 2016 WL 6610806, at *2 (N.D. Ohio Feb. 21, 2016) ("An expert witness may give opinion testimony only where the specialized knowledge of that witness will help the trier of fact understand the evidence or determine a fact in issue." (citation omitted)). The parties do not address whether a "proper internal business purpose" is a term of art that needs clarification or specialized knowledge, and Mr. O'Donahue's opinion that Defendant Kelley did not have a valid internal business purpose or acted unethically does not appear to require a software developer's expertise. *See HighMark Digital, Inc. v. Casablanca Design Ctrs., Inc.*, No. CV1806105S, 2020 WL 2114940, at *8 (C.D. Cal. Mar. 26, 2020) (excluding the expert's opinion that the defendants accessed a server because it constituted "an uncritical regurgitation of [the plaintiff's] claims" that did "not require a software engineer's expertise").

[11]   Considering this finding, the Court need not consider whether the proposed testimony constitutes a legal conclusion.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Exclude the Testimony of John O'Donahue [**Doc. 301**]. Mr. O'Donahue may testify about Opinion Nos. 1 and 2 but not Opinion Nos. 3 and 4.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge