UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHAMPIONX, LLC, f/k/a WINDROCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:21-CV-288-TAV-JEM |
| | ) | |
| RESONANCE SYSTEMS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Exclude New Evidence and Untimely Expert Testimony [Doc. 487]. Plaintiff responded in opposition to the motion [Doc. 488], and Defendants filed a reply [Doc. 495]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court **DENIES** Defendants' motion [**Doc. 487**].

### I. BACKGROUND

"[Plaintiff] designs and manufactures data acquisition products and online systems that are used worldwide by operators, engineers, and maintenance personnel to analyze, monitor, trend, alarm, and automatically diagnose the condition of machinery" [Doc. 176 ¶ 17]. It sells portable analyzers—"devices that collect data that is used to assess the mechanical condition and performance of reciprocating compressors and engines, as well as rotating equipment" [*Id*. ¶ 18]. With its portable analyzers, Plaintiff also sells its software, "Windrock MD" [*Id*. ¶ 19]. This software "allows an authorized user to review and analyze data collected on the user's assets from [Plaintiff's] data acquisition products to determine the health of the assets" [*Id*. ¶ 20]. While the

portable analyzers "collect data in binary format, which is presented as an intelligible continuous series of binary digits having no contextual meta-data for decoding or interpretation[,]" Windrock MD translates the data into readable reports [*Id.* ¶ 110]. Plaintiff claims that the Windrock MD source code "contains proprietary data structures and data indexing" [*Id.* ¶ 115].

The individual Defendants are Plaintiff's former employees [*Id.* ¶¶ 25, 33, 35, 36]. Plaintiff alleges that in December 2018, Defendant Paul Beam ("Beam") emailed Defendant Josh Kelley ("Kelley"), while Defendant Kelley was still employed by Plaintiff, about "develop[ing] a new portable analyzer to compete with [Plaintiff's] portable analyzers" [*Id.* ¶¶ 117–18]. These Defendants, along with Defendants Edward Flanagan ("Flanagan") and Steve McNair ("McNair"), began collaborating to develop a competing source code, which they called, "Rmonix" [*Id.* ¶¶ 119–27]. "On or about March 25, 2020, Defendants Beam and McNair formed Defendant RSI" [*Id.* ¶ 128]. Afterwards, "Defendant RSI demonstrated the ability of its Rmonix software to decode and translate data received from [Plaintiff's] portable analyzer and other . . . products from [its] proprietary data files" [*Id.* ¶ 134]. Plaintiff alleges:

> There are only two possible explanations for Defendant RSI's software having this capability: (1) Defendant Kelley, acting on behalf of Defendant RSI, utilized a copy of Windrock MD that was unlawfully obtained from a Windrock customer, used his intimate knowledge of Windrock MD's source code and the proprietary data structures and data indexing therein to decode and translate the encoded binary data from Windrock's data files, or (2) Defendant Kelley, acting on behalf of Defendant RSI, unlawfully accessed, relied on, and/or used portions of the Windrock MD source code.

[*Id.* ¶ 136]. "In 2021, RSI introduced its competing portable analyzer, the Lenz" [Doc. 302 p. 4 (citation omitted)].

According to Defendants, "A major focus of Plaintiff's claims in this case centers around Defendant RSI's reverse engineering for the data files produced when Windrock customers use a

Windrock analyzer to collect data about the customer's machine (referred to . . . as the 'customer data file')" [Doc. 488 pp. 2–3]. On December 8, 2022, Defendants deposed Plaintiff's employee, Marek Kos, who testified that "certain 'business logic' contained in the source code to its Windrock MD software made it impossible to reverse engineer the customer data file" [*Id*. at 3].[1] On April 5, 2023, Defendant RSI served Interrogatory No. 18, which seeks "all business logic in the Windrock MD Source Code . . . the source code files that You contend makes it impossible or next to impossible to reverse engineer the Windrock MD data file . . . ." [*Id*. (ellipses in original and citation omitted)]. On October 6, 2023, Plaintiff fully responded to Interrogatory No. 18 [*Id*.]. Also on that date, Plaintiff disclosed John O'Donahue ("Mr. O'Donahue") as an expert witness pursuant to the deadline in the Scheduling Order [*Id*. at 4]. He opined in part:

> Because of its complexity and unique aspects of its implementation, as well as the lack of information describing the content and layout of the Windrock MD database, it would be virtually impossible for a computer programmer to replicate and/or emulate Windrock MD without prior knowledge and intimate familiarity with Windrock MD's source code and database, along with access to copies of Windrock MD and/or the Windrock MD source code[.]

[Doc. 494 p. 2 n.2 (citation omitted)]. The discovery deadline expired on March 6, 2024 [Doc. 488 p. 1 (citation omitted)].

On September 27, 2024, Plaintiff supplemented its response to Interrogatory No. 18 [*Id*.; *see also* Doc. 491 SEALED]. In the supplemental response, Plaintiff identified additional business logic [Doc. 488 p. 3]. On October 22, 2024, Mr. O'Donahue submitted a Supplemental Expert Report stating:

---

[1] Plaintiff explains, "In programming, business logic is the part of a software program responsible for implementing the business rules that define how data should be created, modified, transformed, communicated and in other ways managed and controlled. An application's business logic serves as its backbone, providing the foundation necessary to drive the application's core processes, workflows and other operations" [Doc. 494 p. 2 n.1 (citation omitted)].

3

> The information contained in the Second Amended Supplemental Response to Interrogatory 18 is further evidence that the many unique aspects of Windrock MD's database add to the complexity of Windrock MD, making it virtually impossible for a computer programmer to replicate and/or emulate the capabilities of Windrock MD without prior knowledge and intimate familiarity, as well as access to copies of Windrock MD and/or the Windrock MD source code.

[Doc. 494 p. 2 (emphasis, footnote, and citation omitted)].

Defendants move to exclude Plaintiff's supplemental response to Interrogatory No. 18 and Mr. O'Donahue's Supplemental Expert Report under Rules 26 and 37 of the Federal Rules of Civil Procedure [Doc. 487]. They assert that the discovery deadline and expert disclosure deadline have expired and that Plaintiff "has not offered any reason for only identifying this newly claimed trade secret over a year after the Court's expert disclosure deadline and only three (3) months before trial" [Doc. 488 p. 6]. Defendants argue that exclusion is appropriate under Rule 37 as Plaintiff's failure to timely supplement its discovery responses and expert report is neither substantially justified nor harmless [*Id*. at 6–10]. They seek their attorneys' fees incurred in filing the motion [*Id*. at 10].

Plaintiff filed a response, stating that it did not disclose a new trade secret but instead supplemented its discovery responses and expert report to include additional business logic [Doc. 494 pp. 1–2]. It submits that "[f]or nearly two years, [Plaintiff] has maintained that 'business logic' contained in the Windrock MD source code makes it virtually impossible to reverse engineer in the source code due to its complexity" [*Id*. at 2]. "More recently," Plaintiff states, "while preparing for trial, [it] realized it overlooked one additional form of business logic within the source code" [*Id*. at 3]. It therefore timely supplemented its response as required under Rule 26 and the Court's Scheduling Order, rendering Rule 37 not applicable [*Id*. at 3–4]. But even if the Court found that its supplemental disclosures were untimely, Plaintiff argues that they should not

4

be excluded under Rule 37 [*Id*. at 4–8]. Plaintiff states an award of attorneys' fees is not warranted [*Id*. at 7–9].

Defendants filed a reply asserting that Plaintiff's "recently disclosed business logic is a new disclosure that this Court should only allow if [its] late disclosure is substantially justified or harmless" [Doc. 495 pp. 1–2 (citation omitted)]. They assert that it is neither [*Id*. at 2–5].

## II. ANALYSIS

Rule 26(e)(2) of the Federal Rules of Civil Procedure sets forth the rule for supplementing discovery. Fed. R. Civ. P. 26(e). It states:

> **(e) Supplementing Disclosures and Responses.**
>
> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
>> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;
>>
>> **(B)** as ordered by the court.

Fed. R. Civ. P. 26(e)(1)(A)–(B). "'In a timely manner' is not defined in the rule and must necessarily depend on the facts and circumstances of each case." *U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03–0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009). "Parties should supplement disclosures and responses 'periodically in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case.'" *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016) (quoting *Guidant Corp.*, 2009 WL 3103836, at *4) (alterations in original), *aff'd*, 899 F.3d 428 (6th Cir. 2018).

5

The duty to supplement also applies to expert reports. Fed. R. Civ. P. 26(e)(2); *see also* [Doc. 26 p. 3 ("The parties shall supplement [expert] disclosures when required under [Rule 26(e)(1))]. "Any additions or changes to [the expert disclosure] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Pretrial disclosures are due thirty days before trial [Doc. 26 p. 3]. Yet, "[d]etermining whether a party's expert disclosure was timely often requires more than just checking a calendar. For supplemental and rebuttal opinions, in particular, the task is as much a question of substance as chronology." *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97, 2016 WL 5867496, at *3 (E.D. Ky. Oct. 6, 2016). This is because Rule 26(e) "is not a license to freely amend expert reports to bolster a party's position." *Id*. at *4 (citation omitted). A party may not "add new analyses, opinions, or theories under the guises of supplementation." *Id*. "This is especially true when the information underlying the new opinion was available to the party at the time of her initial disclosure." *Id*.

Here, during trial preparations, Plaintiff discovered that it failed to include an example of business logic in the source code that would make reverse engineering impossible when responding to Defendants' interrogatory [Doc. 494 pp. 2–3]. Based upon that discovery, Plaintiff supplemented its interrogatory response and Mr. O'Donahue prepared a supplement to his report [*Id*. at 3]. Throughout Plaintiff's response, Plaintiff characterizes the information as "further evidence" of Plaintiff's "position [] that business logic in its source code renders reverse engineering nearly impossible due to its uniqueness and complexity" [*id*. at 5], and of importance to the case [*id*. at 6]. Plaintiff's characterization reveals that the supplemented information is intended to bolster its position regarding the ability to reverse engineer the source code rather than correct an inaccuracy or fill in missing information. *See Corder v. Ethicon, Inc.*, No. 6:19-CV-273, 2020 WL 13616867, at *6 (E.D. Ky. Nov. 6, 2020) (finding that the expert's report that added

6

Case 3:21-cv-00288-TAV-JEM    Document 499    Filed 12/20/24    Page 6 of 11
PageID #: 15915

additional references to support the original opinion was not a true supplementation because it was "designed to strengthen the expert's opinion; it d[id] not purport to correct errors, inaccuracies, or misleading material in the original report"); *Bentley*, 2016 WL 5867496, at *4 (explaining that courts allow supplementation so that parties may "'correct[] inaccuracies' or 'fill[] interstices'" or "fill gaps in initial reports when they later learn of the missing information" (quoting *Munchkin, Inc. v. Playtext Prods., LLC*, 600 F. App'x 537, 538 (9th Cir. 2015))); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL 5416941, at *28 (W.D. Wis. Oct. 29, 2012) ("Although [the expert's] new report covers the same general topics as his original report, it includes significant new details. Rule 26(e) is intended to provide parties an opportunity to correct mistakes or oversights, not to include new examples and illustrations to bolster previous opinions." (citation omitted)). Under the facts of this case, the Court finds Plaintiff failed to timely provide information as required by Rule 26.[2]

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (explaining that Rule 37 requires "absolute compliance with Rule 26(a)" (Citations omitted)). The burden to show substantial justification or harmlessness is on the potentially sanctioned party. *Roberts*, 325 F.3d at 782.

---

[2] Plaintiff cites to *Perry v. Hardeman County Government*, No. 1:19-CV-1106, 2024 WL 2852500, at *1 (W.D. Tenn. June 5, 2024) in support of its argument [Doc. 494 p. 4]. But in that case, the only issue before the court was whether defendant's supplemental expert report was timely. The court did not address whether the expert's report was a supplement under Rule 26(e).

7

The Sixth Circuit has identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless" as follows: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) (quoting *Russell v. Abs. Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). "District courts have broad discretion in applying these factors and need not apply each one rigidly. The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Bentley*, 2016 WL 5867496, at *10).

With respect to the first factor, surprise to Defendants, Plaintiff contends that "Defendants have been on notice for nearly two years that [Plaintiff's] position is that business logic in it source code renders reverse engineering nearly impossible due to its uniqueness and complexity" [Doc. 495 p. 5]. But as Defendants point out, "Mr. O'Donahue[] timely identified four 'special algorithms in the source code . . .'" [Doc. 495 p. 4 (citation omitted)]. Defendants were not aware that "Plaintiff would identify a fifth special algorithm/business logic" [*Id*.]. The Court finds Defendants were therefore surprised by the supplemental disclosures.

The second factor considers the ability to cure the surprise. Plaintiff asserts that any surprise can be cured by allowing Defendants the opportunity to depose Mr. O'Donahue regarding the Second Supplemental Report. It represents that on October 22, 2024, it offered to allow Defendants to depose Mr. O'Donahue, but instead, Defendants waited two months after it

8

supplemented to file their motion. Defendants state that Plaintiff's argument "ignores that Dr. Plank would have to file a supplemental rebuttal report to Mr. O'Donahue's supplemental report" and that Dr. Plank would need to visit the source code room again [*Id*. at 4–5 (citation omitted)]. Defendants further submit that Plaintiff offered only a thirty-minute deposition by Zoom. With respect to when Defendants filed their motion, they state that it was only four weeks after Mr. O'Donahue supplemented his report and that during this time, the parties had been negotiating about resolving the matter. The Court finds the surprise to Defendants can be cured through a deposition of Mr. O'Donahue and a supplement from Defendants' expert. *See Greene v. Ledvance, LLC*, No. 3:21-CV-256, 2024 WL 4181777, at *4 (E.D. Tenn. Sept. 12, 2024) (finding that the plaintiff's supplementation to his discovery responses and offer to be re-deposed had "some curative effect"). Although the parties disagree on the details of a deposition, Defendants' assert that a deposition of Mr. O'Donahue would take no longer than one hour. Considering the limited nature of the supplement and short duration of a deposition of Mr. O'Donahue, it appears to the Court that Dr. Plank would be able to quickly supplement his expert report, if needed.

Turning to the third factor, whether allowing the evidence would disrupt trial, the Court finds allowing the evidence would not disrupt trial. While the trial is set for January 21, 2025, the Court has reviewed Mr. O'Donahue's Supplemental Report, which generally "provid[es] an additional example of how the business logic contained in the WindrockMD Source code makes reverse engineering it nearly impossible" [Doc. 494 p. 6].

For the fourth factor, the Court considers the importance of the evidence. Plaintiff states, "[a]lthough the information disclosed is very narrow and limited, the Supplemental Response and Supplemental Report address important evidence" [*Id*.]. It explains, "The fact that Windrock MD source code is too unique and complex to be reverse engineered without relying on [Defendant]

9

Kelley's intimate knowledge of it is an important point in this case, and the evidence of business logics identified in the Supplemental [Report] supports this point" [*Id.*]. But "importance 'cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless.'" *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017) (explaining that "[t]he more important the proof, the greater the effect of preclusion, but also greater the harm in tardy disclosure" (comparing cases)), *objections overruled by* 2017 WL 4974782 (E.D. Ky. July 19, 2017); *see also Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505, 2021 WL 6332794, at *10 (E.D. Tenn. Sept. 28, 2021) ("Instead, parties should be mindful that important evidence must be disclosed in a timely manner, or they must seek an extension of time from the Court prior to the deadline."); *see also Etheridge v. E. I. DuPont De Nemours & Co.*, No. 14-CV-2443, 2015 WL 12516227, at *3 (W.D. Tenn. Oct. 14, 2015) (finding that factor four favored the plaintiff's request to admit the evidence "because [it was] so important to [the p]laintiff," but noting that "her explanation for her failure to abide by the [c]ourt's [o]rder or the Federal Rules of Civil Procedure bec[ame] even less satisfactory"). Upon review of the parties' arguments, the Court finds this factor "cuts both ways." *Corder*, 2020 WL 13616867, at *7 ("Importance can cut both ways." (citation omitted)).

Finally, the Court reviews Plaintiff's explanation for not providing the disclosures before the deadlines to do so. It explains:

> [Plaintiff] made a good faith effort to fully answer Interrogatory No. 18 when it was propounded. Evidence of this effort exists in the fact that [its] response to Interrogatory No. 18 is thirteen pages. Nonetheless, while preparing for trial, [Plaintiff] realized that it had overlooked one form of business logic in the Windrock MD source code in its prior answer to Interrogatory No. 18.

[Doc. 494 p. 7]. In considering this reason, the Court is mindful that "the task at the heart of Rule 37(c)(1)" is to "separat[e] 'honest,' harmless mistakes from the type of 'underhanded

10

gamesmanship' that warrants the harsh remedy of exclusion." *Bentley*, 2016 WL 5867496, at *10 (quoting *Howe*, 801 F.3d at 747, 749). Indeed, courts should "avoid unduly harsh penalties" when the failure to timely disclose is harmless or substantially justified. *Howe*, 801 F.3d at 747 (quoting Fed. R. Civ. P. 37(c)(1), advisory committee's note to 1993 amendment). There is no evidence that Plaintiff sought to conceal the additional business logic for a tactical advantage or that it deliberately violated the Court's Scheduling Order.

After weighing the factors, the Court finds that, in the particular circumstances of this action, they weigh in favor of finding that Plaintiff's supplemental disclosures should not be excluded under Rule 37.

### III. CONCLUSION

For the reasons explained above, the Court **DENIES** Defendants' Motion to Exclude New Evidence and Untimely Expert Testimony [**Doc. 487**]. Defendants may depose Mr. O'Donahue about his opinions in the Supplemental Report for one hour via Zoom but must do so on or before **January 3, 2025**. Defendant may supplement Dr. Plank's expert report on or before **January 10, 2025**. To the extent Dr. Plank needs to visit the source code room, Plaintiff shall allow him to do so in a manner that will allow him to prepare any supplemental report by January 10, 2025.

**IT IS SO ORDERED.**

ENTER:

_____
Jill E. McCook
United States Magistrate Judge

11

Case 3:21-cv-00288-TAV-JEM   Document 499   Filed 12/20/24   Page 11 of 11
PageID #: 15920